No. 22-1728

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

_____

IN RE: IBM ARBITRATION AGREEMENT LITIGATION

_____

On Appeal from the United States District Court for the
Southern District of New York
Case Nos. 21-cv-6296; 21-cv-6297; 21-cv-6307; 21-cv-6308; 21-cv-6310; 21-cv-6312; 21-cv-6314; 21-cv-6320; 21-cv-6322; 21-cv-6323; 21-cv-6325; 21-cv-6326; 21-cv-6331; 21-cv-6332; 21-cv-6337; 21-cv-6340; 21-cv-6341; 21-cv-6344; 21-cv-6349; 21-cv-6351; 21-cv-6353; 21-cv-6355; 21-cv-6375; 21-cv-6377; 21-cv-6380; 21-cv-6384 – Judge Jesse M. Furman

_____

**PLAINTIFFS-APPELLANTS' OPENING BRIEF**

_____

Shannon Liss-Riordan
Thomas Fowler
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com; tfowler@llrlaw.com

*Counsel for Plaintiffs-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Plaintiffs-Appellants[1] hereby make the following corporate disclosure statement pursuant to Fed. R. App. R. 26.1:

Plaintiffs-Appellants are individuals and therefore have no parent corporation or shareholders.

---

[1] The Plaintiffs-Appellants in these consolidated matters are Gregory Abelar, William Abt, Brian Brown, Brian Burgoyne, Mark Carlton, William Chastka, Phillip Corbett, Denise Cote, Michael Davis, Mario DiFelice, Joseph Duffin, Brian Flannery, Fred Gianiny, Om Goeckermann, Mark Guerinot, Deborah Kamienski, Douglas Lee, Colleen Leigh, Stephen Mandel, Mark McHugh, Sandy Plotzker, Alexander Saldarriaga, Richard Ulnick, Mark Vornhagen, James Warren, and Dean Wilson.

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... i

INTRODUCTION ........................................................................................ 1

JURISDICTIONAL STATEMENT ...................................................................... 11

STATEMENT OF THE ISSUES FOR REVIEW ................................................. 12

STATEMENT OF THE CASE ............................................................................ 13

      I.      Background of Classwide Allegations, and the
              EEOC's Reasonable Cause Finding of Age
              Discrimination Against IBM ............................................................ 14

      II.     Plaintiffs' Challenge to the Arbitration Agreement's
              Purported Abridgement of the Time Period to File
              an ADEA Claim ................................................................................ 15

      III.    Plaintiffs' Challenge to IBM's Aggressive Use of the
              Confidentiality Provision in the Arbitration
              Agreement ......................................................................................... 17

      IV.    The District Court Grants IBM's Motion to Dismiss
              Plaintiffs' Challenges to Its Arbitration Agreement ................... 19

STANDARD OF REVIEW ................................................................................. 20

SUMMARY OF THE ARGUMENT ................................................................... 22

ARGUMENT ....................................................................................................... 25

I.    Even Though Plaintiffs' ADEA Claims Would Have
      Been Timely Had They Filed in Court, the District
      Court Wrongly Held that IBM's Arbitration
      Agreement Could Render Their Claims Untimely ....................25

      A.    The ADEA's Timing Scheme, Including the
            "Piggybacking" Rule, is a Substantive
            Right that Cannot be Abridged by Contract ...............28

      B.    The District Court Erred by Declining to
            Follow the EEOC and the Sixth Circuit in
            *Thompson*, Instead Holding that the
            ADEA's Timing Scheme was a Procedural
            Right that Could be Waived in an
            Arbitration Agreement ....................................37

      C.    The District Court Erred in Holding that
            IBM's Failure to Provide OWBPA
            Disclosures Did Not Render the Timeliness
            Provision Unenforceable ...................................42

II.   The District Court Erred In Failing to Find the
      Confidentiality Provision to be Unenforceable ..........................48

III.  The Court Should Reverse the District Court's
      Refusal to Exercise Jurisdiction Over Plaintiffs'
      Claims.............................................................................50

IV.   The District Court Erred by Declining to Unseal the
      Sealed Portions of the Summary Judgment Record
      Below ...............................................................................57

      A.    Plaintiffs' Motion for Summary Judgment
            and Accompanying Exhibits Are Judicial
            Documents .......................................................59

iii

B.  There Are No Countervailing Interests
Militating Against Public Access....................................63

V. The District Court Erred by Denying Plaintiffs' Motion to
Amend to Add a Fraudulent Inducement Claim ..................................65

CONCLUSION ..................................................................................71

CERTIFICATE OF COMPLIANCE ..................................................73

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett*,
556 U.S. 247 (2009) ........................................................................ 37

*Adams v. Philip Morris, Inc.*,
67 F.3d 580 (6th Cir. 1995) ........................................................... 44

*American Family Life Assurance Co. of N.Y. v. Baker*,
778 Fed. App'x. 24 (2d Cir. 2019) ................................... 7, 23, 31, 48

*Anson v. Univ. of Tex. Health Sci. Ctr. At*,
962 F.2d 539 (5th Cir. 1992) .......................................................... 33

*Badgerow v. Walters*,
142 S. Ct. 1310 (2022) .................................................................... 52

*Bear Ranch, LLC v. HeartBrand Beef, Inc.*,
2013 WL 4520425 (S.D. Tex. Aug. 26, 2013) ................................ 66

*Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132 (2d Cir. 2016) ................................................. 21, 58, 62

*Billie v. Coverall North America*,
2022 WL 807075 (D. Conn. March 16, 2022) ........................... 8, 54

*Bogacz v. MTD Products, Inc.*,
694 F. Supp. 2d 400 (W.D. Pa. 2010) ............................................ 44

*Bragdon v. Abbott*,
524 U.S. 624 (1998) ........................................................................ 36

*Brown v. Maxwell*,
  929 F.3d 41 (2d Cir. 2019) ................................................................. 59, 60, 61

*Butcher v. Gerber Prods. Co.*,
  8 F. Supp. 2d 307 (S.D.N.Y. 1998) ..................................................... 42

*Calloway v. Partners Nat. Health Plans*,
  986 F.2d 446 (11th Cir. 1993) ............................................................. 29

*Castellanos v. Raymours Furniture Company, Inc.*,
  291 F. Supp. 3d 294 (E.D.N.Y. 2018) ................................................. 35

*CellInfo, LLC v. American Tower Corp.*,
  506 F. Supp. 3d 61 (D. Mass. 2020) ....................................... 8, 54, 58

*Chandler v. International Business Machines Corp.*,
  2022 WL 2473340 ................................................................................ 32

*Cronas v. Willis Group Holdings Ltd.*,
  2007 WL 2739769 (S.D.N.Y. Sept. 17, 2008) ..................... 29, 37, 38

*Davis v. Mills*,
  194 U.S. 451 (1904) ............................................................................. 34

*Dawson v. Merck & Co.*,
  2021 WL 242148 (E.D.N.Y. Jan. 24, 2021) ........................................ 62

*Dentons US LLP*,
  2021 WL 2187289 ................................................................................ 64

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  411 F.3d 384 (2d Cir. 2005) ........................................................ 51, 52

*EEOC v. Comm. Office Prods. Co.,*
    486 U.S. 107 (1988) ....................................................................... 36, 40

*Estle v. International Business Machines Corp.,*
    23 F.4th 210 (2d Cir. 2022) ................................................ 38

*Fed. Exp. Corp. v. Holowecki,*
    552 U.S. 389 (2008) ............................................................ 36

*First State Ins. Co. v. National Cas. Co.,*
    2013 WL 8675930 (S.D.N.Y. Feb. 19, 2013) .................................... 64

*Fisher v. Aetna Life Insurance Co.,*
    32 F.4th 124 (2d Cir. 2022) ................................................. 21

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991) .............................................. 4, 6, 26, 31

*Giuffre v. Maxwell,*
    2020 WL 133570 (S.D.N.Y. Jan. 13, 2020) ................................. 62

*Grayson v. K-Mart Corp.,*
    79 F.3d 1086 (11th Cir. 1996) .............................. 29, 31, 33

*Greer v. Sterling Jewelers, Inc.,*
    2018 WL 3388086 (E.D. Cal. July 10, 2018) ............................ 47

*Guaranty Trust Co. v. York,*
    326 U.S. 99 (1945) ............................................................ 46

*Guyden v. Aetna, Inc.,*
    544 F.3d 376 (2d Cir. 2008) ................................... 7, 23, 48

vii

*Hollander v. American Cyanamid Co.,*
   895 F.2d 80 (2d Cir. 1990) ................................................................. 7

*Holowecki v. Federal Exp. Corp.,*
   440 F.3d 558 (2d Cir. 2006) ............................................................... 4

*Howlett v. Holiday Inns, Inc.,*
   49 F.3d 189 (6th Cir. 1995) .............................................................. 33

*In re Gen. Motors LLC Ignition Switch Litig.,*
   2015 WL 4750774 (S.D.N.Y. Aug. 11, 2015) .................................... 64

*Intersource, Inc. v. Kidder Peabody & Co.,*
   1992 WL 369918, (S.D.N.Y. Nov. 20, 1992) .................................... 66

*Jones v. American Postal Workers Union,*
   192 F.3d 417 (4th Cir. 1999) ............................................................ 36

*Kelleher v. Fred A. Cook, Inc.,*
   939 F.3d 465 (2d Cir. 2019) ............................................................ 20

*Keller Foundations, LLC v. Zurich American Ins. Co.,*
   758 Fed. Appx. 22 (2d Cir. 2018) .................................................... 21

*Kruchowski v. Weyerhaeuser Co.,*
   446 F.3d 1090 (10th Cir. 2006) ........................................................ 42

*Lerner v. Fleet Bank, N.A.,*
   459 F.3d 273 (2d Cir. 2006) ............................................................ 68

*Logan v. MGM Grand Detroit Casino,*
   939 F.3d 824 (6th Cir. 2019) ................................................ 34, 35, 40

*Lohnn v. International Business Machines Corp.,*
2022 WL 36420 (S.D.N.Y. Jan. 4, 2022).....................................................Passim

*Lohnn v. International Business Machines Corp.,*
2022 WL 3359737 (S.D.N.Y. Aug. 15, 2022) ................................... 9, 61, 62, 63

*Loksen v. Columbia Univ.,*
2013 WL 5549780 (S.D.N.Y. Oct. 14, 2013) ..................................................... 42

*Lugosch v. Pyramid Co. of Onondaga,*
435 F.3d 110 (2d Cir. 2006) ........................................................................Passim

*McCormack v. IBM,*
145 F. Supp. 3d 258 (S.D.N.Y. 2015)............................................... 10, 24, 68, 70

*Morgan v. Sundance, Inc.,*
142 S. Ct. 1708 (2022)................................................................................ 5, 27, 39

*Morrison v. Circuit City Stores, Inc.,*
317 F.3d 646 (6th Cir. 2003) ...................................................................... 40, 41

*N.L.R.B. v. New York Tel. Co.,*
930 F.2d 1009 (2d Cir. 1991) ............................................................................ 67

*Nat'l Org. for Marriage, Inc. v. Walsh,*
714 F.3d 682 (2d Cir. 2013) ............................................................................. 20

*Newton v. American Debt Services, Inc.,*
854 F.Supp.2d 712 (N.D. Cal. 2012)................................................................ 47

*Opals on Ice Lingerie v. Bodylines Inc.,*
320 F.3d 362 (2d Cir. 2003) ............................................................................. 66

ix

*Openshaw v. Fedex Ground Package Sys. Inc.*,
   731 F. Supp. 2d 987 (C.D. Cal. 2010) ................................................. 66

*Oubre v. Entergy Operations, Inc.*,
   522 U.S. 422 (1998) .................................................... 6, 14, 42

*Ragone v. Atlantic Video at Manhattan Center*,
   595 F.3d 115 (2d Cir. 2010) .......................................... 2, 35

*Rupert v. PPG Industries, Inc.*,
   2009 WL 596014 (W.D. Pa. Feb. 26, 2009)................................ 44

*Rusis v. International Business Machines Corp.*,
   2021 WL 116469 ............................................................ 16

*Salerno v. Credit One Bank, N.A.*,
   2020 WL 1558153 (W.D.N.Y. Mar. 31, 2020) ............................. 64

*Spira v. J.P. Morgan Chase & Co.*,
   466 F. App'x. 20 (2d Cir. 2012)......................................... 41

*Sun Oil Co. v. Wortman*,
   486 U.S. 717 (1988) ...................................................... 46

*Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ireland) Ltd.*,
   2021 WL 3540221 (S.D.N.Y. Aug. 11, 2021) ........................... 61, 64

*Syverson v. International Business Machines Corp.*,
   472 F.3d 1072 (9th Cir. 2007) ......................................... 44

*Thomforde v. International Business Machines Corp.*,
   406 F.3d 500 (8th Cir. 2005) .......................................... 44

*Thompson v. Fresh Products, LLC,*
   985 F.3d 509 (6th Cir. 2021) ....................................................................Passim

*Tolliver v. Xerox Corp.,*
   918 F.2d 1052 (2d Cir. 1990) ..................................................................Passim

*U.S. v. Amodeo,*
   71 F.3d 1044 (2d Cir. 1995) ........................................................... 57, 58, 59

*Utica Mutual Insurance Co. v. R&Q Insurance Co. f/k/a INA Reinsurance Co.,*
   2015 WL 13639179 (N.D.N.Y Dec. 10, 2015) ................................................. 64

*Vernon v. Cassadaga Valley Cent. School Dist.,*
   49 F.3d 886 (2d Cir. 1995) .......................................................................... 41, 46

*Wells Fargo Bank, N.A. v. Sharma,*
   642 F. Supp. 2d 242 (S.D.N.Y. 2009) ................................................................. 54

**Statutes**

9 U.S.C. § 10 ................................................................................................................ 56

28 U.S.C. § 1291 ........................................................................................................ 11

28 U.S.C. § 1331 ........................................................................................................ 11

28 U.S.C. §§ 2201-02 ........................................................................................ 1, 11

29 U.S.C. § 206(d) ................................................................................................... 34

29 U.S.C. § 621 .................................................................................................... 1, 11

29 U.S.C. § 626 ................................................................................................Passim

42 U.S.C. § 2000e-5(e)(1) ................................................................ 28

**Rules**

Fed. R. App. P. 27(d)(2)(A) ........................................................... 73

Fed. R. App. P. 32 .......................................................................... 73

Fed. R. App. R. 26.1 ........................................................................ 1

Fed. R. Civ. P. 60 ............................................................ 8, 23, 53, 56

**Regulations**

29 C.F.R. § 1625.22(b)(3) (2005) ................................................... 44

29 C.F.R. § 1625.22(f) .................................................................... 42

## INTRODUCTION

These consolidated cases were brought by twenty-six (26) former

IBM employees, seeking declaratory judgments pursuant to the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, that two provisions of an

arbitration agreement that they entered into with IBM are not enforceable,

as the provisions undermine or extinguish their ability to pursue their

claims against IBM under the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621 *et seq.*[2] Upon their terminations, Plaintiffs

entered into arbitration agreements with IBM that released (in exchange for

a small severance payment) almost all claims they may have against IBM,

but not claims under the ADEA.[3] Under this agreement, these employees

---

[2]     This Court has before it three other appeals, which raise nearly identical issues: *Chandler v. International Business Machines Corp.*, No. 22-1733; *Lodi v. International Business Machines Corp.*, No. 22-1737; and *Tavenner v. International Business Machines Corp.*, No 22-2318. Plaintiffs incorporate the Opening Briefs in these matters herein by reference, and Plaintiffs' counsel intends to move to have these appeals heard together.

[3]     IBM's arbitration agreement could not have waived Plaintiffs' ADEA claims, because IBM did not provide disclosures required under the Older Workers' Benefits Protection Act ("OWBPA"), 29 U.S.C. ¶ 626(f), to obtain

were permitted to pursue ADEA claims against IBM, but they had to be

brought in individual arbitrations.

However, two provisions of IBM's arbitration agreement prevent

Plaintiffs from pursuing their ADEA claims in arbitration – claims that they

would have been able to pursue in court had they not signed arbitration

agreements. Plaintiffs have thus sought declarations holding unenforceable

these two provisions. *See Ragone v. Atlantic Video at Manhattan Center*, 595

F.3d 115, 125-26 (2d Cir. 2010) ("[T]he appropriate remedy when a court is

faced with a plainly unconscionable provision of an arbitration agreement

– one which by itself would actually preclude a plaintiff from pursuing her

statutory rights – is to sever the improper provision of the arbitration

agreement, rather than void the entire agreement.").[4] It was proper for

_____

a release of claims under the ADEA. The agreement therefore *must* permit
Plaintiffs to pursue their ADEA claims.

[4]     The District Court seemed to expect that Plaintiffs were challenging
the arbitration agreement as a whole and considered procedural
unconscionability. However, Plaintiffs were not challenging the agreement
as a whole – they were only challenging two substantively unconscionable
provisions so that they could pursue their ADEA claims in arbitration.

2

Plaintiff to ask the District Court to hold these provisions unenforceable

since ███████████████████████████████████████████████

███████████████████████████████████████████████.[5]

Although Plaintiffs moved for summary judgment with an extensive

supporting record, the District Court granted IBM's cross-motion to

dismiss their complaints and denied their summary judgment motion. The

District Court's decision was rife with legal and factual errors and should

be reversed.

First, the District Court should have held unenforceable the

arbitration agreement's timeliness provision by which IBM purported to

abridge the limitations period for them to bring an ADEA claim. There can

---

[5] 

be no dispute that if Plaintiffs had been able to pursue their claims in court, they would have been timely.[6]

In court, Plaintiffs would be able to make use of the ADEA's "piggybacking rule," which allows individuals who did not timely submit an EEOC charge to nevertheless assert an ADEA claim if they can "piggyback" on someone else's timely filed classwide EEOC charge. *See Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057-59 (2d Cir. 1990); *Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 565-70 (2d Cir. 2006). Nevertheless, IBM prevented Plaintiffs from advancing their claims in arbitration even though they would have been considered ***amply*** timely to do so in court.

The District Court incorrectly held that the timeliness provision in the arbitration agreement was enforceable even if it abridged the time Plaintiffs

---

[6]     As the Supreme Court explained in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991), statutory claims are "are appropriate for arbitration" only "[s]o long as the prospectively litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum . . . ." (internal quotation omitted).

had to initiate their ADEA claim by *years*,[7] finding that the ADEA's timing scheme could be waived by contract because it was not a substantive right. This conclusion is *directly at odds* with the EEOC's interpretation of the statute, which was adopted by the Sixth Circuit in *Thompson v. Fresh Products, LLC*, 985 F.3d 509, 521 (6th Cir. 2021). *See also Thompson v. Fresh Products, LLC*, EEOC Brief, 2020 WL 1160190, at \*19-23 (March 2, 2020). The District Court's reasoning placed IBM's arbitration agreement above other contracts with respect to enforceability; in doing so, the District Court simply ignored *Thompson* because *Thompson* did not concern arbitration. But this runs afoul of *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022), which made clear that arbitration agreements are no more enforceable than any other type of contract.

Further, because the ADEA's timing scheme is a *substantive* right, it also governed by OWBPA, which includes strict requirements for obtaining

---

[7]    It so held with respect to the two Plaintiffs who had not already obtained a final award in arbitration – Flannery and Corbett. As explained *infra,* the District Court abused its discretion by declining to exercise jurisdiction over the declaratory judgment claims of the remaining twenty-four Plaintiffs.

an effective waiver of any right or claim under the ADEA. *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998). IBM did not meet these requirements and the arbitration agreement's purported abridgement of the ADEA's limitations period is unenforceable. At bottom, IBM's arbitration agreement impermissibly abridged the Plaintiffs' right to enjoy the full limitations period that they would have had to initiate their ADEA claims in court, which has impeded the effective vindication of Plaintiffs' claims in arbitration. *See Gilmer*, 500 U.S. 20.

Second, Plaintiffs challenged the agreement's confidentiality provision, which IBM has aggressively wielded to block employees pursuing discrimination cases against IBM in arbitration from using smoking gun evidence that Plaintiffs' counsel have obtained in other arbitration cases raising the same issues. [8] This Court has recognized the

---

[8]     In these arbitrations, Plaintiffs' counsel obtained ███████████ ████████████████████████████████████████████████ ███████, but IBM, wielding its confidentiality provision, has fought to prevent the use of this evidence across arbitrations. (SOF ¶¶ 17-80, App.025-038.)

6

crucial importance of such pattern and practice evidence in *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84-85 (2d Cir. 1990). Courts have routinely found similar confidentiality clauses in arbitration agreements unenforceable, and this Court has held that employees can challenge these provisions by developing a record demonstrating that they provide an unfair advantage to an employer. *See American Family Life Assurance Co. of N.Y. v. Baker*, 778 Fed. App'x. 24, 27 (2d Cir. 2019); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 384-85 (2d Cir. 2008); *Lohnn v. International Business Machines Corp.*, 2022 WL 36420, at *11 (S.D.N.Y. Jan. 4, 2022). The District Court erred when it refused to reach this issue.

Third, with respect to the other twenty-four (24) Plaintiffs ("Dismissal Plaintiffs"), the District Court abused its discretion by not reaching the enforceability of the timeliness provision, because it refused to exercise jurisdiction under the Declaratory Judgment Act. The District Court posited that their declaratory judgment claims would serve no useful purpose, because they already obtained final arbitration awards dismissing their claims. However, the District Court ignored the plain language of the

7

arbitration agreement which █████████████████████████████

██████████████████████. Thus, Plaintiffs properly sought the

court's determination of whether the timeliness provision was enforceable.[9]

Then, after obtaining a decision from court holding that the agreements

cannot waive their rights to pursue claims in arbitration, Plaintiffs would

have moved in their arbitrations for relief from judgment pursuant to Fed.

R. Civ. P. 60, which the arbitrators would be obligated to entertain under

the agreement. Arbitration Agreement at 26, App.105.

---

[9]     It was proper for Plaintiffs to bring this claim in court after having
submitted their claims to arbitration because, if they had sought a
declaration holding the timeliness provision unenforceable earlier, prior to
their arbitrations, the court may well have said ████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████. *See, e.g.*, *Billie v. Coverall North
America*, ---F. Supp.3d---, 2022 WL 807075, at \*7-14 (D. Conn. March 16,
2022); *CellInfo, LLC v. American Tower Corp.*, 506 F. Supp. 3d 61, 71-73 (D.
Mass. 2020). However, now that ████████████████████████████, it is
clear that these Plaintiffs need declaratory relief. With respect to the
plaintiffs who have not yet brought their claims in arbitration, it is now
clear that most ████████████████████████████████████████
████████████████, and so they can properly seek a ruling that this clause is
unenforceable.

Fourth, the District Court erred by keeping under seal significant portions of Plaintiffs' extensive summary judgment record as well as wide swathes of the briefing. As Judge Liman explained in *Lohnn v. International Business Machines Corp.*, "[t]he Supreme Court and Second Circuit have long held that there is a presumption of immediate public access to judicial documents under both the common law and the First Amendment." 2022 WL 36420, at *6 (S.D.N.Y. Jan. 4, 2022) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006)).[10] The District Court's decision to keep these documents under seal was directly contrary to this Court's decision in *Lugosch*, 435 F.3d at 123; *Lohnn*, 2022 WL 36420 at *9.

---

[10] In *Lohnn*, IBM then sought an emergency stay from this Court of the district court's order to unseal documents virtually identical as those in this case. This Court declined to stay the district court's order. *See Lohnn v. International Business Machines Corp.*, No. 22-32, Order, Dkt. 71 (2d Cir. Feb. 8, 2022). IBM then petitioned for a rehearing *en banc*, which this Court also denied. *See Lohnn*, Order, Dkt. 90 (2d Cir. Feb. 16, 2022). While several filings were largely unsealed, the exhibits forming the record was never unsealed, because the parties settled the case prior to the district court's approval of the parties' proposed limited redactions. *See Lohnn v. International Business Machines Corp.*, 2022 WL 3359737, at *2-6 (S.D.N.Y. Aug. 15, 2022).

Finally, the Court erred by denying Plaintiffs' motion to amend their complaints to assert a fraudulent inducement claim, alleging that IBM fraudulently induced its employees to enter into the arbitration agreements in the first place. The District Court incorrectly held that the 24 Dismissal Plaintiffs waived this claim by initiating their arbitrations. To the contrary, IBM has fought hard to conceal its fraudulent scheme, and Plaintiffs only obtained evidence supporting their fraudulent inducement claims after they had initiated their arbitrations. *See Lohnn*, 2022 WL 36420, at *12. Moreover, Plaintiffs Flannery and Corbett cannot have waived these claims, as they had not yet been to arbitration. The District Court also held that Plaintiffs did not meet the heightened pleading standard to bring a fraudulent inducement claim. However, the allegations in the proposed amended complaint amply satisfy the pleading standard, and at least one other court has held that similar allegations against IBM sufficed to allow a plaintiff to survive a motion to dismiss. *See McCormack v. IBM*, 145 F. Supp. 3d 258, 276 (S.D.N.Y. 2015).

The District Court's decision should be reversed.

10

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Plaintiffs'

claims pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought claims

pursuant to Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02,

regarding their rights under the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621 *et seq.* This Court has appellate jurisdiction

pursuant to 28 U.S.C. § 1291. Plaintiffs timely filed a notice of appeal on

August 5, 2022, App.606-607, appealing from the District Court's Opinion

and Order granting IBM's Motion to Dismiss and denying Plaintiffs'

Motion for Summary Judgment and Judgment issued on July 14, 2022.

App.597-603.

## STATEMENT OF THE ISSUES FOR REVIEW

**(1)** Whether the District Court erred by holding that IBM's arbitration agreement could waive Plaintiffs' ability to utilize the piggybacking rule under the ADEA.

**(2)** Whether the confidentiality provision is enforceable.

**(3)** Whether the District Court erred by declining to exercise jurisdiction over the declaratory judgment claims of the Dismissal Plaintiffs.

**(4)** Whether the District Court erred by keeping materials in this case under seal despite the strong presumption that judicial documents must be public. *See Lugosch*, 435 F.3d at 126.

**(5)** Whether the District Court erred by denying Plaintiffs' motion to amend their complaints to assert claims of fraudulent inducement.

## STATEMENT OF THE CASE

Plaintiffs are twenty-six (26) former employees of IBM, who sought a declaratory judgment that two provisions of an arbitration agreement that they entered into with IBM are not enforceable (a confidentiality provision and a timeliness provision), as they undermine or extinguish their ability to pursue claims against IBM under the ADEA. *See* Exemplar Complaint, App.001-010.

Plaintiffs alleged that IBM engaged in a systemic, years-long effort to reduce its number of older workers to create a younger workforce; the company sought to refresh its image to better compete with the younger, "hipper" technology companies such as Google, Facebook, and Amazon. (Statement of Material Facts (hereinafter "SOF") ¶ 3, App.019-020.)[11] Plaintiffs alleged that they fell victim to IBM's discriminatory scheme and IBM discriminated against them when terminating them on the basis of age. (Compl. ¶¶ 7-8, App.003.) After their layoffs, Plaintiffs signed an

---

[11] This discriminatory scheme is detailed in the Second Amended Complaint in *Rusis v. International Business Machines Corp.*, Civ. Act. No. 18-cv-08434, App.058-078.

arbitration agreement in exchange for a modest severance payment; this agreement released almost all claims that Plaintiffs had against IBM, with the specific exception of claims under the ADEA. (SOF ¶ 5, App.020.) The agreement allowed Plaintiffs to pursue claims under the ADEA but only in individual arbitration. (SOF ¶ 5, App.020.)[12]

## I. Background of Classwide Allegations, and the EEOC's Reasonable Cause Finding of Age Discrimination Against IBM

Plaintiffs are not the only individuals to have alleged that IBM engaged in systemic age discrimination in recent years. In 2018, an ADEA collective action was filed against IBM, *Rusis v. International Business Machines Corp.*, Civ. Act. No. 1:18-cv-08434 (S.D.N.Y.). As a predicate to bringing the action, lead plaintiff Edvin Rusis filed a class EEOC charge on May 10, 2018, alleging that IBM engaged in a companywide discriminatory scheme of laying off its older workers. (SOF ¶ 14 n.9, App.023.) [13]

---

[12]    Because IBM did not provide Plaintiffs disclosures required by the OWBPA, *see* SOF ¶ 5 n.3, App.020, the arbitration agreement could not release ADEA claims. *See Oubre*, 522 U.S. at 427.

[13]    *Rusis* named plaintiffs Henry Gerrits, Phil McGonegal, and Sally Gehring also timely filed timely classwide EEOC charges. (SOF ¶ 14 n.9,

## II. Plaintiffs' Challenge to the Arbitration Agreement's Purported Abridgement of the Time Period to File an ADEA Claim

Upon their terminations, Plaintiffs signed an arbitration agreement

that IBM has contended limits the time they had to submit their arbitration

demand to 300 or 180 days. Because arbitrators have agreed with IBM's

position, Plaintiffs have challenged the enforceability of the agreement's

timeliness provision.

The arbitration agreement states:

> To initiate arbitration, you must submit a written demand for
> arbitration to the IBM Arbitration Coordinator no later than the
> expiration of the statute of limitations (deadline for filing) that the
> law prescribes for the claim that you are making or, if the claim is one
> which must first be brought before a government agency, no later
> than the deadline for the filing of such a claim. If the demand for
> arbitration is not timely submitted, the claim shall be deemed
> waived. The filing of a charge or complaint with a government
> agency or the presentation of a concern though the IBM Open Door
> Program shall not substitute for or extend the time for submitting a

---

App.023.) Ms. Gehring was one of fifty-eight former IBM employees whose
charge led to a two-year, class-wide investigation by the EEOC, which
resulted in the agency issuing a Letter of Determination on August 31,
2020, finding reasonable cause that IBM has been engaged in an aggressive
campaign over at least a five-year period, from 2013 through 2018, to
reduce the number of its older workers and replace them with younger
workers, thereby discriminating against its older workers in violation of
the ADEA. (SOF ¶¶ 49-55, App.032-033.)

demand for arbitration.

(SOF ¶ 13, App.022.).

Twenty-four of the Plaintiffs in this appeal sought to bring ADEA

claims against IBM in arbitration. (SOF ¶ 7, App.020.) ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████. (SOF ¶ 9, App.021.) The two other Plaintiffs in

this appeal, Brian Flannery and Phillip Corbett, sought a declaration in

court rather than going straight to arbitration. (SOF ¶ 8 n.5, JA, App.021.)

Plaintiffs then sought to opt in to *Rusis* in order to challenge before a

court the validity of the purported waiver of piggybacking. (SOF ¶ 10,

App.021-022.) The *Rusis* court dismissed Plaintiffs due to the class action

waiver in the arbitration agreement. *See Rusis*, 2021 WL 116469, at *4-7.

Plaintiffs thereafter initiated individual matters in the Southern District of

New York, challenging the arbitration agreement. (SOF ¶ 11, App.022.) The

District Court consolidated 25 of these complaints into this proceeding.

(SOF ¶ 12, App.022.)

## III. Plaintiffs' Challenge to IBM's Aggressive Use of the Confidentiality Provision in the Arbitration Agreement

Plaintiffs also challenged IBM's aggressive use of its confidentiality provision as unconscionable and therefore unenforceable.[14] IBM has aggressively invoked this provision in the dozens of ADEA arbitrations that Plaintiffs' counsel have pursued on behalf of former employees and has used it to hamper the ability of former employees to prove their cases. Plaintiffs have put together a record demonstrating that IBM has routinely attempted (often successfully) to stop its former employees from using

---

[14] This provision states:

To protect the confidentiality of proprietary information, trade secrets or other sensitive information, the parties shall maintain the confidential nature of the arbitration proceeding and the award. The parties agree that any information related to the proceeding, such as documents produced, filings, witness statements or testimony, expert reports and hearing transcripts is confidential information which shall not be disclosed, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision by reason of this paragraph.

(SOF ¶ 16, App.024-025.)

*crucial* ███████████ evidence of IBM's discriminatory animus in their

arbitrations and to prevent the employees across arbitrations from relying

on key arbitral decisions.

For instance, IBM has used its confidentiality provision to block

employees from using evidence obtained in similar cases, including:

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████. (SOF ¶¶ 16-98,

App.024-045.)

## IV. The District Court Grants IBM's Motion to Dismiss Plaintiffs' Challenges to Its Arbitration Agreement

In the court below, Plaintiffs moved for summary judgment on their

Declaratory Judgment Act claims, while IBM moved to dismiss these

claims.

The District Court declined to exercise jurisdiction over the

declaratory judgment claims of the Dismissal Plaintiffs, finding no current

controversy between the parties. Opinion at 8, App.577. The District Court

declined to exercise jurisdiction over the remaining two Plaintiffs' claims

regarding the confidentiality provision, finding ripeness lacking. Opinion.

at 11, App.580.

The District Court granted IBM's motion to dismiss the remaining

two Plaintiffs' declaratory judgment claims challenging the enforceability

of the timeliness provision, finding that the timing scheme of the ADEA

was not a non-waivable substantive right, Opinion at 13-15, App.582-584,

and the timeliness provision did not prevent effective vindication of

Plaintiffs' ADEA rights, Opinion at 18, App.587.

19

Additionally, Plaintiffs separately moved to amend their complaints to assert classwide fraudulent inducement claims. (Proposed Am. Compl., App.547-569.) The District Court denied Plaintiffs' motion for leave to amend, finding futility (with respect to the Dismissal Plaintiffs) and that proposed amendments by the two remaining Plaintiffs failed to meet Rule 9(b) standards. Opinion at 23-24, App.592-593.

Lastly, in a separate decision, the District Court granted IBM's request to permanently seal many of the exhibits and briefing, as IBM contended they were confidential under the arbitration agreement's confidentiality provision. Memorandum Opinion and Order, App.597-603.

## STANDARD OF REVIEW

The Court reviews *de novo* a district court's order granting a motion to dismiss a complaint for failure to state a claim. *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467 (2d Cir. 2019).

The Court reviews *de novo* a district court's determination that it lacks subject-matter jurisdiction. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013).

20

The Court reviews a district court's decision of whether to hear a declaratory judgment claim for abuse of discretion. *See Keller Foundations, LLC v. Zurich American Ins. Co.*, 758 Fed. Appx. 22, 27 (2d Cir. 2018).

The Court reviews *de novo* a district court's order denying summary judgment. *See Fisher v. Aetna Life Insurance Co.*, 32 F.4th 124, 135 (2d Cir. 2022).

Finally, the Court reviews a district court's order to seal for an abuse of discretion with respect to the ultimate decision, clear error as to factual determinations, and *de novo* as to conclusions of law. *See Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

## SUMMARY OF THE ARGUMENT

The District Court committed several errors of law and fact in granting IBM's Motion to Dismiss and sealing request. These decisions should be reversed.

*First*, with respect to Plaintiffs Flannery and Corbett, the District Court incorrectly held that the timeliness provision of IBM's arbitration agreement was enforceable, even to the extent that it purports to the waive the ADEA's piggybacking rule. The waiver of this rule is unenforceable, as the ADEA limitations period is a substantive, non-waivable right. *See Thompson*, 985 F.3d at 521. To have waived Plaintiffs' ability to pursue an ADEA claim, IBM would have had to provide OWBPA disclosures, which it did not do.

*Second*, the Court erred when it did not find that the confidentiality provision is unenforceable. IBM has aggressively wielded its confidentiality provision to block employees pursuing discrimination cases against IBM in arbitration from using smoking gun evidence that Plaintiffs' counsel have obtained in other arbitration cases raising the same issues.

22

And this Court has made clear that a confidentiality provision may be unenforceable where, as here, a plaintiff builds a record showing it to have unduly prevented arbitration claimants from pursuing their claims. *See American Family Life Assurance Co.*, 778 Fed. App'x. at 27; *Guyden*, 544 F.3d at 384-85.

*Third*, the District Court abused its discretion in declining to exercise jurisdiction over the 24 Dismissal Plaintiffs who obtained final awards in their arbitrations. The District Court incorrectly concluded that the declaratory judgment claims would serve no useful purpose, as IBM's arbitration agreement requires arbitrators to entertain any motions the parties submit under the Federal Rules of Civil Procedure, and had the Court declared the timeliness provision unenforceable, Plaintiffs would submit motions for relief from judgment under Fed. R. Civ. P. 60 – which the arbitrators are *required* to hear – and likely proceed with their arbitrations.

*Fourth*, the District Court wrongly allowed significant portions of the record and briefing in this matter to be sealed, contravening this Court's decision in *Lugosch*, 435 F.3d at 126.

*Finally*, the District Court erred by denying Plaintiffs' motion to amend their complaints to add a fraudulent inducement claim, finding that the Dismissal Plaintiffs waived this claim by arbitrating their claims, despite the fact that IBM's fraudulent conduct was not known to the Plaintiffs until well after they attempted to arbitrate their claims. Additionally, the District Court incorrectly held that the pleadings did not satisfy the heightened pleading standards for fraudulent inducement claims. The pleadings in the proposed amended complaints amply set forth IBM's fraudulent conduct, similar to the allegations in *McCormack*, 145 F. Supp. 3d at 276, where the court denied IBM's motion to dismiss a fraudulent inducement claim.

# ARGUMENT

## I. Even Though Plaintiffs' ADEA Claims Would Have Been Timely Had They Filed in Court, the District Court Wrongly Held that IBM's Arbitration Agreement Could Render Their Claims Untimely

There can be no question that Plaintiffs' ADEA claims would have been timely had they filed in court. Plaintiffs could timely file their ADEA claims in court tomorrow by availing themselves of the "piggybacking" rule, and "piggyback" onto EEOC charges filed by the named plaintiffs in the earlier-filed class action age discrimination case against IBM, the *Rusis* matter, or the 58 charging parties that were a part of the EEOC investigation (SOF ¶ 10, App.App.003-004.). *See Tolliver*, 918 F.2d at 1057.[15]

IBM, however, argued to the arbitrators (successfully with respect to the 24 Dismissal Plaintiffs)[16] that the timeliness provision waives Plaintiffs' ability

---

[15] The arbitration agreement reads: "The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted." App.105. Plaintiffs contend that their claims arose in New York, as IBM's headquarters are in Armonk, New York, and thus Second Circuit law applies.

[16] The District Court declined to reach the substance of Plaintiffs' piggybacking argument with respect to the Dismissal Plaintiffs – as

to rely on the piggybacking rule. The effect of the arbitration agreement's purported waiver of application of the "piggybacking" rule is that the Plaintiffs' claims have been dismissed as time-barred and they are unable to pursue those claims in arbitration, even though they could timely proceed in court.

This outcome—that Plaintiffs could have proceeded with their claims in court but were unable to do so in arbitration due to the agreement truncating the time to file—is not permitted under *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). Under *Gilmer*, arbitration is an acceptable alternative forum **only so long as** an employee can pursue their claims in arbitration just as they would be able to in court, without sacrificing any substantive rights. Sacrificing the right to pursue the claim *at all* as a result of the arbitration agreement's shortening of the time period to file the claim, constitutes sacrificing a substantive right. *See*

———————————

explained herein, the District Court erred in reaching this conclusion. With respect to the two Plaintiffs who sought declarations in court prior to arbitrating their claims – Plaintiffs Flannery and Corbett – the District Court reached the substance of their piggybacking arguments but nevertheless engaged in a deeply flawed analysis.

*Thompson*, 985 F.3d at 521 (holding that contract provision shortening the time-period for plaintiff to file her ADEA claim to six-months, which would have resulted in plaintiff's claim being time-barred under the agreement, to be an unenforceable). The purported waiver of the application of the piggybacking rule to Plaintiffs' claims in arbitration is thus unenforceable, as it waives a substantive right by abridging the time period to file and because it was obtained without IBM providing OWBPA disclosures.

The District Court erred in reaching a contrary conclusion with respect to Plaintiffs Corbett and Flannery (the two Plaintiffs who had not yet arbitrated their claims), and this Court should reverse. In dismissing Plaintiffs' challenge to the timeliness provision, the District Court has placed arbitration agreement on a pedestal above other kinds of contracts, running afoul of the Supreme Court's recent admonition in *Morgan*, 142 S. Ct. at 1713, that courts cannot invent special rules to favor enforceability of arbitration agreements.

### A. The ADEA's Timing Scheme, Including the "Piggybacking" Rule, is a Substantive Right that Cannot be Abridged by Contract

Pursuant to the ADEA, individuals are required to file a charge with the EEOC within 300 days of the date of the alleged discriminatory act (or within 180 days in non-deferral jurisdictions). 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d), 633(b). However, this statutory period can be tolled by the filing of a class-wide EEOC charge by a similarly situated individual under the "piggybacking" or "single filing" rule.

The piggybacking rule permits individuals to assert ADEA claims against employers even if the claims are brought outside the time to file an EEOC charge. Under the rule, a plaintiff can "piggyback" off of an earlier, timely-filed EEOC charge alleging that the employer engaged in a similar course of discrimination. *See Tolliver*, 918 F.2d at 1057. "Thus, a plaintiff who has never filed an EEOC charge, and therefore has never given notice of her discrimination complaint to either the employer or the EEOC, can still litigate her claims so long as they fall 'within the scope' of the timely

filed claims."*Cronas v. Willis Group Holdings Ltd.*, 2007 WL 2739769, at *3

(S.D.N.Y. Sept. 17, 2008).[17]

Importantly, a plaintiff may initiate a separate, individual action by

piggybacking off charges filed by plaintiffs to a separate action. *Tolliver*, 918

F.2d at 1057 ("[t]he purpose of the charge filing requirement is fully served

by an administrative claim that alerts the EEOC to the nature and scope of

the grievance, regardless of whether those with a similar grievance elect to

join a preexisting suit **or initiate their own.**"); *see also Calloway v. Partners*

*Nat. Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993).[18]

---

[17]     The administrative prerequisites of discrimination statutes such as
the ADEA and Title VII "must be interpreted liberally to effectuate [their]
purpose of eradicating employment discrimination," and courts must look
to "fairness, and not excessive technicality" in addressing such issues.
*Cronas v. Willis Group Holdings Ltd.*, 2007 WL 2739769, at *2 (S.D.N.Y. Sept.
17, 2007). Moreover, the Second Circuit has "aligned itself with the
'broadest' interpretation of the single-filing rule." *Id.* at *6 (citing *Tolliver v.
Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990)).

[18]     IBM will likely argue that the timeliness provision waiving the ability
to piggyback is not the reason for the inability of IBM's former employees
to arbitrate their claims, because they could have demanded arbitration
during the 300/180 day window. Setting aside that the arbitration
agreement is not actually explicit as to the deadline for arbitration
demands, these former employees were not generally aware that IBM had

In extending the "piggybacking" rule (or "single filing rule") to the ADEA context in *Tolliver*, this Court examined the language of the statute, as well as the remedial purpose behind the ADEA's notice provision; it identified the notice provision of section 7(d) as one of "two provisions that function like statutes of limitations." *Id.* at 1056.

The Court began its analysis of section 7(d) by observing that "[a]s originally enacted, section 7(d) provided that a suit [under the ADEA] could not be commenced 'by any individual under this section until *the individual* has given'" of the claim to the government entity tasked with

---

discriminated against them at the time of their separations, because IBM had (falsely) informed them that they were separated for legitimate reasons. Indeed, this is the very reason that Congress enacted OWBPA, which allows laid off employees to evaluate whether their terminations may be due to age discrimination by requiring disclosure of the ages of other employees who were terminated and retained in the same layoff. Because IBM did not provide these disclosures to its former employees, they lacked information to know that they may have a viable age discrimination claim until later when they learned of allegations that IBM was engaged in a companywide systemic effort to oust older workers. This is also the reason behind the piggybacking rule; employees may not realize they have a discrimination claim at the time of their termination, but later, when they find out that a class charge of discrimination has been filed, they may join it. *See Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1103 (11th Cir. 1996).

enforcement. *Id.* "In 1978, Congress amended section 7(d) to eliminate the requirement that 'the individual' bringing suit must have given the administrative notice and provided instead that suit could not be brought until 60 days after *'a charge* alleging unlawful discrimination has been filed with the Secretary'" of Labor (who was then the enforcing entity before that responsibility was transferred to the EEOC). *Id.* (citing Pub.L. No. 95–256, § 4(a), 92 Stat. 189, 190 (1978)) (emphasis supplied in *Tolliver*).

The court expressly acknowledged that the 1978 amendment was intended by Congress to limit failure to timely file notice as "most common basis for dismissal of ADEA lawsuits by private individuals" and "to make it more likely that the courts will reach the merits of the cases of aggrieved individuals...." *Id.* (quoting S.Rep. No. 493, 95th Cong., 1st Sess. 12 (1977), U.S.Code Cong. & Admin.News 1978, pp. 504, 515).[19] In other words, this

---

[19]    The U.S. Dep't of Labor, Age Discrimination in Employment Act of 1967, 1976 Annual Report to Congress, had reported that two-thirds of all suits filed by private litigants were dismissed on procedural grounds. *See* Thomas J. Reed, *Age Discrimination in Employment: The 1978 ADEA Amendments and The Social Impact of Aging*, 2:15 Univ. of Puget Sound L. Rev.15, 42 1978. Another empirical report showed that the most often cited reason for dismissing an ADEA case prior to June of 1977 was sufficiency

31

Court acknowledged that piggybacking is baked into the language of the statutory provision of the ADEA that functions like a statute of limitations.[20]

The Court in *Tolliver* also acknowledged the practical impact of the piggybacking rule, which permits individuals to institute lawsuits outside

---

or insufficiency of notice. *Id.* at 44-45. An internal memorandum circulated in May of 1977 reported that the ADEA compliance regulations "were the least effective program administered by the Wage-Hour Division". *Id.* at 43. Congressional amendments to the Act were intended to "make equitable exceptions to the" notice requirements available in court. *Id.* at 77.

[20]  Since *Tolliver*, Congress has amended the ADEA, and has declined to amend the statute so as to preclude piggybacking. *See, e.g.*, Pub. L. 104–208, div. A, title I, § 101(a) [title I, § 119], Sept. 30, 1996, 110 Stat. 3009, 3009–23.

In *Chandler*, one of the other appeals before this Court, the court held that the "piggybacking rule is not part of the statute of limitations law of the ADEA" and that "[i]nstead, the piggybacking rule is an exception to the exhaustion doctrine that excuses plaintiffs from notifying their employer and the EEOC of their claims and filing an EEOC charge when those parties are already on notice of the facts surrounding the plaintiff's claims from an earlier filed EEOC charge." *Chandler*, 2022 WL 2473340, at *4. This conclusion runs contrary to this Court's discussion of the piggybacking rule and its implications of the ADEA's limitations period in *Tolliver*, 918 F.2d at 1056-60, as well as the ADEA's legislative history discussed *supra*. The *Chandler* court's block quotation from *Tolliver* ignores this Court's discussion of amendments to the statutory language and the Court's characterization of the notice requirement as functioning like a statute of limitations provision. *See Chandler*, 2022 WL 2473340, at *4.

the ADEA's 300 (or 180 day) window, *Tolliver*, 918 F.2d at 1059, and noted

that the remedial purpose of the notice requirement is served by its

application as it affords the EEOC the ability to fulfill its statutory purpose

of "seek[ing] to eliminate any alleged unlawful practice by informal

methods of conciliation, conference, and persuasion[,]" by investigating the

initial charge. *Id.* at 1057 (quoting 29 U.S.C. § 626(d)). Thus, application of

the piggybacking in the ADEA bolsters the remedial effect of the statute.

This Court's decision in *Tolliver* to extend the piggybacking rule to

the ADEA context and individual actions, is in line with sister Circuit

Court precedents. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1103 (11th Cir.

1996); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194 (6th Cir. 1995); *cf. Anson

v. Univ. of Tex. Health Sci. Ctr. At Hous.*, 962 F.2d 539, 541 (5th Cir. 1992).

The discussion of the ADEA's timing scheme in *Tolliver* is in accord

with the Sixth Circuit's discussion of this scheme in *Thompson*. There, the

Sixth Circuit held that an employer cannot contractually shorten the

limitations period of the ADEA because the timing provisions contained in

33

the ADEA "are part of the **substantive law** of the cause of action created by the ADEA." *Thompson*, 985 F.3d at 521.

In so concluding, the Sixth Circuit relied on an earlier case, *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 833 (6th Cir. 2019), which held that an employer could not abrogate the limitations period for a Title VII claim by contract. As the Court reasoned, although statutes of limitations are traditionally regarded as procedural mechanisms, there are exceptions to this general rule where statutes that "create rights and remedies contain their own limitation periods." *Id.* (citing *Davis v. Mills*, 194 U.S. 451, 454 (1904)). In such instances, the statute of limitations is considered a "substantive right" that "generally is not waivable in advance by employees." *Id.* at 829. The Court noted that this conclusion aligned with Circuit precedent "disallow[ing] contractual limitations" on claims brought under other statutory schemes containing their own limitations periods, such as the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d) and the Equal Pay Act, 29 U.S.C. § 206(d). *Id.* at 830-31. Case law within the Second Circuit similarly holds that limitations periods under statutes such as the

FLSA are substantive rights that cannot be truncated by contract.[21] Further, this Court in *Ragone*, 595 F.3d at 125-26, indicated its agreement with the principles espoused in *Logan*, including in the context of evaluating the enforceability of an arbitration agreement.[22]

In *Thompson*, the court extended its ruling in *Logan* to the ADEA. *See Thompson*, 985 F.3d at 521. The Sixth Circuit noted that application of the rule against enforcing contractual limitations on the ADEA time period furthers the underlying purpose of the notice provision: "[T]he ADEA emphasizes the importance of the pre-suit cooperative process, outlining the EEOC's obligation upon receiving a charge to 'seek to eliminate any

---

[21] *See, e.g., Castellanos v. Raymours Furniture Company, Inc.*, 291 F. Supp. 3d 294, 301 (E.D.N.Y. 2018).

[22] In *Ragone*, the arbitration agreement at issue included a provision shortening the time for plaintiff to file a Title VII claim to 90-days; the defendant agreed to waive enforcement of the provision, so this Court did not rule on the provision's enforceability. *Id.* at 123. The Court however rang a "A Note of Caution", that "[h]ad the defendants attempted to enforce the arbitration agreement as originally written it is not clear that we would hold in their favor … [I]t is at least possible that Ragone would be able to demonstrate that th[is] provision[] w[as] incompatible with her ability to pursue her Title VII claims in arbitration, and therefore void under the FAA." *Id.* at 125-26.

alleged unlawful practice by informal methods of conciliation, conference, and persuasion.' 29 U.S.C. § 626(d)(2). Altering the time limitations surrounding these processes risks undermining the statute's uniform application and frustrating efforts to foster employer cooperation." *Id.* at 521. Importantly, the EEOC submitted an amicus brief in *Thompson*, also taking the position that "the ADEA's statutory limitations period is a substantive right and prospective waivers of its limitations period are unenforceable." *See Thompson*, EEOC Brief, 2020 WL 1160190, at *19-23. The EEOC's reasonable interpretation of the ADEA as set forth in this amicus is entitled to deference. *See EEOC v. Comm. Office Prods. Co.*, 486 U.S. 107, 115 (1988) ("[I]t is axiomatic that the EEOC's interpretation of [the ADEA], for which it has primary enforcement responsibility, need . . . only be reasonable to be entitled to deference.").[23]

In sum, under this Court's ruling in *Tolliver*, and the reasoning in *Thompson* (approved of in *Ragone*), the time-period for filing contained in

---

[23]     *See also Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)); *Jones v. American Postal Workers Union*, 192 F.3d 417, 427 (4th Cir. 1999).

the ADEA, to which the piggybacking rule is integral, should be held to be

a substantive right that cannot be waived or truncated in an arbitration

agreement. Indeed, given the fact that this Court's strong and expansive

position in favor of the piggybacking rule, this Court should follow

*Thompson*.[24] The District Court's refusal to recognize this substantive right

was flawed.

### B. The District Court Erred by Declining to Follow the EEOC and the Sixth Circuit in *Thompson*, Instead Holding that the ADEA's Timing Scheme was a Procedural Right that Could be Waived in an Arbitration Agreement

First, the District Court erred in narrowly construing the ADEA as

***only*** providing the substantive right to be free from workplace age

discrimination. Opinion at 13-17, App.582-586 (citing *14 Penn Plaza LLC v.

Pyett*, 556 U.S. 247, 265 (2009)). *14 Penn Plaza* does not declare the right to

be free from workplace age discrimination to be the ***only*** substantive right

---

[24]    As one court has described it, the Second Circuit has "aligned itself
with the 'broadest' interpretation" of the piggybacking rule. *Cronas*, 2007
WL 2739769, at *5 (applying the piggybacking rule because the court
should not "elevate form over substance" when ensuring that employees
bringing discrimination claims can have their complaints heard) (citing
*Tolliver*, 918 F.2d at 1057).

(to the exclusion of all others) provided under the ADEA; the cited portion

of the case simply stands for the now widely accepted rule that "[t]he

decision to resolve ADEA claims by way of arbitration instead of litigation

does not waive the statutory right to be free from workplace age

discrimination." This language is subject to *Gilmer* and this Court's *dicta* in

*Ragone* is directly at odds with the District Court's narrow proclamation

here, as this Court has recognized that the time-period for filing an anti-

discrimination claim may be construed as a substantive right.[25]

Additionally, the District Court erred in wholly failing to grapple

with the analysis in *Thompson*, under which Plaintiffs contend the

conclusion that piggybacking is a substantive right. The District Court

---

[25] In support of its narrow reading, the District Court relied on *Estle v. International Business Machines Corp.*, 23 F.4th 210, 214 (2d Cir. 2022). However, *Estle* is not relevant, as it concerned whether the collective action waiver contained in IBM's arbitration agreement was valid despite the fact that IBM failed to make certain disclosures required under the OWBPA. *See id.* at 211-12. The Second Circuit concluded that the collective action waiver was valid under the OWBPA, because the collective action mechanism is a procedural right rather than a substantive right. *See id.* at *213-15. *Estle* said *nothing* with respect to the question in this case – whether the ADEA's timing scheme is a **<u>substantive</u>** right rather than a procedural right.

primarily distinguished *Thompson* because the *Thompson* court was not faced with analyzing the enforceability of a waiver in an arbitration agreement. *See* Opinion at 15-16, App.584-585. It is immaterial that the Sixth Circuit was not analyzing an arbitration agreement in *Thompson*. IBM has sought to waive a substantive right in an arbitration agreement as opposed to other kinds of contracts (such as a pre-employment agreement in *Thompson*) does not immunize it from enforceability challenges. The Supreme Court recently made clear in *Morgan* that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan*, 142 S.Ct. at 1713. Indeed, the FAA contains "a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration." *Id.* at 1714. The District Court's conclusion that *Thompson*'s holding is inapplicable to arbitration agreements runs headlong into *Morgan*. IBM's arbitration agreement is no different from the pre-employment contract at issue in *Thompson* – in either case, the ADEA's limitations period is a substantive right that cannot be abridged by contract. Furthermore, this Court's *dicta* in *Ragone* suggests

that even in the arbitration context, a provision shortening the time period to file an anti-discrimination claim may be unenforceable as "incompatible with [the] ability to pursue [] Title VII claims in arbitration, and therefore void **under the FAA**." *Id.* at 125-26 (emphasis supplied).

Importantly, the District Court erroneously attempted to distinguish Logan by pointing to *dicta* intended by the Sixth Circuit to distinguish its holding in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003). In *Morrison*, the Sixth Circuit found that an arbitration provision abridging the limitations period for a Title VII claim was enforceable, because it did not unduly burden the plaintiff's effective vindication of her claim. *See Logan*, 939 F.3d at 837-38.[26] However, in *Morrison*—unlike the case before this Court—there was no indication that the plaintiff had been burdened at all by the limitations provision of the arbitration agreement, because in fact the plaintiff had been able to actually arbitrate her claim on the merits to a

---

[26] The *Logan* court pointed out that resolving the question in *Morrison* "required carefully balancing the 'liberal policy favoring arbitration and the important goals of federal anti-discrimination statutes.'" *Logan*, 939 F.3d at 838.

40

final award. *Morrison*, 317 F.3d at 655. Thus, neither *Morrison* nor *Logan* runs counter to Plaintiffs' position here: that where an arbitration agreement deprives a litigant of a substantive right under the ADEA, it is void under the FAA.

Moreover, as discussed further below, *Logan* and *Morrison* are both distinguishable because these cases address a plaintiff's ability to pursue Title VII claims.[27] Unlike Title VII, the ADEA implicates the requirements of OWBPA, which IBM failed to comply with despite the arbitration agreement's waiver of the piggybacking rule. IBM's failure to provide Plaintiffs with OWBPA disclosures is an additional reason to hold that the Timeliness Provision in IBM's arbitration agreement is unenforceable.

---

[27] As is explained more fully below, while the District Court relied on cases such as *Vernon v. Cassadaga Valley Cent. School Dist.*, 49 F.3d 886, 890 (2d Cir. 1995), and *Spira v. J.P. Morgan Chase & Co.*, 466 F. App'x. 20, 22-23 (2d Cir. 2012), in finding that the ADEA's limitations period is procedural, those cases do not address the circumstances present in this matter. *Vernon* did not hold that the ADEA's limitations period was procedural for all purposes, instead just for the purpose of determining whether a statutory amendment to the limitations period was retroactive. *See Vernon*, 49 F.3d at 890. *Spira* did not even concern the ADEA limitations period. *See Spira*, 466 F. App'x. at 22-23.

**C.     The District Court Erred in Holding that IBM's Failure to Provide OWBPA Disclosures Did Not Render the Timeliness Provision Unenforceable**

Even if IBM were correct that it could abridge the ADEA's limitations in its arbitration agreement (which it is not), IBM's argument fails for yet another reason. The timeliness provision cannot waive application of the piggybacking rule (and, effectively Plaintiffs' claims altogether) under the ADEA, since IBM did not provide the disclosures required under OWBPA to obtain such a waiver. Under OWBPA, IBM must provide disclosures to Plaintiffs regarding the ages of other employees selected and not selected for layoff. Its failure to do so renders any purported waiver of the piggybacking rule unenforceable.

The OWBPA mandates strict requirements for employers to obtain a valid waiver from an employee of "any right or claim" under the ADEA. *See* 29 U.S.C. § 626 (f)(1)(H); 29 C.F.R. § 1625.22(f); *see also Oubre*, 522 U.S. at 427.[28] Importantly, the EEOC has taken the position that OWBPA protects

---

[28]     The OWBPA's requirements have been enforced strictly. *See, e.g., Kruchowski v. Weyerhaeuser Co.*, 446 F.3d 1090, 1093-96 (10th Cir. 2006);

42

employees from waiving rights by abridging their time to pursue their

claims if they did not receive the proper disclosures:

> The ADEA does have one other arguably relevant provision with no analogue in Title VII: 29 U.S.C. § 626(f) . . ., which expressly governs waivers of "rights or claims under this chapter." However, § 626(f), read together with *Logan*'s holding that a statutory limitation period is a substantive right, only strengthens the argument against construing the ADEA's limitations period as prospectively waivable.

*Thompson*, EEOC Brief, 2020 WL 1160190, at *25. Because IBM did not

provide OWBPA disclosures to Plaintiffs, Plaintiffs cannot have waived

their statute of limitations rights under the piggybacking rule by signing

the arbitration agreement. To the extent the agreement purports to or is

held to waive that rule, that provision is invalid.

Tellingly, the *Thompson* court even pointed to OWBPA as an indicator

that the ADEA's limitations period was a substantive right that could not

be waived:

> The ADEA's waiver provision further supports the conclusion that**, as a substantive right, its self-contained limitation period may not be prospectively waived.** It provides that "[a]n individual may not waive any right or claim under this chapter unless the waiver is

---

*Loksen v. Columbia Univ.*, 2013 WL 5549780, at *7-8 (S.D.N.Y. Oct. 14, 2013); *Butcher v. Gerber Prods. Co.*, 8 F. Supp. 2d 307, 314 (S.D.N.Y. 1998).

knowing and voluntary." 29 U.S.C. § 626(f). A waiver may not be "knowing and voluntary" if it includes waiver of "rights or claims that may arise after the date the waiver is executed." *Id.* § 626(f)(C). The statute's strict limitations on waivers align with "the general rule in this circuit that an employee may not prospectively waive his or her rights under either Title VII or the ADEA." *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 584 (6th Cir. 1995).

*Thompson*, 985 F.3d at 521.[29] There is no dispute that IBM **did not make**

**these disclosures** regarding the ages of employees selected and not

---

[29]     Moreover, the arbitration agreement's purported waiver of the piggybacking is further invalid because OWBPA requires that, for a waiver to be valid, it must be "a part of an agreement between the individual and the employer that is **calculated to be understood by such individual, or by the average individual eligible to participate.**" 29 U.S.C. § 626(f)(1(A) (emphasis added). The timing provision is not only incoherent, but requires the reader to have the expertise of an employment discrimination lawyer and a thorough understanding of administrative exhaustion to parse it. To even attempt to understand the statute of limitations that applies to them, the IBM employees would have to understand: (1) the administrative and court statute of limitations under the ADEA; (2) which types of claims "must first be brought before a government agency"; and (3) the deadline for filing with the administrative agency in their state. That is certainly more information than the average IBM employee has. The OWBPA's requirement that the language of the waiver be calculated to be understood by the employee has been strictly construed by numerous courts, including against IBM. *See Syverson v. International Business Machines Corp.,* 472 F.3d 1072, 1082-87 (9th Cir. 2007) (invalidating a waiver containing both a release and a covenant not to sue because average individuals might be confused and think that they could still bring an action under the ADEA); *Thomforde v. International Business Machines Corp.,*

44

selected for layoff, and therefore Plaintiffs cannot have waived their rights under the ADEA's timing scheme (whether in arbitration or otherwise).

The lower court, however, reasoned that IBM's failure to provide OWBPA disclosures did not render the provision unenforceable based on its conclusion that piggybacking is not a substantive right and OWBPA disclosures are only required to obtain waivers of a substantive right under the ADEA. This circular reasoning should be rejected for multiple reasons.

First, as argued herein, the time-period to file under the ADEA, including piggybacking, *does* constitute a substantive right that triggers OWBPA requirements. Even if it were possible to abridge the ADEA limitations period as IBM purports to do in its arbitration agreement (which it is not), IBM would have had to first meet the requirements of

---

406 F.3d 500, 503-05 (8th Cir. 2005) (same); *Bogacz v. MTD Products, Inc.,* 694 F. Supp. 2d 400, 404-11 (W.D. Pa. 2010); *Rupert v. PPG Industries, Inc.,* 2009 WL 596014, at *38-49 (W.D. Pa. Feb. 26, 2009); *see also* 29 C.F.R. § 1625.22(b)(3) (2005) (comprehensibility requirement "usually will require the limitation or elimination of technical jargon and of long, complex sentences.").

OWBPA in order to validly do so. This failure to satisfy OWBPA renders the timing provision unenforceable.

Second, even if the District Court was correct in holding that piggybacking is not a substantive right for *all* purposes, piggybacking *is* a substantive right in this specific context, sufficient to trigger the obligations of OWBPA. As Judge Cabranes noted in concurrence in *Vernon v. Cassadaga Valley Cent. School Dist.*, 49 F.3d 886, 892 (2d Cir. 1995), "statutes of limitations . . . govern whether an individual can vindicate a right" and thus "lie on the cusp of the procedural substantive distinction." Statutes of limitations are therefore treated as "procedural" for some purposes, such as for choice-of-law purposes, *see Guaranty Trust Co. v. York*, 326 U.S. 99 (1945), and as "substantive" for the purposes of the *Erie* doctrine, *see Sun Oil Co. v. Wortman*, 486 U.S. 717, 727 (1988). *See Vernon*, 49 F.3d at 892 (Cabranes, J. concurring). Therefore, while the ADEA's limitations period may be considered procedural for the purposes of analyzing whether a statutory amendment to it applies retroactively, it may be considered substantive for the purposes of determining whether a limitations period

46

may be waived or truncated by contract (as argued herein), **or for the**

**purposes of OWBPA**. *See Thompson*, 985 F.3d at 521.[30]

For these reasons, IBM's failure to provide OWBPA disclosures

provides an additional reason to hold the purported waiver of the

---

[30] Even if the piggybacking rule were a procedural right, the arbitration agreement could not waive the piggybacking rule if doing so impeded the effective vindication of the Plaintiffs' ADEA claims – indeed, the District Court acknowledged this point. *See* Opinion at 17-18, App.586-587. The practical effect of the timeliness provision is that Plaintiffs would have had *years* longer to submit their claims in court than they did in arbitration. This is an impermissible impediment to the effective vindication of their claims. *See Ragone*, 595 F.2d at 125 (explaining that "if certain terms of an arbitration agreement served to act 'as a prospective waiver of a party's right to pursue statutory remedies . . . , we would have little hesitation in condemning the agreement as against public policy"); *Greer v. Sterling Jewelers, Inc.*, 2018 WL 3388086, at *6-7 (E.D. Cal. July 10, 2018) (finding arbitration agreement's one-year statute of limitation to bring a Fair Employment & Housing Act claim to be unconscionable, where the FEHA statute provides litigants with one year to file such a claim with the state administrative agency *plus* one additional year from the administrative claim being processed to file a civil claim); *Newton v. American Debt Services, Inc.*, 854 F.Supp.2d 712, 732-33 (N.D. Cal. 2012) (finding arbitration clause as a whole unconscionable and therefore unenforceable; "[T]he shortened statute of limitations has the practical effect of limiting a customer's ability to bring a claim in arbitration by requiring a customer to give up their statutorily-mandated statute of limitations and risk losing their claim forever if they did not bring a claim within one year.").

piggybacking rule in the Timeliness Provision to be unenforceable and

void under the FAA.

## II.    The District Court Erred In Failing to Find the Confidentiality Provision to be Unenforceable

As will be explained more fully in the Opening Brief in *Chandler*,

Case No. 22-1733, Plaintiffs have submitted an extensive record

demonstrating that IBM has aggressively used the arbitration agreement's

confidentiality provision to unduly hinder the ability of its former

employees to advance age discrimination claims against IBM in

arbitration.[31] When Plaintiffs arbitrate their claims, they should have an

even playing field wherein IBM cannot block them from making use of

directly relevant, shockingly incriminating evidence, as well as arbitral

decisions.

This Court, in its decisions in *Guyden*, 544 F.3d at 384-85 and *American*

---

[31]    The *Chandler* Opening Brief contains a thorough description of the record that the plaintiff submitted in support of his summary judgment motion asking the court to invalidate the confidentiality provision. The record in *Chandler* is materially the same as that the Plaintiffs in this matter submitted to the District Court, which can be found at App.058-474.

*Family Life Assurance Co.*, 778 Fed. App'x. at 27, has made clear that

although the mere presence of a confidentiality provision in an arbitration

agreement does not render it unenforceable, it may be shown to be so upon

a demonstration that it has unfairly advantaged one party over the other.

*See also Lohnn*, 2022 WL 36420, at *11 ("[U]nless *Green Tree* and *Guyden* are

to be empty letters, a plaintiff must be allowed to present a record that the

effect of a challenged arbitration provision (or set of arbitration provisions)

is to deprive her of a meaningful opportunity to present her claim.").[32] The

_____

[32]     Like the Plaintiffs in this matter, the plaintiff in *Lohnn* brought a declaratory judgment claim to challenge the enforceability of the confidentiality provision in IBM's arbitration agreement. *See Lohnn*, 2022 WL 36420, at *1. After the *Lohnn* plaintiff filed a motion for summary judgment substantively identical to that filed in this matter, the *Lohnn* court directed briefing on whether the supposedly confidential material in the summary judgment record and briefing should remain under seal. *See id.* IBM argued that the *Lohnn* plaintiff's decision to include the summary judgment record was a "ruse" to make public information that would otherwise be subject to the confidentiality provision. *See id.* at *12. *Lohnn* rejected that argument, explaining that the plaintiff submitted a record as necessary to make out her claim. *See id.* Moreover, *Lohnn* held that these documents were judicial documents subject to the presumption of public access and that they must be unsealed, subject to limited redactions. *See id.* at *17-18.

District Court's findings should eb reversed.[33]

## III. The Court Should Reverse the District Court's Refusal to Exercise Jurisdiction Over Plaintiffs' Claims

After soliciting briefing from the parties regarding the Court's

jurisdiction over Plaintiffs' declaratory judgment claims, the District Court

concluded on August 24, 2021, that "it is satisfied that there is subject-

matter jurisdiction given that the underlying arbitrations involved claims

under the Age Discrimination in Employment Act." Order at 5, App.574.

Then, after nearly a year of litigation, the District Court made an about-face

---

[33] The District Court erred in declining to reach this issue, finding that these claims "are not yet – and may never become – ripe" because, in the District Court's view, the Plaintiffs do not have timely ADEA claims in the first instance. *See* Opinion at 11. Yet Plaintiffs' request for a declaration regarding the unenforceability of the confidentiality provision is ripe, because Plaintiffs have challenged the confidentiality provision, IBM has successfully asserted that enforceability and validity questions should be resolve in *court*, and Plaintiffs have brought their declaratory judgment claims challenging the enforceability of this contractual provision. Moreover, even adopting the District Court's ripeness analysis, the District Court erred in dismissing these claims, as the timeliness provision is unenforceable and Plaintiffs ADEA claims are timely. For these reasons, the District Court's findings should be reversed.

Additionally, and as will be explained in herein, the District Court should have also reached this issue with respect to the Dismissal Plaintiffs whose claims the District Court declined to entertain.

50

and concluded that jurisdiction was lacking. This conclusion is erroneous, and the dismissal of Plaintiffs' claims should be reversed.

The District Court reached its conclusion after noting that the Second Circuit has instructed that "[i]n order to decide whether to entertain an action for declaratory judgment," the District Court is to ask: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). The District Court erred when it dismissed Plaintiffs' claims.

Specifically, with regard to the 24 Dismissal Plaintiffs,[34] the District Court found that "there is no current or impending controversy about the[ir] rights or obligations [vis-à-vis IBM] for this Court to clarify" because they "already arbitrated their ADEA claims, lost, and chose not to file any motion to vacate the arbitral decision within the three-month deadline

---

[34]     As explained *supra*, the District Court exercised its jurisdiction over Plaintiffs Corbett's and Flannery's declaratory judgment claims, since they had not yet arbitrated their claims.

51

under the FAA" and then "waited two (and in some cases more than two) years after they received their arbitration decisions to initiate this action . . .." *See* Opinion at 8-9, App.577-578 (internal quotation marks omitted; alterations in original). Thus, the District Court declined to exercise subject matter jurisdiction over the claims because it determined that a declaratory judgment would not have served a useful purpose. *See generally* Opinion, at 8-9, App.577-578. These conclusions are erroneous. *Id*.[35]

First, contrary to the District Court's conclusion, the arbitration proceedings did ***not*** "definitively resolve[] the Post-Arbitration Plaintiffs' ADEA claims", as the Arbitrators did not reach the merits of the Plaintiffs' ADEA claims. Rather, in Plaintiffs' arbitration proceedings, IBM successfully argued that Plaintiffs' ADEA claims were untimely and that the Arbitrators could not even consider Plaintiffs' challenge to the enforceability of the purported timeliness provision because the arbitration

---

[35] While the District Court pointed to the Supreme Court's recent decision in *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), regarding jurisdiction under the FAA (not the Declaratory Judgment Act), the Court ultimately did not render a finding under *Badgerow* as it concluded that "jurisdiction is lacking on other grounds." *See* Opinion, 10 n.10, App.579.

agreement requires court (not arbitral) review of such challenges. *See, e.g.*, SOF ¶ 15 n.10, App.024. Following the dismissal of the Plaintiffs' claims on timeliness grounds, Plaintiffs then proceeded to seek such judicial review. They did so first by opting into the *Rusis* action, where the court held that they could not participate in a collective action to make this challenge. Thus, they initiated individual actions (which were consolidated by the court below into this case).[36] If successful, Plaintiffs will return to their arbitrators with motions for relief from judgment pursuant to Fed. R. Civ. P. 60.[37]

---

[36] The District Court's statement that Plaintiffs "waited two (and in some cases more than two) years after they received their arbitration decisions to initiate this action . . ." is not only incorrect as a factual matter, but it is also not legally determinative – as explained herein, neither IBM's arbitration agreement nor any other applicable law imposes a deadline on Plaintiffs' request for declaratory relief.

[37] The Arbitration Agreement expressly ***requires*** the Arbitrators to hear such motions. *See,* Arbitration Agreement at 26, App.105 ("In any arbitration, the parties may file, and the arbitrator ***shall*** hear and decide at any point in the proceeding motions permitted by the Federal Rules of Civil Procedure . . ." (emphasis added)).

Courts regularly entertain declaratory judgment actions where, like here, parties dispute the validity or enforceability of contractual provisions. *See, e.g., Wells Fargo Bank, N.A. v. Sharma*, 642 F. Supp. 2d 242, 246 (S.D.N.Y. 2009) (collecting cases)). And this should hold particularly true here, as IBM has insisted (and has convinced arbitrators to find) that IBM's arbitration agreement contemplates a judicial determination of questions of enforceability or validity of its provisions. The District Court therefore erred in dismissing Plaintiffs' claims.

And again, if Plaintiffs had sought declaratory relief prior to going to arbitration, it is likely the court would have held that the claims could not be addressed, because it was not clear that arbitrators would hold the claims to be untimely. *See, e.g., Billie*, 2022 WL 807075, at *7-14 (allowing case to proceed in court, only after having compelled the case to arbitration, which ultimately could not proceed due to the plaintiff's inability to pay arbitral fees); *CellInfo, LLC*, 506 F. Supp. 3d at 71-73 (denying motion to resume litigation in court, where it was not yet clear if

the AAA would permit the arbitration to proceed notwithstanding the

plaintiff's inability to pay arbitral fees).

Second, the District Court further erred when concluding that the

Plaintiffs "already arbitrated their ADEA claims, lost, and chose not to file

any motion to vacate the arbitral decision within the three-month deadline

under the FAA" and that as such, "the window to challenge those rulings,

or the enforceability of the provisions that governed them, has long since

closed." *See* Opinion at 9, App.578. The District Court's conclusion that

there was a "window" to seek declaratory relief and that the "window"

was the "three-month deadline under the FAA" for seeking vacatur, *see id.*

8-9, is not supported by law or fact.

IBM's arbitration agreement does not impose a deadline for seeking a

judicial determination around the validity or enforceability of its

provisions – thus, the District Court's finding that there is a "window"

governing Plaintiffs' requested relief is erroneous. And the Court further

erred when it grafted the "window" applicable to vacatur petitions under

Section 10 of the FAA onto this proceeding.

55

Indeed, Section 10 of the FAA contemplates specific grounds for seeking to vacate an arbitration award, *see* 9 U.S.C. § 10. Contrary to the District Court's finding, a challenge to the "enforceability of the provisions" governing an arbitration proceeding is not contemplated by Section 10. *See generally id*. Rather, the only meaningful way for the Plaintiffs to seek a determination that the timeliness provision is unenforceable is through a declaration of same. And there is *no* requirement that such an action be brought by way of a petition to vacate or within the same "window" as petitions to vacate. By imposing such a requirement (such that Plaintiffs missed the "window" for bringing such a challenge), the District Court erred, and the District Court's decision dismissing the Dismissal Plaintiffs' claims should be reversed.[38]

---

[38]     The District Court further erred when it found that it is "unlikely" that an Arbitrator would entertain a Rule 60(b) Motion, because "it has been nearly two (or more) years since the Post-Arbitration Plaintiffs' ADEA claims were dismissed in arbitration." First, IBM's arbitration agreement ***requires*** the Arbitrators to hear such motions and, as noted, does not impose any such deadline, *see* Arbitration Agreement at 26, App.105. Second, contrary to the District Court's statements, Plaintiffs would not seek relief under the provisions of Rule 60(b) that carry a one-year deadline, and, moreover, Plaintiffs **have** been pursuing judicial relief, first

## IV. The District Court Erred by Declining to Unseal the Sealed Portions of the Summary Judgment Record Below

The District Court erred by sealing numerous documents in Plaintiffs' summary judgment record, as well as extensive portions of the briefing. *See* Memorandum Opinion and Order at App.597-603.

As Judge Liman noted in *Lohnn*, "[t]he Supreme Court and Second Circuit have long held that there is a presumption of immediate public access to judicial documents under both the common law and the First Amendment." 2022 WL 36420 at *6 (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006)). This right of public access, which "is said to predate the Constitution," *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"), is "based on the need for federal courts

––––––––––––––––––

by opting into *Rusis*, and then initiating the instant action when their claims were dismissed from the *Rusis* case. Thus, Plaintiffs' timing *is* reasonable under the circumstances.

Finally, to the extent that the District Court found (incorrectly) that Plaintiffs were seeking to belatedly vacate their arbitral awards, the District Court wrongly ignored one arbitrator's express finding that upon dismissal of their arbitrations, Plaintiffs may opt into the *Rusis* case to challenge the validity of the timeliness provision, which the Plaintiffs then did, *see* D. Ct. Dkt. 61 at 17 n.10.

… to have a measure of accountability and for the public to have

confidence in the administration of justice," *id.* at 119 (citing *U.S. v. Amodeo*,

71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")).

The Second Circuit has developed a three-part framework to

determine whether a document should be placed or remain under seal—

and thereby protect the public's First Amendment right to access court

filings. First, a court must determine whether the documents are "judicial

documents," defined as "a filed item that is 'relevant to the performance of

the judicial function and useful in the judicial process.'" *Bernstein v.*

*Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016)

(quoting *Lugosch*, 435 F.3d at 119).

Once the court makes this determination, it "must determine the

weight" of the presumption in favor of public access, which is in turn

"governed by the role of the material at issue in the exercise of Article III

judicial power and the resultant value of such information to those

monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*,

71 F.3d at 1049).

58

Finally, the court must weigh the public's right to access against "countervailing factors," including "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050).

Both Judge Liman in *Lohnn* and Judge Furman in this case applied the Second Circuit's three-step test to a virtually identical collection of summary judgment documents, but came to divergent conclusions regarding the public right to access those documents. For the reasons discussed below, the Second Circuit should adopt Judge Liman's analysis, and reverse Judge Furman's ruling on IBM's motion to seal.

## A.  Plaintiffs' Motion for Summary Judgment and Accompanying Exhibits Are Judicial Documents

The Second Circuit has repeatedly held that summary judgment motions and papers filed in connection therewith are judicial documents as a matter of law. *See Lohnn*, 2022 WL 36420 at *6-7 (citing *Lugosch*, 435 F.3d at 121; *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019)). These documents

must not remain under seal "*absent the most compelling reasons.*" *Id.*
(emphasis in original) (internal quotation omitted).

The District Court held that the summary judgment briefing and
exhibits are not judicial documents because they were "irrelevant to the
'judicial function' of the case" by virtue of the fact that the court ruled on
IBM's motion to dismiss without ever reaching Plaintiff's motion for
summary judgment. Memorandum Opinion and Order at 4, App.600. But
whether the district court *in fact* considered Plaintiff's summary judgment
papers in ruling on IBM's motion to dismiss or any other filing is irrelevant
under controlling law. The determination whether something is a judicial
document has nothing to do with "whether the judge has relied on the
document or on any specific information in it because the public is entitled
know not only what the judge relied on but also what was conveyed to the
judge that she did not rely on—what, from the public's perspective, the
judge *should* have considered or relied upon, but did not.'" *Lohnn*, 2022 WL
36420 at *6 (quoting *Lugosch*, 435 F.3d at 123); *see also Brown*, 929 F.3d at 49
("A document is 'relevant to the performance of the judicial function' if it

60

would reasonable have the *tendency* to influence a district court's ruling or in the exercise of its supervisory powers, without regard to… whether the document ultimately in fact influences the court's decision.").

In other words, the public's right of access attached the moment that Plaintiffs filed their summary judgment motion in court. *See Lohnn*, 2022 WL 36420 at *9 ("[The public's] rights of access attached upon filing."); *Lugosch*, 435 F.3d at 123 ("As a matter of law, … documents—by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment—are unquestionably judicial documents under the common law."); *Brown*, 929 F.3d at 47 ("[I]t is well-settled that 'documents *submitted* to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents. . .'") (internal citation omitted); *Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ireland) Ltd.*, 2021 WL 3540221, at *2 (S.D.N.Y. Aug. 11, 2021). As a matter of law, that right of access is unaffected by subsequent developments in the case. *See Lohnn*, 2022 WL 3359737, at *3 ("That the … motion was never adjudicated does not change the fact that the declaration and exhibits are

61

judicial documents."); *see also Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d at 140 (pleadings were judicial documents from moment of filing, notwithstanding settlement); *Dawson v. Merck & Co.*, 2021 WL 242148, at *6 (E.D.N.Y. Jan. 24, 2021) (documents attached to *Daubert* motion were judicial documents notwithstanding settlement by the parties).

Judge Furman's citation to *Lugosch* for the proposition that "the mere filing" of Plaintiff's motion for summary judgment did not suffice to render it a judicial document is based on a misreading of dicta in that case.[39] *See Lohnn*, 2022 WL 3359737 at *4 ("The Second Circuit's statement in *Lugosch* … cannot be understood to reflect the view that what would otherwise be a judicial document because it asks a court for ultimate relief does not partake of that character until after the court has acted upon it."). The summary judgment papers at issue were substantive legal filings that were

---

[39] The District Court's brief citation to *Giuffre v. Maxwell*, 2020 WL 133570 (S.D.N.Y. Jan. 13, 2020), *reconsideration denied*, 2020 WL 917057 (S.D.N.Y. Feb. 26, 2020) is similarly unavailing for reasons described in *Lohnn*.

relevant and useful to the performance of the judicial function at the time they were filed. *See id.* They were judicial documents.

### B.    There Are No Countervailing Interests Militating Against Public Access

The District Court should have found that IBM did not demonstrate a sufficient countervailing interest to outweigh the heavy "weight of the common-law presumption given to documents used by parties in connection with summary judgment … ." *Lohnn,* 2022 WL 36420 at *6 (citing *Lugosch*, 435 F.3d at 123); *see also id.* at *5 ("[In a situation where a court has *not yet* ruled on a pending motion for summary judgment or has already adjudicated the motion], the weight of the presumption of access will be strong and "of the highest.") (quoting *Lugosch*, 435 F.3d at 123).

The Second Circuit has made clear that a confidentiality provision like the one that the District Court invoked is not a sufficient countervailing interest to override the presumption of public access. *See Lugosch*, 435 F.3d at 126 ("[T]he mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable."). Indeed, courts have routinely denied keeping

63

documents sealed that were alleged to be confidential (whether in arbitration or elsewhere) and where they were filed as part of a proceeding raising a challenge to a party's confidentiality provision. *See, e.g.*, *Lohnn*, 2022 WL 36420 at *13; *Susquehanna Int'l Grp. Ltd.*, 2021 WL 3540221, at *4 n.1 (rejecting argument that "presumption of public access is outweighed by the federal policy in favor of arbitration and interests of judicial efficiency"); *Dentons US LLP*, 2021 WL 2187289, at *1 ("Confidentiality agreements alone are not an adequate basis for sealing . . . ."); *Salerno v. Credit One Bank, N.A.*, 2020 WL 1558153, at *8 (W.D.N.Y. Mar. 31, 2020) (same); *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015) (same); *Utica Mutual Insurance Co. v. R&Q Insurance Co. f/k/a INA Reinsurance Co.*, 2015 WL 13639179, at *2-3 (N.D.N.Y Dec. 10, 2015); *First State Ins. Co. v. National Cas. Co.*, 2013 WL 8675930, at *1 (S.D.N.Y. Feb. 19, 2013).

Judge Furman's ruling to the contrary, which does not cite any case law that squarely addresses this issue, is contrary to the weight of authority within this Circuit.

## V.  The District Court Erred by Denying Plaintiffs' Motion to Amend to Add a Fraudulent Inducement Claim

The District Court erred in denying Plaintiffs' motion for leave to amend to add a fraudulent inducement claim.[40]

First, the District Court erred in finding that the Dismissal Plaintiffs could not bring fraudulent inducement claims because of an alleged "waiver" of the right to challenge IBM's arbitration agreements by initiating arbitration.[41] The Court's waiver analysis is erroneous because it assumes, at the pleading stage, that key aspects of the underlying fraudulent conduct were known to Plaintiffs at the time they initiated their arbitrations.

---

[40]   Plaintiffs requested to add this claim to Plaintiff Abt's case as a classwide state law claim, as well as to be allowed to amend to add this claim to each plaintiff's case individually (which had been administratively closed as part of the consolidation). *See* D. Ct. Dkt. 79.

[41]   Notably, the District Court did not find that Plaintiffs Corbett or Flannery had waived this challenge, since they had not arbitrated their claims, but, as described *infra*, the District Court nevertheless denied them leave to amend.

Yet mere participation in arbitration proceedings alone does not constitute a waiver of objections to arbitrability. *See Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003); *Openshaw v. Fedex Ground Package Sys. Inc.*, 731 F. Supp. 2d 987,998 (C.D. Cal. 2010). Courts have routinely held that it is appropriate to grant leave to amend a pleading where a party becomes aware of facts supporting a fraudulent inducement argument. *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 2013 WL 4520425, at *2 (S.D. Tex. Aug. 26, 2013) ("Because it does appear that some new information relevant to fraudulent inducement has come to light during discovery, the Court finds that Plaintiff did not unduly delay in seeking leave to amend in this case."); *Intersource, Inc. v. Kidder Peabody & Co.*, 1992 WL 369918, *3–*4, (S.D.N.Y. Nov. 20, 1992) (same).

Plaintiffs only learned of shocking evidence supporting the companywide scheme of discrimination – that showed top officials in the company rather blatantly scheming to oust older workers -- long after their arbitrations had been initiated; moreover, IBM fought to conceal its fraudulent scheme from its laid-off employees for years. *See, e.g., Lohnn,*

66

2022 WL 36420, at *12 (describing specific "[c]ommunications between high-level IBM executives in which they discussed how the percentage of millennials employed at IBM trailed that of competitor firms, used a disparaging term to describe older IBM employees, and described layoffs that would help change the age distribution of employees at IBM,"). Notably, at the time of filing their arbitration demands, Plaintiffs did not have the factual basis needed to support the heightened pleading standard referenced below.

In any event, the Court erred in accepting IBM's waiver arguments as true at the pleading stage, without construing the complaint in Plaintiffs' favor or allowing Plaintiffs to submit evidence regarding what they knew at the time of filing their arbitration demands versus the timing of the discoveries that resulted in their attempt to add a fraudulent inducement claim. *See N.L.R.B. v. New York Tel. Co.*, 930 F.2d 1009, 1011 (2d Cir. 1991) ("No waiver will be implied, however, unless it is clear that the parties were aware of their rights and made the conscious choice, for whatever

reason, to waive them. We will not thrust a waiver upon an unwitting party.").

Second, the District Court also erred in holding that the proposed amendment did not satisfy the heightened pleading standard governing fraudulent inducement claims. Opinion at 23-25, App.592-594. To state a claim of fraudulent inducement a "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citations and internal quotation marks omitted). Plaintiffs' allegations satisfied each of these factors. *See McCormack*, 145 F. Supp. 3d at 276.

Plaintiffs' proposed amended complaint identified the statements that they contended were fraudulent – untruthful and fraudulent rationales for Plaintiffs' terminations as pretext for age discrimination.[42] *See* Proposed

---

[42]    Plaintiffs have also alleged that false statements regarding eligibly for COBRA (i.e., falsely asserting individuals would only be allege if they signed the separation agreement) were made in connection with the

68

Am. Compl. ¶¶ 40-51, App.560-564. The amended complaint identified the

speakers, including IBM executives such as Ms. Rometty and Ms. Gherson,

IBM's spokesperson, Douglas Shelton, and lower-level managers who were

required to provide boilerplate letters to impacted employees. *Id*. at ¶¶ 38,

40-51, App.560-564. The amended complaint alleged when and where the

statements were made, identifying a specific date of statements made by

Doug Shelton, and alleging that Plaintiffs refused the fraudulent template

letters informing them of their layoffs, at the time that they were

terminated. *Id*. at ¶¶ 43, 47, App.561-563. Finally, the amended complaint

clearly explained why the statements were fraudulent, as the crux of

Plaintiffs' complaint is that IBM knew well that it was intentionally

targeting older workers and providing false rationales to justify its layoff

programs. *See id*. at ¶ 45, App.562.

---

presentation of the separation agreements. *See* App.565. Plaintiffs contend
that the other statements described above are sufficient to establish a claim
alone, but they point out that there were additional allegations reflective of
IBM's pattern of making false statements induce individuals to sign its
separation agreement.

Critically, another court allowed a fraudulent inducement claim based on very similar allegation. *See generally, McCormack*, 145 F. Supp. 3d 258. As in *McCormack*, the allegations are sufficiently definite and clear to put IBM on fair notice as to the specific fraudulent actions to induce Plaintiffs to sign its arbitration agreement. *See McCormack*, 145 F. Supp. 3d at 276 ("There is no doubt, based on [the allegation that Plaintiff received an email from his supervisor that he was being terminated as part of a cost-driven resource action], that Lingl identifies the statements that he contends were fraudulent") (citation and internal quotation marks omitted). Plaintiffs have set forth a viable claim for relief based on similar allegations that they were induced to sign a separation agreement based on the fraudulent content of a "template letters" provided by their managers at the time of their termination. *See* Proposed Am. Compl. at ¶ 41-51, App.560-564.

In a footnote, the District Court unconvincingly attempted to distinguish *McCormack* by finding that Plaintiffs' allegations "did not specify when these 'template letters' were sent". *See* Opinion at 24 n.16,

70

App.593. However, the complaint made clear that the letters were sent upon the employees' terminations. Plaintiffs have provided detailed and specific allegations regarding the underlying alleged fraudulent conduct and IBM is sufficiently on notice for these claims to proceed.[43]

## CONCLUSION

For the reasons set forth herein, the District Court's findings should be reversed.

---

[43]    At a minimum, if the Court should have given Plaintiffs the opportunity to cure any perceived defects in the interest of justice.

Dated: October 12, 2022          Respectfully submitted,

PLAINTIFFS-APPELLANTS

By their attorneys,

<u>/s/ Shannon Liss-Riordan</u>
Shannon Liss-Riordan
Thomas Fowler
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com
tfowler@llrlaw.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Palatino Linotype font.

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 13,977 words, as determined by the word-count function of Microsoft Word 2016.

Dated: October 12, 2022

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

# ADDENDUM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
IN RE:                                              :          21-CV-6296 (JMF)
                                                    :
IBM ARBITRATION AGREEMENT LITIGATION                :          OPINION AND ORDER
                                                    :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In these consolidated cases, twenty-six former employees of International Business

Machines Corporation ("IBM") seek to challenge two provisions of the arbitration agreements

that they signed prior to their termination.  Plaintiffs either sought to, or intend to, assert claims

under the Age Discrimination in Employment Act ("ADEA") against IBM in arbitration.  When

they filed these cases, Plaintiffs did not dispute that they were required to bring these claims in

arbitration — and, indeed, most of them had.  *See* ECF No. 1 ("Compl."), at 9-10; ECF No. 27

("Pls.' Mem."), at 2; ECF No. 61 ("Pls.' Opp'n"), at 16.[1]  Instead, through their Complaints, they

seek a declaratory judgment that two provisions of their arbitration agreements are

unenforceable: a provision that governs the timeliness of their arbitration claims (the "Timeliness

Provision") and a confidentiality clause (the "Confidentiality Provision").

IBM now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to

dismiss Plaintiffs' claims.  At the same time, Plaintiffs move, pursuant to Rule 56 of the Federal

Rules of Civil Procedure, for summary judgment.  Additionally, Plaintiffs move for leave to

amend their Complaints to add a claim for fraudulent inducement, challenging the enforceability

---

[1]    As discussed below, Plaintiffs have since taken a different tack, moving to amend their
Complaints to bring claims challenging the enforceability of their arbitration agreements.  *See*
ECF No. 83 ("Pls.' Mot. to Amend Reply"), at 9.  All citations to the record are to filings in 21-
CV-6296 (JMF), unless otherwise specified.

of the arbitration agreements in their entirety.  For the reasons that follow, IBM's motion to

dismiss is GRANTED, Plaintiffs' motion for summary judgment is DENIED as moot, and

Plaintiffs' motion for leave to amend is likewise DENIED.

## BACKGROUND

In considering a Rule 12(b)(6) motion, courts are limited to the facts alleged in the

complaint, which are presumed to be true.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551

F.3d 122, 124 (2d Cir. 2008) (per curiam).  A court may also consider documents "incorporated

by reference" into the complaint, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.

2010); documents that are "integral" to the complaint, *id.*; and "documents of which [the court]

may take judicial notice, including pleadings and prior decisions in related lawsuits," *Gertskis v.

U.S. E.E.O.C.*, No. 11-CV-5830 (JMF), 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20,

2013), *aff'd*, 594 F. App'x 719 (2d Cir. 2014) (summary order).  Accordingly, the following

facts are drawn from the pleadings and the aforementioned additional documents.[2]

## A.  Plaintiffs' Terminations and Arbitration Agreements

Plaintiffs are all former IBM employees who were over the age of forty at the time of

their terminations.  *See* Compl. ¶ 7.[3]  They allege that they were laid off as a result of a

company-wide discriminatory scheme designed to reduce the population of older workers to

---

[2]     Plaintiffs submitted evidence outside of the pleadings in support of their motion for
summary judgment.  *See* ECF Nos. 29, 40.  For the reasons discussed below, however, the Court
does not reach Plaintiffs' motion and, thus, does not consider this evidence.

[3]     The complaints in each of the member cases consolidated under No. 21-CV-6296 are
materially identical, unless otherwise noted.

make way for a new, younger generation of employees. *Id.* ¶¶ 8-9.[4]  IBM's "top management" allegedly implemented this scheme in order to better compete with newer technology companies, such as Google, Facebook (now Meta), Amazon, and others. *Id.* ¶ 9.  In 2020, following a multi-year investigation, the Equal Employment Opportunity Commission ("EEOC") issued a determination that there was reasonable cause to believe IBM had in fact discriminated against older employees during the time Plaintiffs were laid off. *Id.* ¶ 10.

Upon termination, each Plaintiff signed an agreement to waive almost all of his or her legal claims against IBM in exchange for a modest severance. *Id.* ¶ 11.  The waiver did not cover ADEA claims, but each Plaintiff's agreement separately provided that such claims could be pursued only through individual arbitration proceedings. *Id.*  Two provisions of the arbitration agreement (the "Arbitration Agreement") — the terms of which were identical for all Plaintiffs — bear particular relevance here: the Timeliness Provision and the Confidentiality Provision.  ECF No. 29-2, at 25-27 ("Arb. Agreement"), at 25-26.[5]  The first provides:

> To initiate arbitration, [the employee] must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.  If the demand for arbitration is not timely submitted, the claim shall be deemed waived.

---

[4]     The details of the alleged discriminatory scheme are recounted in *Rusis v. International Business Machines Corp.*, 529 F. Supp. 3d 178, 188-90 (S.D.N.Y. 2021), an opinion issued by Judge Caproni in a related case, familiarity with which is presumed.

[5]     The Court may consider the Arbitration Agreement for the purposes of resolving IBM's motion to dismiss because it is "incorporated into the complaint by reference."  *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013); *see* Compl. ¶¶ 12-14, 24.

3

Arb. Agreement 26.  Importantly, the provision further specifies that "[t]he filing of a charge or

complaint with a government agency . . . shall not substitute for or extend the time for submitting

a demand for arbitration."  *Id.*  The Confidentiality Provision, meanwhile, states:

> To protect the confidentiality of proprietary information, trade secrets or other sensitive
> information, the parties shall maintain the confidential nature of the arbitration
> proceeding and the award.  The parties agree that any information related to the
> proceeding, such as documents produced, filings, witness statements or testimony, expert
> reports and hearing transcripts is confidential information which shall not be disclosed,
> except as may be necessary to prepare for or conduct the arbitration hearing on the
> merits, or except as may be necessary in connection with a court application for a
> preliminary remedy, a judicial challenge to an award or its enforcement, or unless
> otherwise required by law or judicial decision by reason of this paragraph.

*Id*. at 27.  The Arbitration Agreement also provides that "[a]ny issue concerning" its "validity or

enforceability . . . shall be decided only by a court of competent jurisdiction."  *Id.* at 25.

## B.  The Arbitration Proceedings

Before filing suit here, twenty-four of the twenty-six Plaintiffs (the "Post-Arbitration

Plaintiffs") — all but Plaintiffs Brian Flannery and Phillip Corbett — sought to pursue their

ADEA claims in arbitration.  Compl. ¶ 12; *see* Pls.' Mem. 8; ECF No. 48 ("Def.'s Mem."), at 4,

n.2; *see also* No. 21-CV-6384, ECF No. 1 ("Flannery Compl."), ¶¶ 12, 16; No. 21-CV-6380,

ECF No. 1 ("Corbett Compl."), ¶¶ 12, 16.  In each case, the arbitrator dismissed the Plaintiff's

claims as untimely.  Pls.' Mem. 8; *see also* ECF Nos. 29-26 to 29-48.  Specifically, the arbitrator

held that the Post-Arbitration Plaintiffs had failed to file written arbitration demands within the

time specified by the Timeliness Provision.  *See* Pls.' Mem. 8; *see, e.g.*, ECF No. 29-26, at 1.  In

each case, the arbitrator further held that the Timeliness Provision bars application of the

"piggybacking rule," which Plaintiffs had argued would render their claims timely.  *See* Pls.'

Mem. 8; *see, e.g.*, ECF No. 29-26, at 2-3.  The judicially created piggybacking rule is an

exception to the ADEA's EEOC charge-filing requirement, which requires a plaintiff seeking to

bring an ADEA claim in court to file an EEOC charge within 180 or 300 days after the "alleged

unlawful employment practice occurred," and then to wait "until 60 days after" that charge is filed to sue. 29 U.S.C. § 626(d)(1).[6]  Pursuant to the piggybacking rule, a plaintiff who failed to file his or her own EEOC charge within the 180- or 300-day deadline can "piggyback" off of another person's timely filed EEOC charge that alleges "similar discriminatory treatment in the same time frame." *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 564 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008).

Notably, no Post-Arbitration Plaintiff filed a petition to vacate his or her arbitral decision within the three-month timeframe set forth in the Federal Arbitration Act ("FAA").  9 U.S.C. § 12; *see* Pls.' Opp'n 16.  The other two Plaintiffs — Flannery and Corbett — had not yet initiated arbitration proceedings as of the date they filed their Complaints here.  *See* Pls.' Mem. 8; Flannery Compl. ¶¶ 12, 16; Corbett Compl. ¶¶ 12, 16.

**C. The *Rusis* Action and Plaintiffs' Individual Actions**

Before filing their Complaints here, Plaintiffs first sought to opt into a putative class action pending before Judge Caproni, *Rusis v. International Business Machines Corp.*, No. 18-CV-8434.[7]  *Rusis*, which was filed in 2018, involves the same underlying ADEA claims as those Plaintiffs press here, but was brought by IBM employees who had not signed the Arbitration Agreements at issue here.  *See Rusis*, 529 F. Supp. 3d at 188-90.  In March 2021, Judge Caproni dismissed the claims of Plaintiffs here on the ground that the Arbitration Agreements they had

---

[6]     In addition to the deadline for filing an EEOC charge, the ADEA "also imposes a 90-day deadline for the commencement of a court action if the EEOC notifies the claimant that it has dismissed her charge or has otherwise terminated the proceedings." *Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 126 (2d Cir. 2006); *see* 29 U.S.C. § 626(e).

[7]     Plaintiffs clarified in briefing that the Complaints filed by Plaintiffs Flannery and Deborah Kamienski "inadvertently state incorrectly that they opted in to *Rusis*." Pls.' Mem. 3 n.4.  The clarification is immaterial to the pending motions.

signed contained a class and collective action waiver that barred them from opting into the *Rusis* putative class action. *Id.* at 195-96. In a footnote, Judge Caproni expressed "skepticism" with respect to Plaintiffs' argument that the Timeliness Provision in their Arbitration Agreements was unenforceable because it purported to waive a substantive right under the ADEA — namely, the piggybacking rule. *Id.* at 192 n.4. Ultimately, however, Judge Caproni "d[id] not reach the issue" given Plaintiffs' intention to file "individual actions involving the same issue." *Id.*

Approximately four months after Judge Caproni's decision in *Rusis*, Plaintiffs brought these cases seeking declaratory relief. *See* Compl. 9-10. In particular, Plaintiffs seek a declaratory judgment that two provisions of their arbitration agreements — the Timeliness and Confidentiality Provisions — are unenforceable. *See id.* On August 24, 2021, the Court consolidated the actions, while clarifying that each action would retain its "separate" identity. ECF No. 20 (quoting *Hall v. Hall*, 138 S. Ct. 1118, 1128-31 (2018)).[8] Plaintiffs thereafter moved for summary judgment, and IBM filed a motion to dismiss. ECF Nos. 27, 47. Nearly a month after briefing for those two motions was complete, Plaintiffs filed a motion for leave to amend their Complaints in order to add a class-based fraudulent inducement claim. *See* ECF No. 79 ("Pls.' Mot. to Amend Mem."), at 1-2; ECF No. 79-1 ("PAC"). IBM opposed. ECF No. 80.

## DISCUSSION

As noted, three motions are before the Court: (1) IBM's motion to dismiss the Complaints; (2) Plaintiffs' motion for summary judgment; and (3) Plaintiffs' motion for leave to

---

[8]     The Court consolidated the following twenty-five member cases under No. 21-CV-6296 on August 24, 2021: Nos. 21-CV-6296; 21-CV-6297; 21-CV-6308; 21-CV-6310; 21-CV-6312; 21-CV-6314; 21-CV-6320; 21-CV-6322; 21-CV-6323; 21-CV-6325; 21-CV-6326; 21-CV-6331; 21-CV-6332; 21-CV-6337; 21-CV-6340; 21-CV-6341; 21-CV-6344; 21-CV-6349; 21-CV-6351; 21-CV-6353; 21-CV-6355; 21-CV-6375; 21-CV-6377; 21-CV-6380; 21-CV-6384. *See* ECF No. 20. On November 24, 2021, the Court added one additional action, No. 21-CV-6307. *See* ECF No. 57. In total, there are twenty-six member cases in this action.

ADD.006

amend.  Before the Court turns to any of these motions, however, it has an "independent

obligation" to address the threshold question of subject-matter jurisdiction.  *Arbaugh v. Y&H*

*Corp.*, 546 U.S. 500, 514 (2006) ("[Courts] have an independent obligation to determine whether

subject-matter jurisdiction exists, even in the absence of a challenge from any party."); *see, e.g.*,

*Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or

waived and should be considered when fairly in doubt.").  To the extent that the Court concludes

that it has jurisdiction to do so, the Court will then turn to the parties' motions in turn.

**A.  Subject-Matter Jurisdiction**

Plaintiffs here invoke the Court's federal-question jurisdiction based on the Declaratory

Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.  *See* Compl. ¶ 5.  Under the DJA, a court "may

declare the rights and other legal relations of any interested party seeking such declaration" in "a

case of actual controversy within its jurisdiction."  28 U.S.C. § 2201.  "The purpose of

declaratory relief is to relieve litigants from the ongoing or imminent harm they may suffer when

their rights vis-à-vis each other are uncertain."  *Parker v. Citizen's Bank, N.A.*, No. 19-CV-1454

(VEC), 2019 WL 5569680, at *4 (S.D.N.Y. Oct. 29, 2019) (citing *United States v. Doherty*, 786

F.2d 491, 498 (2d Cir. 1986)).  It is therefore a "prospective remedy intended to resolve or

mitigate disputes that may yield later litigation."  *EFG Bank AG, Cayman Branch v. AXA*

*Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018).

Importantly, as relevant here, claims "in a declaratory judgment action" are only "ripe[]"

where "there is a substantial controversy, between parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Duane*

*Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005).  "[A]

touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory

relief sought relates to a dispute where the alleged liability has already accrued or the threatened

risk occurred, or rather whether the feared legal consequence remains a mere possibility."

*Wilmington Tr., Nat'l Ass'n v. Est. of McClendon*, 287 F. Supp. 3d 353, 364 (S.D.N.Y. 2018).

Additionally, "[t]he DJA 'confers a discretion on the courts rather than an absolute right

upon the litigant.'" *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453 (CM),

2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) (quoting *Wilton v. Seven Falls Co.*, 515 U.S.

277, 287 (1995)); *see* 28 U.S.C. § 2201 ("[Courts] *may* declare the rights and other legal

relations of any interested party seeking such declaration . . . ." (emphasis added)).  Indeed,

"[c]ourts have consistently interpreted [the] permissive language [of the DJA] as a broad grant of

discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they

would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359

(2d Cir. 2003) (per curiam).  "[T]o decide whether to entertain an action for declaratory

judgment," courts in this Circuit consider "(1) whether the judgment will serve a useful purpose

in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the

controversy and offer relief from uncertainty." *Duane Reade, Inc.*, 411 F.3d at 389.

Applying the foregoing standards, the Court first concludes, as an exercise of its

discretion, that it is not appropriate to entertain jurisdiction over the Post-Arbitration Plaintiffs'

claims.  That is because "there is no current or impending controversy about the[ir] rights or

obligations [vis-à-vis IBM] for this Court to clarify." *Parker*, 2019 WL 5569680, at *3.  As

Plaintiffs themselves concede, each of the Post-Arbitration Plaintiffs already arbitrated their

ADEA claims, lost, and chose not to file any motion to vacate the arbitral decision within the

three-month deadline under the FAA.  *See* Compl. ¶¶ 12, 16; ECF Nos. 29-26 to 29-48; Pls.'

Opp'n 16; *see also* 9 U.S.C. § 12.  Instead, they waited nearly two (and in some cases more than

**ADD.008**

two) years after they received their arbitration decisions to initiate this action for declaratory

relief challenging the enforceability of two provisions of their arbitration agreements. *See* ECF

Nos. 29-26 to 29-48.

  In light of these circumstances, both factors that the Second Circuit has instructed district

courts to consider weigh against exercising DJA-jurisdiction over the Post-Arbitration Plaintiffs'

claims. There is no "useful purpose" that a declaratory judgment would serve at this point; nor is

there any "uncertainty" in the parties' legal relations for the Court to resolve. *Duane Reade, Inc.*,

411 F.3d at 389. To the contrary, the arbitration proceedings definitively resolved the Post-

Arbitration Plaintiffs' ADEA claims, and the window to challenge those rulings, or the

enforceability of the provisions that governed them, has long since closed. *Duane Reade, Inc.*,

411 F.3d at 389; *see also* 9 U.S.C. § 12.[9] The Court therefore declines to exercise jurisdiction to

resolve the Post-Arbitration Plaintiffs' claims. *See Duane Reade, Inc.*, 411 F.3d at 389; *Jenkins*

*v. United States*, 386 F.3d 415, 417-18 (2d Cir. 2004) ("[DJA actions] must have . . . some useful

purpose to be achieved in deciding them."); *see also, e.g.*, *Parker*, 2019 WL 5569680, at *3, *5

---

[9]  Plaintiffs argue that, although the deadline to seek vacatur of the arbitration decisions has
passed, they could nevertheless seek "relief from judgment pursuant to [Federal Rule of Civil
Procedure] 60" in arbitration "[s]hould th[e] Court determine that the timeliness provision in the
arbitration agreement is . . . unenforceable." Pls.' Opp'n 17. But, as noted, it has been nearly
two (or more) years since the Post-Arbitration Plaintiffs' ADEA claims were dismissed in
arbitration, making it highly unlikely that any arbitrator would in fact entertain any Rule 60(b)
motion. *See* Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a
reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the
judgment or order or the date of the proceeding."). Thus, Plaintiffs' proposed Rule 60
workaround does not alter this Court's conclusion that a declaratory ruling on the enforceability
of the Timeliness and Confidentiality Provisions would be unlikely to serve any "useful purpose"
with respect to the Post-Arbitration Plaintiffs. *Duane Reade, Inc.*, 411 F.3d at 389. Moreover,
Plaintiffs' reliance on the DJA is little more than a transparent attempt to "avoid the procedural
requirements" and limitations associated with motions to vacate arbitral awards. *Parker*, 2019
WL 5569680, at *5; *see also John Wiley & Sons*, 2011 WL 5245192, at *4. That is all the more
reason to be wary of exercising subject-matter jurisdiction in these circumstances.

(declining to exercise jurisdiction over a DJA claim where the "[d]eclaratory relief [sought] . . .

would not resolve any ongoing or impending harm to [the p]laintiff vis-à-vis her relationship

with [the d]efendants" and "would not clarify any uncertainty in the parties' legal relations");

*Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 439 (S.D.N.Y. 2002) (reaching the

same result because, *inter alia*, the "[c]ourt [wa]s not persuaded . . . the declaratory relief

[sought] would . . . serve a useful purpose in clarifying the legal relations between the parties"),

*aff'd*, 346 F.3d 357 (2d Cir. 2003).  Thus, the claims of the Post-Arbitration Plaintiffs must be,

and are, dismissed.[10]

---

[10]     Separate and apart from the foregoing, the Supreme Court's recent decision in *Badgerow v. Walters*, 142 S. Ct. 1310 (2022) — which was issued after the Court issued its August 24, 2022 Order regarding subject-matter jurisdiction, ECF No. 20, and after briefing in these cases was complete — casts doubt on the Court's jurisdiction over the Post-Arbitration Plaintiffs' claims.  In brief, the *Badgerow* Court held that the "look-through" approach to determining jurisdiction for motions to compel jurisdiction under Section 4 of the FAA does not apply to motions to confirm or vacate arbitral awards under Sections 9 and 10 of the FAA.  *Id.* at 1314. As such, the source of jurisdiction must appear on "the face of the Section 9 or 10 application[]" — that is, it generally must show that there is diversity jurisdiction or allege "that federal law (beyond Section 9 or 10 itself) entitles the applicant to relief."  *Id.* at 1316-17.  Here, the DJA is the sole proffered basis for federal jurisdiction.  But the DJA does not confer jurisdiction on its own; instead, "when determining declaratory judgment jurisdiction, [courts] often look to the character of the threatened action.  That is to say, they ask whether a coercive action brought by the declaratory judgment defendant . . . would necessarily present a federal question." *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) (cleaned up). Assuming that the "threatened action" with respect to the Post-Arbitration Plaintiffs' claims would be a motion to confirm an arbitration award under Section 9 (given that those Plaintiffs have already arbitrated), then the Court could not "look through" to the underlying ADEA claim for jurisdiction per *Badgerow*, 142 S. Ct. at 1314.  Instead, the federal question would have to appear on the "face" of the threatened Section 9 action for the Court to have jurisdiction over the Post-Arbitration Plaintiffs' claims.  *Id.*  But *Badgerow* provides "no examples" of what it means for a "federal question with respect to the award's confirmation or vacatur" to exist on the face of the petition.  *Bissonnette v. LePage Bakeries Park St., LLC*, 33 F.4th 650, 661 (2d Cir. 2022) (Jacobs, J., concurring).  Ultimately, however, the Court need not, and does not, resolve this thorny jurisdictional question because, for the reasons discussed above, it concludes jurisdiction is lacking on other grounds.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

Additionally, the Court concludes that it lacks jurisdiction to adjudicate the remaining claims (those of Plaintiffs Flannery and Corbett) regarding the Confidentiality Provision because they are not yet — and may never become — ripe.  *See* Compl. 10, ¶ 2.[11]  As noted, "[t]he standard for ripeness in a declaratory judgment action is that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc.*, 411 F.3d at 388 (internal quotation marks omitted).  To determine whether a controversy is of "sufficient immediacy and reality," courts typically look to "whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass." *Dow Jones & Co., Inc.*, 237 F. Supp. 2d at 406-07.  The fact that "liability may be contingent," however, "does not necessarily defeat jurisdiction of a declaratory judgment action." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992).  "When liability is contingent," a court should "focus on 'the practical likelihood that the contingencies will occur.'" *U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 358 (S.D.N.Y. 2012) (quoting *Associated Indem. Corp.*, 961 F.2d at 35).

Here — as IBM points out and Plaintiffs do not dispute — the Confidentiality Provision will play a role in Flannery and Corbett's arbitration proceedings only if the arbitrator rules that they have timely ADEA claims to arbitrate in the first place.  *See* Def.'s Mem. 2, 24; Pls.' Opp'n 19-34 (not disputing this point).  But there is no "practical likelihood" that that contingency will occur.  *Associated Indem. Corp.*, 961 F.2d at 35.  That is because, as explained below, there is no

---

[11]     The Court did not consider ripeness in its August 24, 2022 Order, in which the Court indicated that it was, at that point, "satisfied . . . there is subject-matter jurisdiction given that the underlying arbitrations involved claims under the [ADEA]."  ECF No. 20.

merit to Plaintiffs' claim that the Timeliness Provision is unenforceable.  *See* Compl. 10, ¶ 1.  It

follows that there is no reason to believe an arbitrator would conclude Flannery and Corbett have

timely ADEA claims.  *See* Pls.' Opp'n 26 n.16 (acknowledging the Post-Arbitration Plaintiffs'

ADEA claims were all "dismissed as untimely" in arbitration based on the Timeliness

Provision); *cf. Chandler v. Int'l Bus. Machs. Corp.*, No. 21-CV-6319 (JGK), 2022 WL 2473340,

at *7 & n.4 (S.D.N.Y. July 6, 2022) (concluding, in a case involving a challenge to the same two

provisions of IBM's arbitration agreement, that the "plaintiff's claim for declaratory relief with

respect to the Confidentiality Provision [was] . . . moot" given the court's holding that the

Timeliness Provision is enforceable).  The net result is that the "controversy" raised by Flannery

and Corbett's claims regarding the Confidentiality Provision lacks "sufficient immediacy and

reality" to render it ripe for this Court's review.  *Duane Reade, Inc.*, 411 F.3d at 388.  The Court

must therefore dismiss those claims without prejudice to renewal in the unlikely event that the

issue ever becomes ripe.

**B.  IBM's Motion to Dismiss Plaintiffs' Challenge to the Timeliness Provision**

That leaves only the challenge of Plaintiffs Flannery and Corbett to the enforceability of

the Timeliness Provision, which IBM moves to dismiss pursuant to Rule 12(b)(6).[12]  It is well

established that "arbitration is a matter of contract."  *Am. Exp. Co. v. Italian Colors Rest.*, 570

U.S. 228, 233 (2013); *see* 9 U.S.C. § 2.  Thus, "courts must rigorously enforce arbitration

agreements according to their terms," including "the rules under which that arbitration will be

conducted."  *Id.* (internal quotation marks omitted); *accord Epic Sys. Corp. v. Lewis*, 138 S. Ct.

1612, 1621 (2018).  "By agreeing to arbitrate a statutory claim," however, "a party does not

forgo the substantive rights afforded by the statute; it only submits to their resolution in an

---

[12]     Throughout this Section, "Plaintiffs" refers to Plaintiffs Flannery and Corbett.

arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  Thus, "a substantive waiver of federally protected civil rights" in an arbitration agreement "will not be upheld."  *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) (citing *Mitsubishi Motors*, 473 U.S. at 637 & n.19).  Federal courts will also decline to enforce "[arbitration] agreements that prevent the 'effective vindication' of a federal statutory right."  *Italian Colors*, 570 U.S. at 235; *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) ("[A] federal court will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum.'" (quoting *Mitsubishi Motors*, 473 U.S. at 637)).

Plaintiffs challenge the enforceability of the Timeliness Provision in their Arbitration Agreements on both grounds.  That is, they argue first that it is unenforceable to the extent that it purports to waive the piggybacking rule because that rule gives rise to a substantive right under the ADEA.  *See* Pls.' Mem. 3, 11-21; Pls.' Opp'n 7-15.  Second, they contend that the "purported waiver would impermissibly prevent the effective vindication of Plaintiffs' claims in arbitration." Pls.' Mem. 12.  Neither argument is persuasive.

### 1.  The Piggybacking Rule Is Not a Substantive Right for FAA Purposes

First, there is no merit to Plaintiffs' contention that the judge-made piggybacking rule gives rise to a substantive, nonwaivable right under the ADEA.  For starters, Plaintiffs do not cite, nor has the Court found, any authority to support the proposition that the ADEA creates a substantive right to piggybacking in any context — let alone specifically in the context of determining the enforceability of an agreement to arbitrate.  *See* Pls.' Opp'n 7-15.[13]  Instead,

---

13      That is perhaps unsurprising.  As the Supreme Court has made clear, "courts [must] enforce agreements to arbitrate according to their terms . . . unless the FAA's mandate has been 'overridden by a contrary *congressional* command.'"  *CompuCredit Corp. v. Greenwood*, 565

Plaintiffs argue that "[t]he piggybacking rule is part of . . . the ADEA's limitations period" and that the "ADEA's limitations period is a substantive right."  Pls.' Opp'n 9, 12.  But that argument is difficult, if not impossible, to square with Supreme Court and Second Circuit precedent.  Indeed, whether or not the piggybacking rule is properly considered part of the ADEA's limitations period — a question the Court need not answer — Supreme Court precedent makes plain that the substantive right protected from waiver under the FAA is far narrower than Plaintiffs claim.  As the Supreme Court explained in *14 Penn Plaza LLC*, the substantive right conferred by the ADEA for FAA purposes is the "right to be free from workplace age discrimination."  556 U.S. at 265.  Importantly, the Court "distinguished" that right from "procedural [ones], like 'the right to seek relief from a court in the first instance.'"  *Estle v. Int'l Bus. Machs. Corp.*, 23 F.4th 210, 214 (2d Cir. 2022) (quoting *14 Penn Plaza*, 556 U.S. at 265).  The ADEA's limitations period falls comfortably in the latter category; it is more akin to the procedural "right to seek relief from a court in the first instance" than it is to the substantive "right to be free from workplace age discrimination."  *14 Penn Plaza*, 556 U.S. at 265.

That conclusion is bolstered by Second Circuit precedent.  In *Vernon v. Cassadaga Valley Central School District*, 49 F.3d 886 (2d Cir. 1995), the Second Circuit explained that substantive rights typically govern "primary conduct" — *e.g.*, "the alleged discrimination" — while procedural rights generally bear on "secondary conduct" — *e.g.*, "the filing of [a] suit."  *Id.* at 890.  Applying that reasoning, the court held that the ADEA statute of limitations is a procedural, not substantive, right in the context of determining whether the limitations period could apply retroactively.  *Id.* at 889-90; *see also Spira v. J.P. Morgan Chase & Co.*, 466 F.

_____

U.S. 95, 98 (2012) (emphasis added) (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).  As noted, the piggybacking rule is judge-made.

ADD.014

App'x 20, 22-23 (2d Cir. 2012) ("[L]imitations periods generally do not modify underlying

substantive rights.").  The Court sees no reason to deviate from that conclusion here.  Because

the ADEA's limitations period governs "secondary conduct" — namely, the time period for

filing a suit under the ADEA — it should not be considered a substantive, and therefore

*categorically* nonwaivable, right in the arbitration context.  *Vernon*, 49 F.3d at 890.

Accordingly, the Court joins Judge Koeltl in rejecting Plaintiff's argument that the

"piggybacking rule" is a "substantive, non-waivable right protected by the ADEA" because

"[t]he substantive right protected by the ADEA is the 'statutory right to be free from workplace

discrimination.'"  *Chandler*, 2022 WL 2473340, at *4 (quoting *14 Penn Plaza*, 556 U.S. at 265);

*see also Lodi v. v. Int'l Bus. Machs. Corp*, No. 21-CV-6336 (JGK), 2022 WL 2669199, at *3

(S.D.N.Y. July 11, 2022); *Rusis*, 529 F. Supp. 3d at 192 n.4 (expressing "skepticism," but not

addressing, Plaintiffs' argument).

        Plaintiffs raise two primary counterarguments, neither of which is persuasive.  First,

Plaintiffs rely heavily on the Sixth Circuit's decision in *Thompson v. Fresh Products, LLC*, 985

F.3d 509 (6th Cir. 2021).  *See* Pls.' Mem. 15-16.  There, the Sixth Circuit held that an employer

may not contractually shorten the ADEA limitations period for filing civil actions because "the

limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights."  *Id.* at

519-21.  Importantly, however, *Thompson* did not involve an agreement to arbitrate or the

piggybacking rule.  The Sixth Circuit therefore had no occasion to consider whether the same

conclusion would apply in the arbitration context or whether the ADEA also confers a

substantive right to piggybacking.  *See id.*  What is more, the *Thompson* court relied extensively

on *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019), in which the Sixth

Circuit had concluded that Title VII's limitations period could not be contractually shortened.  In

**ADD.015**

so holding, however, the *Logan* court distinguished an earlier *en banc* decision upholding an agreement to arbitrate that shortened the Title VII statute of limitations period. *Id.* at 836-38 (citing *Morrison v. Cir. City Stores*, 317 F.3d 646, 673 n.16 (6th Cir. 2003) (en banc)). Indeed, *Logan* explicitly limited its holding to "contractually shortened limitation period[s] . . . *outside of . . . arbitration agreement*[*s*]." *Id.* at 839 (emphasis added); *see also id.* at 836-38 (distinguishing *Morrison* on the grounds that it involved unique considerations in the "arbitration context"). If anything, therefore, Sixth Circuit precedent undermines rather than supports Plaintiffs' position. *See Chandler*, 2022 WL 2473340, at *6 (distinguishing *Thompson* and *Logan* on similar grounds).[14]

Second, Plaintiffs argue, in the alternative, that they could not have waived "their statute of limitations rights under the piggybacking rule by signing the arbitration agreement" because IBM did not provide them with disclosures required by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f). Pls.' Mem. 19; *see also* Pls.' Opp'n 3, 8. The OWBPA, which amended the ADEA, does require an employer to make certain disclosures to an employee before that employee may "waive any right or claim" under the ADEA. 29 U.S.C. § 626(f)(1). But, as the Second Circuit has made clear, "[t]he phrase 'right or claim' as used in § 626(f)(1) is limited to substantive rights and does not include procedural ones." *Estle*, 23 F.4th at 214 (citing

---

[14]     Relatedly, Plaintiffs argue that the Court should "defer" to the EEOC's position in the amicus brief it submitted in *Thompson*. *See* Pls.' Mem. 16-17 & n.18. But putting aside whether such deference would be warranted otherwise, the EEOC's amicus brief did not take any position on the question at issue here because, as noted, *Thompson* did not involve an agreement to arbitrate or piggybacking. *See Thompson*, EEOC Brief, 2020 WL 1160190, at *19-26 (6th Cir. Mar. 2, 2020). Moreover, the EEOC's argument relied almost exclusively on the Sixth Circuit's prior decision in *Logan*, which, as discussed, acknowledged that a different conclusion would be warranted in the arbitration context. *See id.* Thus, the EEOC's amicus brief does not change the landscape, let alone warrant deference here. Notably, the EEOC declined the Court's invitation to submit an amicus in *this* case. *See* ECF Nos. 20, 51.

**ADD.016**

*14 Penn Plaza*, 556 U.S. at 265-66).  Thus, Plaintiffs' reliance on the OWBPA adds nothing.  As

discussed, the piggybacking rule does not give rise to a substantive right under the ADEA.  It

follows that the OWBPA's disclosure requirements do not apply to waivers of that rule.  *Cf. id.*

at 213-15 (holding that "[a] collective-action waiver is . . . not a waiver of any 'right or claim'

under the ADEA that triggers the requirements of 29 U.S.C. § 626(f)(1)" because "collective

action, like arbitration, is a procedural mechanism, not a substantive right" (internal quotation

marks omitted)).  In short, for the foregoing reasons, the Court finds no support for Plaintiffs'

argument that the piggybacking rule is a substantive, non-waivable right in this context.

### 2.   The Timeliness Provision Does Not Prevent Plaintiffs from Effectively Vindicating Their Rights Under the ADEA

The Court's conclusion that the piggybacking rule is procedural, not substantive, for

purposes of the FAA does not mean that agreements to arbitrate may establish prohibitively short

filing deadlines for ADEA claims.  Instead, it means that, like other procedural rules, the statute

of limitations period may be modified in arbitration proceedings provided that the modification

does not prevent the "effective vindication" of a plaintiff's substantive rights.  *Italian Colors*,

570 U.S. at 235; *see, e.g.*, *Chandler*, 2022 WL 2473340, at *4; *cf. Ragone*, 595 F.3d at 125-26

(noting that, if an arbitration agreement shortened Title VII's limitations period from 300 to 90

days, it might raise concerns under the effective-vindication doctrine).  This approach aptly

balances the "strong federal policy favoring arbitration" and courts' associated duty to enforce

arbitration agreements according to their terms, on the one hand, with the need to ensure that

"the prospective litigant effectively may vindicate its statutory cause of action in the arbitral

forum," on the other.  *Ragone*, 595 F.3d at 121, 125.

Plaintiffs argue that, if the piggybacking rule is procedural, the Timeliness Provision

violates this limiting principle.  But that argument borders on frivolous.  "Plaintiffs do not

**ADD.017**

identify any obstacle, let alone one imposed by IBM, that prevented [them] from filing an

arbitration demand on their ADEA claims within the 180- or 300-day deadline established by the

separation agreements." *Rusis*, 529 F. Supp. 3d at 194 n.8.  And "[h]ad [Plaintiffs] done so, . . .

they could have received any relief to which they were entitled in an individual arbitration, as

contemplated by IBM's separation agreements." *Id.*; *see also Smith v. Int'l Bus. Machs. Corp.*,

No. 21-CV-03856 (JPB), 2022 WL 1720140, at *6 (N.D. Ga. May 27, 2022) (rejecting this same

argument on similar grounds).  Notably, the timeline for filing an arbitration demand established

by the Timeliness Provision is the *same* 180- or 300-day deadline provided by the ADEA itself.

*See* Arb. Agreement 25; 29 U.S.C. § 626(d)(1).  Thus, to hold that Plaintiffs were prevented by

the Timeliness Provision from effectively vindicating their rights under the ADEA would be to

hold that no plaintiff can effectively vindicate his or her rights under the statute.  That, of course,

would be "patently absurd." *Rusis*, 529 F. Supp. 3d at 194 n.8.  Accordingly, Plaintiffs'

challenge to the Timeliness Provision on the ground that it prevents them from effectively

vindicating their rights under the ADEA is without merit.  *See, e.g.*, *Chandler*, 2022 WL

2473340, at *4 ("[T]here can be no reasonable dispute that the Tim[eliness] Provision afforded

the plaintiff a 'fair opportunity' to vindicate [his ADEA rights] in arbitration within an entirely

reasonable time frame." (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31

(1991)).

*     *     *

In sum, because the Timeliness Provision did not waive a substantive right under the

ADEA and did not prevent Plaintiffs from effectively vindicating any such rights, Plaintiffs'

challenge to its enforceability fails as a matter of law.  Thus, Plaintiffs claim for declaratory

relief on these grounds must be, and is, dismissed.  In light of that determination, Plaintiffs'

18

**ADD.018**

motion for summary judgment on that claim is also denied as moot.  *See, e.g.*, *Chandler*, 2022

WL 2473340, at *8; *Oparaji v. Mun. Credit Union*, No. 19-CV-4034 (JPC), 2021 WL 2414859,

at *6 (S.D.N.Y. June 14, 2021) (denying motion for summary judgment as moot after granting

motion to dismiss the claim), *aff'd*, No. 21-1518-CV, 2022 WL 1122681 (2d Cir. Apr. 15, 2022)

(summary order).

## C.  Plaintiffs' Motion for Leave to Amend

Finally, the Court turns to Plaintiffs' motion for leave to amend their Complaints to add a

state-law fraudulent inducement claim, which they seek to bring on a class-wide basis.  *See* Pls.'

Mot. to Amend Mem.; PAC 18-21.  More specifically, Plaintiffs seek to add allegations that IBM

fraudulently induced them to "sign IBM's separation agreement (containing the arbitration

clause[)]" by (1) "fraudulently and in bad faith represent[ing] to [Plaintiffs] that they were being

laid off for legitimate business reasons"; and (2) "misrepresenting to them that they could only

maintain their health benefits through COBRA by signing the agreement."  PAC ¶¶ 46, 55.

Based on these allegations, Plaintiffs assert that "there w[ere] no valid arbitration agreement[s] in

the first place, meaning that [Plaintiffs] c[an] still pursue their claims in court."  ECF No. 83

("Pls.' Mot. to Amend Reply"), at 9; *see also* PAC 21, ¶ 1 (asking the Court to "find and declare

the whole of the arbitration provision in IBM's Separation Agreement . . . to be unenforceable

and otherwise void").

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely give

leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a) (2).  Nevertheless,

a court has discretion to deny a motion to amend where "there is a good reason for it, such as

futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Jin v. Metro. Life Ins.*

*Co.*, 310 F.3d 84, 101 (2d Cir. 2002).  "An amendment to a pleading is futile if the proposed

**ADD.019**

claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)."  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, a proposed claim does not "plausibly give rise to an entitlement to relief."  *Ashcroft*, 556 U.S. at 679.  The party opposing a motion to amend bears the burden of establishing that amendment would be futile.  *See, e.g., Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-CV-5651 (AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013).

In this case, Plaintiffs' proposed amendments are futile.  Beginning with the Post-Arbitration Plaintiffs, their proposed fraudulent inducement claim would fail as a matter of law because they waived any such challenge to their arbitration agreements.  "If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter."  *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003) (quoting *AGCO Corp. v. Anglin,* 216 F.3d 589, 593 (7th Cir. 2000)); *accord Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 191 (2d Cir. 2013); *see also ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 685 (2d Cir. 1996) ("An objection to the arbitrability of a claim must be made on a timely basis, or it is waived.").  Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is . . . an allegation of waiver . . . or a like defense to arbitrability."  *Mitsubishi Motors*, 473 U.S. at 626.  Applying these standards, courts regularly find that a party has waived a challenge to an arbitration agreement where the party initiated the arbitration demand and participated in the arbitration proceedings without objection.  *See, e.g., Time Warner Cable of New York City LLC*

**ADD.020**

*v. Int'l Bhd. of Elec. Workers, AFLCIO, Loc. Union No. 3*, 684 F. App'x 68, 71 (2d Cir. 2017)

(summary order) (finding waiver where the objecting party had "expressly ask[ed] the arbitrator"

to resolve the dispute, and had not objected "until 5 months after the arbitrator issued an adverse

interim award"); *ConnTech Dev. Co.*, 102 F.3d at 685 (same where party had participated in over

a month of hearings before the arbitrator and had not asserted an objection to arbitration until

forty-one months after being served with notice of the arbitration demand); *Kumaran v. ADM

Inv. Servs., Inc.*, No. 20-CV-3873 (GHW) (SDA), 2021 WL 2333645, at *4 (S.D.N.Y. June 7,

2021) (same where party had "initiat[ed] the arbitration" and "participated[d] in arbitration for at

least a year and a half"), *motion for reconsideration denied*, ECF No. 97, at 41-46 (S.D.N.Y Feb.

18, 2022); *Sands Bros. & Co. v. Zipper*, No. 03-CV-7731 (VM), 2003 WL 22439789, at *3

(S.D.N.Y. Oct. 27, 2003) (same where party had waited until "just twenty-two days before the

arbitration was scheduled to begin, to object to the arbitration").

This precedent forecloses the Post-Arbitration Plaintiffs' proposed fraudulent inducement

claims. As Plaintiffs themselves acknowledge, each Post-Arbitration Plaintiff affirmatively

initiated arbitration and actively participated in arbitration proceedings until their claims were

dismissed. *See* PAC ¶ 1, 7, 20, 23; *see also* Pls.' Opp'n 26 n.16. And, critically, Plaintiffs do

not allege that they objected to the enforceability of their arbitration agreements at any point

during their arbitration proceedings. *See* Pls.' Mot. to Amend Reply 7-9 (responding to IBM's

waiver argument). To the contrary: Plaintiffs themselves previously disclaimed any attempt to

challenge the enforceability of their arbitration agreements, both in *Rusis* and in the instant cases.

*See* 529 F. Supp. 3d at 192 ("Plaintiffs do not dispute that [the Arbitration Opt-Ins] must arbitrate

their claims." (quoting Plaintiffs' briefing)); Pls.' Mem. 2 ("Plaintiffs have not challenged the

overall enforceability of IBM's arbitration agreement. They recognize that their ADEA claims

**ADD.021**

are to be pursued in arbitration.").  It was not until Plaintiffs filed their motion for leave to amend

— after IBM had moved to dismiss — that they first raised any challenge to the Arbitration

Agreement as a whole.  *Compare* Pls.' Mem. 2, *with* Pls.' Mot. to Amend Reply 9.  Plaintiffs

cannot now — years after having received decisions in arbitration proceedings that they

themselves initiated, *see* ECF Nos. 29-26 to 29-48 — "argue that the arbitrator[s] lacked

authority to decide the matter."  *Opals on Ice Lingerie*, 320 F.3d at 368; *see also, e.g.*, *Time*

*Warner Cable of New York City LLC*, 684 F. App'x at 71; *ConnTech Dev. Co.*, 102 F.3d at 685.

Plaintiffs' sole counterargument on this score is meritless.  They argue that "[t]here can

be no waiver here, given the fact that the information that justified the assertion of the fraudulent

inducement claims became known to Plaintiffs only after they had had their claims dismissed in

arbitration."  Pls.' Mot. to Amend Reply 8.  But that argument does not withstand scrutiny.  As

noted, the principal basis for Plaintiffs' proposed fraudulent inducement claims is that IBM

"fraudulently and in bad faith represented to its employees that they were being laid off for

legitimate business reasons" when, it is alleged, IBM was systematically discriminating against

older workers.  PAC ¶¶ 46-53.  But these allegations were the core of the very ADEA claims that

the Post-Arbitration Plaintiffs pursued in arbitration.  *See* PAC ¶¶ 16-20; *see also, e.g.*, ECF No.

29-7, Ex. A, ¶ 19 ("IBM has also reduced its population of older workers by terminating older

employees for pretextual reasons.").  Thus, Plaintiffs' contention that they were not aware of

their fraudulent inducement claims until after dismissal of those ADEA claims — which were

based on the very same conduct — does not pass the laugh test.  Pls.' Mot. to Amend Reply 8.[15]

---

[15]     Indeed, Plaintiffs implicitly concede this point by arguing that "it was not until Plaintiffs'
counsel had obtained the smoking gun evidence referenced in [another case], that the *degree* to
which IBM fraudulently induced these individuals into entering into their arbitration agreement
became clear."  Pls.' Mot. to Amend Reply 8 (emphasis added).

**ADD.022**

Conspicuously, Plaintiffs do not even attempt to argue that they were unaware of a viable

fraudulent inducement claim based on misrepresentations regarding COBRA benefits prior to the

dismissal of their claims in arbitration.  *See id.* at 7-9.  Accordingly, the Court concludes that the

Post-Arbitration Plaintiffs' proposed fraudulent inducement claims would be futile.

The proposed fraudulent inducement claim of the other two Plaintiffs, Flannery and

Corbett, would likewise fail to withstand a motion to dismiss, albeit for different reasons.  "To

state a claim for fraudulent inducement under New York law, a plaintiff must show: (1) a

representation of material fact, (2) which was untrue, (3) which was known to be untrue or made

with reckless disregard for the truth, (4) which was offered to deceive another or induce him to

act, and (5) which that other party relied on to its injury."  *Aetna Cas. & Sur. Co. v. Aniero*

*Concrete Co.*, 404 F.3d 566, 580 (2d Cir. 2005).  Additionally, "fraudulent inducement claim[s]

[are] subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil

Procedure."  *Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 525

(S.D.N.Y. 2018).  Specifically, such claims must "state with particularity the circumstances

constituting fraud . . . ." Fed. R. Civ. P. 9(b).  To satisfy that standard, a complaint must "allege

facts that give rise to a strong inference of fraudulent intent."  *Acito v. IMCERA Grp., Inc.*, 47

F.3d 47, 52 (2d Cir. 1995).  That is, "the complaint must: (1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet*

*Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  Failure to satisfy the Rule 9(b) standard warrants

dismissal.  *See, e.g.*, *id.* at 293; *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

Here, the Proposed Amended Complaint does not come close to satisfying these

heightened pleading standards.  With respect to Plaintiffs' contention that IBM misrepresented

the reasons for their terminations — and, more specifically, "fraudulently and in bad faith represented to [Plaintiffs] that they were being laid off for legitimate business reasons," PAC ¶ 46 — the Proposed Amended Complaint does not "state where and when the statements were made," *Lerner*, 459 F.3d at 290.[16]  Nor does it "identify the speaker," *id.*, other than through vague references to "IBM" and "low-level managers," *see* PAC ¶¶ 46-53.  Plaintiffs likewise fail to specify where and when "IBM . . . misrepresented to [Plaintiffs] that they could only maintain their health benefits through COBRA by signing the agreement."  PAC ¶ 55.  And, as for who made those statements, the Proposed Amended Complaint merely suggests that unidentified "managers and human resource professionals" were involved.  PAC ¶¶ 54-44.  Thus, these pleadings are plainly insufficient to satisfy the requirements of Rule 9(b).  *See, e.g.*, *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 165 (S.D.N.Y. 2020) (dismissing a fraudulent inducement claim for failure to satisfy Rule 9(b)'s requirements because the plaintiff's "allegations fail[ed] to identify who made these statements and when, [and] where, . . . they were made"); *Schlenger v. Fid. Emp. Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011) (reaching the same conclusion where the plaintiff had "fail[ed] to name individuals, identify detailed statements, or identify particular dates" on which the allegedly fraudulent statements

---

[16]     The closest Plaintiffs come is their allegation that "IBM provided employees with template letters indicating that the company was required to lay them off due to their allegedly unneeded skills and/or the company's decision to move in a different business direction."  PAC ¶ 47.  But Plaintiffs did not specify when these "template letters" were sent and what specific statements they contained that allegedly give rise to a fraudulent inducement claim.  *Cf. McCormack v. IBM*, 145 F. Supp. 3d 258, 276 (S.D.N.Y. 2015) (finding Rule 9(b)'s requirements met for a fraudulent inducement claim where the plaintiff alleged that another employee, who was identified by name, sent an "email . . . on June 12, 2013, inform[ing] [the plaintiff] that he was 'being terminated as part of a broader fiscally-driven "resource action," identified [by name,] which IBM allegedly was implementing "to streamline operations and increase business productivity"'").

24

were made).  Accordingly, Plaintiffs' motion for leave to amend is DENIED on the basis of

futility — that the Proposed Amended Complaint would not survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, IBM's motion to dismiss Plaintiffs' Complaints is

GRANTED.  In particular, the Court declines to exercise jurisdiction over the Post-Arbitration

Plaintiffs' claims and dismisses Flannery and Corbett's challenges to the Confidentiality

Provision as unripe.  Additionally, the Court grants IBM's motion to dismiss Flannery's and

Corbett's challenges to the Timeliness Provision for failure to state a claim (and declines to grant

leave to amend those claims because the defects in the claims are substantive and any

amendment would therefore be futile).  *See, e.g.*, *Ipsos-Insight, LLC v. Gessel*, 547 F. Supp. 3d

367, 380 (S.D.N.Y. 2021); *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6

(S.D.N.Y. Apr. 28, 2021) (collecting cases).  Finally, Plaintiffs' motion for summary judgment is

DENIED as moot, and Plaintiffs' motion for leave to amend is DENIED.

One housekeeping matter remains: The parties filed letter-motions to seal portions of

their motion papers.  ECF Nos. 26, 33, 35, 41, 60, 72.  The Court granted these letter-motions

temporarily, pending its decision on the underlying motions. ECF Nos. 32, 36, 42, 63, 74.  It is

well established that filings that are "relevant to the performance of the judicial function and

useful in the judicial process" are considered "judicial documents" to which a presumption in

favor of public access attaches.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d

Cir. 2006).  Significantly, assessment of whether the presumption in favor of public access is

overcome must be made on a document-by-document basis.  *See, e.g.*, *Brown v. Maxwell*, 929

F.3d 41, 48 (2d Cir. 2019)  And the mere fact that information is sealed or redacted by

agreement of the parties is not a valid basis to overcome the presumption.  *See, e.g.*, *United*

**ADD.025**

*States v. Wells Fargo Bank N.A.*, No. 12-CV-7527 (JMF), 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015).  Accordingly, **no later than two weeks from the date of this Opinion and Order**, any party that believes any materials currently under seal or in redacted form should remain under seal or in redacted form is ORDERED to show cause in writing, on a document-by-document basis, why doing so would be consistent with the presumption in favor of public access.  Any such submission should address the import of Judge Liman's decision in *Lohnn v. International Business Machines Corp.*, No. 21-CV-6379 (LJL), 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022), as well as the documents that have been made public as a result of that decision.

Further, the parties shall consult and comply with Section 7 of the Court's Individual Rules, which requires, among other things, that any party seeking leave to maintain a document in redacted form must simultaneously publicly file on ECF a copy of the document with proposed redactions and also file under seal on ECF (with the appropriate level of restriction) an unredacted copy of the document with the proposed redactions highlighted.  Any document for which the parties do not move for the Court to maintain under seal or in redacted form **within two weeks of the date of this Opinion and Order** shall be unsealed without any further notice to the parties.  The parties shall, no later than **three weeks of the date of this Opinion and Order** file a joint letter with the list of the ECF numbers of the filings to be unsealed.

The Clerk of Court is directed to terminate ECF Nos. 27, 33, 38, 47, and 79.

SO ORDERED.

Dated: July 14, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge

**ADD.026**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
IN RE:

IBM ARBITRATION AGREEMENT LITIGATION

21 **CIVIL** 6296 (JMF)

## <u>JUDGMENT</u>

------------------------------------------------------------X

It is, **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion and Order dated July 14, 2022, Plaintiffs' motion for leave to amend is DENIED on the basis of futility that the Proposed Amended Complaint would not survive a motion to dismiss. IBM's motion to dismiss Plaintiffs' Complaints is GRANTED. In particular, the Court has declined to exercise jurisdiction over the Post-Arbitration Plaintiffs' claims and dismisses Flannery and Corbett's challenges to the Confidentiality Provision as unripe. Additionally, the Court has granted IBM's motion to dismiss Flannery's and Corbett's challenges to the Timeliness Provision for failure to state a claim (and declines to grant leave to amend those claims because the defects in the claims are substantive and any amendment would therefore be futile). See, e.g., Ipsos Insight, LLC v. Gessel, 547 F. Supp. 3d 367, 380 (S.D.N.Y. 2021); Roundtree v. NYC, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases). Finally, Plaintiffs' motion for summary judgment is DENIED as moot, and Plaintiffs' motion for leave to amend is DENIED.

**Dated:**  New York, New York
              July 14, 2022

**RUBY J. KRAJICK**

_____
**Clerk of Court**

**BY:**      K. Mango

_____
**Deputy Clerk**

**ADD.027**

# L I C H T E N  &  L I S S - R I O R D A N ,  P. C.

ATTORNEYS AT LAW

HAROLD L. LICHTEN×
SHANNON LISS-RIORDAN×△◊
SARAH SCHALMAN-BERGEN■
MATTHEW W. THOMSON×
ADELAIDE H. PAGANO×
——————————————
THOMAS P. FOWLER×◊
OLENA SAVYTSKA×
ANNE KRAMER×△
MICHELLE CASSORLA×^○
ZACHARY RUBIN×◊^♦
ANASTASIA DOHERTY×
TARA BOGHOSIAN×
MATTHEW PATTON×
KRYSTEN CONNON^■
BENJAMIN J. WEBER×□ OF COUNSEL

729 BOYLSTON STREET, SUITE 2000
BOSTON, MASSACHUSETTS  02116
——————————————
TELEPHONE  617-994-5800
FACSIMILE  617-994-5801

WWW.LLRLAW.COM

——————

× ADMITTED IN MASSACHUSETTS
△ ADMITTED IN CALIFORNIA
◊ ADMITTED IN NEW YORK
■ ADMITTED IN PENNSYLVANIA
^ ADMITTED IN NEW JERSEY
♦ ADMITTED IN CONNECTICUT
○ ADMITTED IN DISTRICT OF COLUMBIA
□ ADMITTED IN TENNESSEE

October 7, 2021

**VIA CM/ECF**
Hon. Jesse M. Furman
Thurgood Marshall United State Courthouse
40 Foley Square
Courtroom 1105
New York, NY 10007

RE:   **IBM Arbitration Agreement Litigation**, C.A. Nos. 21-CV-6296 (JMF); 21-CV-6308 (JMF); 21-CV-6310 (JMF); 21-CV-6312 (JMF); 21-CV-6314 (JMF); 21-CV-6320 (JMF); 21-CV-6322 (JMF); 21-CV-6325 (JMF); 21-CV-6326 (JMF); 21-CV-6331 (JMF); 21-CV-6340 (JMF); 21-CV-6341 (JMF); 21-CV-6351 (JMF); 21-CV-6353 (JMF); 21-CV-6375 (JMF); 21-CV-6377 (JMF); 21-CV-6384 (JMF)

Dear Judge Furman:

I represent Plaintiffs in the above-referenced matters. Pursuant to Your Honor's Individual Rule 7(C)(ii), Plaintiffs seek permission to file their Motion for Summary Judgment under seal, along with the accompanying Declaration of Shannon Liss-Riordan and exhibits.

The reason for this request is that these documents contain information that falls under the scope of the confidentiality agreement contained within IBM's arbitration agreements (see Exhibit 2 to Liss-Riordan Decl.), which is the subject of Plaintiffs' Motion for Summary Judgment.  As explained extensively in the Motion for Summary Judgment, Plaintiffs do not believe that IBM's confidentiality provision in its arbitration agreement should be enforced.  Plaintiffs further believe that these documents be publicly filed.  In particular, Plaintiffs note that Your Honor's Individual Rule 7(B) states in relevant part that: "In general, the parties' consent or the fact that information is subject to a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial government." (citing In re Gen. Motors LLC Ignition Switch Litig., No. 14-MD-2543 (JMF), 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015).

**ADD.028**

# LICHTEN & LISS-RIORDAN, P.C.

Nevertheless, until IBM has had the opportunity to respond, and the Court has had the opportunity to consider the parties' arguments regarding confidentiality, Plaintiffs request that, at least preliminarily, these documents be permitted to be filed under seal.

Sincerely,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2021, a true and accurate copy of the foregoing document was filed via this Court's CM/ECF system.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

The materials shall be filed under seal temporarily pending the Court's ruling on the underlying motion, at which time the Court will direct the parties to brief whether they should remain under seal.

Counsel is reminded that the Court's Order of August 24, 2021, see ECF No. 20, consolidated all cases under case number 21-CV-6296 and directed that **all future filings in the consolidated actions are to be made only under case number 21-CV-6296.** Accordingly, filings need not include the other docket numbers and **should not** be filed on the other dockets.

The Clerk of Court is directed to terminate ECF No. 30 in 21-CV-6296 and the corresponding motions in all of the related cases.

SO ORDERED.

2

October 8, 2021

**ADD.029**

# L I C H T E N   &   L I S S - R I O R D A N ,  P.C.

ATTORNEYS AT LAW

HAROLD L. LICHTEN×
SHANNON LISS-RIORDAN×△◇
SARAH SCHALMAN-BERGEN∎
MATTHEW W. THOMSON×
ADELAIDE H. PAGANO×
_____
THOMAS P. FOWLER×◇
OLENA SAVYTSKA×
ANNE KRAMER×△
MICHELLE CASSORLA×^◻
ZACHARY RUBIN×◇•
ANASTASIA DOHERTY×
TARA BOGHOSIAN×
MATTHEW PATTON×
KRYSTEN CONNON×∎
BENJAMIN J. WEBER×◻ OF COUNSEL

729 BOYLSTON STREET, SUITE 2000
BOSTON, MASSACHUSETTS  02116
_____
TELEPHONE  617-994-5800
FACSIMILE  617-994-5801

WWW.LLRLAW.COM

_____

× ADMITTED IN MASSACHUSETTS
△ ADMITTED IN CALIFORNIA
◇ ADMITTED IN NEW YORK
∎ ADMITTED IN PENNSYLVANIA
^ ADMITTED IN NEW JERSEY
• ADMITTED IN CONNECTICUT
◻ ADMITTED IN DISTRICT OF COLUMBIA
◻ ADMITTED IN TENNESSEE

October 12, 2021

**VIA CM/ECF**
Hon. Jesse M. Furman
Thurgood Marshall United States Courthouse
40 Foley Square
Courtroom 1105
New York, NY 10007

RE:   **IBM Arbitration Agreement Litigation**, C.A. No. 21-CV-6296 (JMF)

Dear Judge Furman:

I write in response to Your Honor's Order of October 8, 2021 (Dkt. 32).  Just before that Order was entered, we were prepared to submit a letter suggesting that the Court follow the ruling that had just been entered by Judge Koetel in the similar case of Chandler v. International Business Machines Corp., Civ. Act. No. 1:21-cv-06319-JGK (S.D.N.Y.), in which he granted the request to file documents under seal but indicated that non-confidential documents should be filed publicly with confidential portions redacted.  See Order (Chandler Dkt. 18) (attached here as Exhibit A).

Plaintiffs contend that is the proper approach here, since a significant portion of the filings can clearly not even be alleged to be confidential (including legal argument, copies of publicly filed documents, etc.).[1]  We believe these clearly non-confidential portions of the documents should be publicly filed and not remain under seal pending the Court's consideration of Plaintiffs' Motion for Summary Judgment.

_____

[1]    Plaintiffs originally filed their motion and accompanying documents under seal in an abundance of caution, but we recognize, and urge the Court to recognize, that much of what is contained in these documents cannot even be claimed by IBM to be confidential.

# LICHTEN & LISS-RIORDAN, P.C.

Following Judge Koeltl's order from Friday in the Chandler case, we prepared a version of Plaintiff's Motion for Summary Judgment, Statement of Material Facts, and Declaration of Shannon Liss-Riordan, with confidential information redacted, so that those documents could be publicly filed. We then conferred with IBM and agreed to provide IBM until Thursday, October 14, 2021, to review our proposed redacted versions of these documents in order to reach agreement regarding which portions of the filings IBM contends are confidential.

With respect to the portions of the documents that IBM alleges should remain confidential and under seal or redacted, IBM should be required to follow Your Honor's Individual Practices Section 7(C)(i), which provides that:

When a party seeks leave to file a document under seal or in redacted form on the ground that an opposing party or third party has requested it, the filing party shall notify the opposing party or third party that it must file, within three days, a letter explaining the need to seal or redact the document.

In accordance with this rule, on Friday, we notified IBM of this requirement that it file a letter within three days explaining the need to seal or redact the materials.

We thus request that IBM should be required to provide the required letter also by Thursday. We note that Your Honor's Individual Practices Section 7(B) also states that:

The parties' consent or the fact that information is subject to a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial documents." See, e.g., In re Gen. Motors LLC Ignition Switch Litig., No. 14-MC-2543, 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015).

We thus request that the Court modify its Order (Dkt. 32) to require the non-confidential portions of the documents be filed publicly. We disagree with IBM's position that the documents should remain fully under seal until after Plaintiffs' motion is decided.[2]

---

[2]     On Friday afternoon, IBM alerted Judge Koeltl in the Chandler case to Your Honor's Order that the documents shall remain under seal pending determination of Plaintiffs' motion. This morning, we filed a similar letter to this one with Judge Koeltl, urging that he maintain his earlier order that the non-confidential materials be filed publicly, with the alleged confidential portions redacted or filed under seal. See Chandler Dkt. 21. A half hour after we filed the letter, an order was entered in that case granting IBM's request to follow Your Honor's Order in this case that the materials all remain under seal until Plaintiff's motion is decided. The order itself was dated yesterday, October 11, 2021, indicating that Judge Koeltl had not had the opportunity to review our letter we submitted today, prior to signing his order.

# LICHTEN & LISS-RIORDAN, P.C.

Sincerely,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

*Attorney for Plaintiffs William Chastka, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2021, a true and accurate copy of the foregoing document was filed via this Court's CM/ECF system.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

The Court is slightly mystified.  The prior endorsement --- which Plaintiffs ask the Court to reconsider --- granted Plaintiffs' own motion to seal (albeit on a temporary basis).  That said, the Court understood Plaintiffs' proposal to be that unredacted copies of the briefs would be kept under seal until the Court could consider the redactions and that, in the meantime, redacted versions of the briefs --- with redactions narrowly tailored to whatever justifies sealing --- would be filed publicly, as there is no basis to seal non-confidential portions of the parties' papers (including, for example, legal arguments).  To that extent, the motion for reconsideration is GRANTED.  The parties should confer and raise any proposed redactions or sealing in accordance with the Court's Individual Rules and Practices.  The Clerk of Court is directed to terminate ECF No. 33.  SO ORDERED.

October 13, 2021

We also note that both Your Honor's individual rules, and Judge Koeltl's, require parties to meet and confer regarding the filing of allegedly confidential documents in order to *narrow* the scope of which such documents are to be filed in redacted form or under seal.  The rule does not require the parties to meet and confer regarding which documents are allegedly confidential in the first place.  We have however nevertheless now conferred with IBM, which agreed to respond to our proposals regarding proper redactions by Thursday.

**ADD.032**

# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number: (212) 326-8338
mwlampe@jonesday.com

October 13, 2021

CM/ECF

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

Re:    IBM Arbitration Agreement Litigation, No. 1:21-CV-06296-JMF et al.

Dear Judge Furman:

On behalf of Defendant International Business Machines Corporation ("IBM"), I write to oppose Plaintiffs' letter motion (Letter Motion, ECF No. 33) seeking reconsideration of Your Honor's order of October 8, 2021 in which you ruled that "[t]he [summary judgment] materials shall be filed under seal temporarily pending the Court's ruling on the underlying motion, at which time the Court will direct the parties to brief whether they should remain under seal." *See* Order Granting Letter Motion to Seal at 2, ECF No. 32 ("Sealing Order").[1] There is no good cause to disturb Your Honor's ruling.

Your Honor's ruling reflects the fact that confidentiality is at the heart of the case and the materials should remain sealed until Your Honor decides the underlying dispute over the enforceability of the confidentiality provision in the parties' arbitration agreement. Indeed, Plaintiffs themselves, in their initial sealing motion (ECF No. 26, p. 2), acknowledged that these documents should remain under seal until "the Court has had the opportunity to consider the parties' arguments regarding confidentiality." Plaintiffs' summary judgment papers attach, describe, and cite to dozens of documents squarely protected from disclosure by the confidentiality provision of IBM's arbitration agreements. The great majority of these documents are not even from Plaintiffs' own arbitrations, but are instead documents from other individuals' confidentially protected arbitrations. In light of these circumstances, IBM agrees with the Court's ruling that these documents should remain temporarily under seal pending the resolution of the underlying motions.

Your Honor's decision to defer any filing in the public record of redacted versions of these documents yields efficiencies for the parties and the Court. The parties ultimately will

---

[1] All cited filings are from *In Re: IBM Arbitration Agreement Litigation* unless otherwise noted.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

ADD.033

JONES DAY

Hon. Jesse M. Furman
October 13, 2021
Page 2

need to meet and confer on which documents containing confidential information require redactions, and submit any disputes to the Court. It is most efficient for the parties to meet and confer just once, after the underlying motions have been decided and the parties' have the benefit of Your Honor's summary judgment/motion to dismiss ruling on the enforceability of the confidentiality provision when addressing redactions. *See* Sealing Order at 2 ("the Court will direct the parties to brief whether [the documents] should remain under seal.") There is no reason to disturb this Order now when Your Honor has already decided the issue in a manner yielding efficiencies for both the Court and the parties.

Plaintiffs cite Your Honor's Individual Rules and Practices in Civil Cases multiple times in their Letter Motion, but Plaintiffs did not follow these rules themselves. *See* Letter Motion at 2-3. Plaintiffs filed their motion and accompanying documents under seal without meeting and conferring with IBM, as Your Honor's Individual Practices instruct the parties to do. Nor did Plaintiffs abide by the parties' agreement to confer on stipulated facts to submit to the Court, and only submit separate statements of facts if they were unable to agree. *See* Joint Letter at 3, ECF No. 16. Instead, Plaintiffs filed a Rule 56.1 statement without conferring with IBM. In any event, there is no need to revisit the Court's decision on the issue of sealing now.

Finally, Plaintiffs misrepresent Judge Koeltl's decision on the issue of sealing in *Chandler*. *See* ECF No. 33 at 1. On Friday, October 8, 2021, Judge Koeltl entered an order on Plaintiffs' initial motion to seal, directing that "copies of the documents with the alleged confidential material redacted should be filed in the public docket." *See id.*, Exhibit A at 1. Plaintiff William Chandler then sent IBM proposed redacted versions of his Motion for Summary Judgment and other documents, threatening to file them—and ten of the exhibits to the motion—publicly that same day. IBM immediately objected and filed a motion with Judge Koeltl asking that he "temporarily maintain under seal Plaintiff's summary judgment filing and the various exhibits thereto pending resolution of the underlying motions," as Your Honor had decided to do in the instant case. Letter Motion to Seal at 1, *Chandler v. Int'l Bus. Machs. Corp.*, No. 1:21-cv-06319-JGK (S.D.N.Y. July 26, 2021), ECF No. 19 (attached here as Exhibit A). On October 12, 2021, Plaintiff filed a letter directed to Judge Koeltl asking for permission to file redacted filings. Approximately 35 minutes later, Judge Koeltl entered an order dated October 11, 2021 granting IBM's motion from Friday. *See* Order Granting Letter Motion to Seal, *Chandler v. Int'l Bus. Machs. Corp.*, No. 1:21-cv-06319-JGK (S.D.N.Y. July 26, 2021), ECF No. 21 (attached here as Exhibit B). Though Plaintiffs bury this fact in a footnote in their letter motion, *see* ECF No. 33 at 2 n.2, Judge Koeltl agreed with Your Honor that the summary judgment filing in *Chandler* should remain under seal pending the resolution of the underlying motions.

IBM therefore requests that the Court leave its Sealing Order in place.

JONES DAY

Hon. Jesse M. Furman
October 13, 2021
Page 3

Respectfully submitted,

*/s/ Matthew W. Lampe*

Matthew W. Lampe

cc:     Shannon Liss-Riordan, Esq.

In light of the Court's order resolving Plaintiffs' letter-motion regarding the same issue, this letter-motion is denied as moot.  The Clerk of Court is directed to terminate ECF No. 35.

SO ORDERED.

October 13, 2021

**ADD.035**

# JONES DAY

250 VESEY STREET  •  NEW YORK, NEW YORK  10281.1047

TELEPHONE: +1.212.326.3939  •  FACSIMILE: +1.212.755.7306

Direct Number: (212) 326-8338
mwlampe@jonesday.com

October 28, 2021

<u>CM/ECF</u>

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

Re:   <u>IBM Arbitration Agreement Litigation, No. 1:21-CV-06296-JMF et al.</u>

Dear Judge Furman:

I write on behalf of Defendant IBM to address the redacted versions of the summary-judgment brief and exhibits filed by Plaintiffs on October 27, 2021. ECF 38-40. The redactions cover confidential arbitration materials that are subject to the very arbitral confidentiality agreement that is at issue in this litigation. Plaintiffs now take the position that all of the confidential material covered by the redactions should be made public immediately, *before* IBM has a chance to file its response brief, and before the Court has had a chance to address the merits of Plaintiffs' challenge to the confidentiality provision.

Plaintiffs' position is absurd. Simply put, Plaintiffs cannot file a lawsuit seeking to declare a confidentiality provision invalid, include all sorts of confidential material in the filings, and then demand that all of it be made public immediately. If this type of gambit were allowed, then Plaintiffs would be able to win the case just by filing it. That would make a mockery of the litigation process. The Court should instead resolve Plaintiffs' challenge to the confidentiality provision first, then decide which materials should remain confidential in light of its decision.

As an initial matter, this Court has already ruled that the confidential materials should "be filed under seal temporarily pending the Court's ruling on the underlying motion [for summary judgment], at which time the Court will direct the parties to brief whether they should remain under seal." ECF 32, at 2. Your Honor later clarified that "redacted versions of the briefs" should "be filed publicly, as there is no basis to seal non-confidential portions of the parties' papers (including, for example, legal arguments)." ECF 36, at 3. But the Court's orders plainly contemplate that the confidential materials should remain redacted pending resolution of Plaintiffs' challenge to the arbitral confidentiality provision. There is no reason to revisit that common-sense ruling now.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

**ADD.036**

JONES DAY

Hon. Jesse M. Furman
October 28, 2021
Page 2

Even Plaintiffs themselves apparently agreed that confidential materials should remain sealed when they first filed them. When Plaintiffs filed their summary-judgment motion on October 8, they filed the supporting brief, statement of facts, and all related exhibits entirely under seal, along with a motion to seal explaining that the documents "contain information that falls under the scope of the confidentiality agreement contained within IBM's arbitration agreements . . . which is the subject of Plaintiffs' Motion for Summary Judgment." ECF 26, at 1. Plaintiffs stated that "until IBM has had the opportunity to respond, and the Court has had the opportunity to consider the parties' arguments regarding confidentiality," the documents should "be filed under seal," "at least preliminarily." *Id*. at 2.

Notwithstanding those prior representations to the Court and the Court's prior orders, Plaintiffs now insist that *none* of the confidential arbitration materials should be redacted, and instead demand that they should all be made public immediately. At IBM's request, Plaintiffs filed public versions of the documents with redactions covering the confidential material in dispute, but insisted that IBM file this letter brief explaining why the redactions are appropriate.

The redactions are the crux of the underlying dispute before the Court. To suggest that they should be removed before briefing is even complete, let alone considered, is to presuppose a win for Plaintiffs, which is entirely improper.

Plaintiffs' demand for immediate disclosure rests entirely on the premise that, "in general," "a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial [documents]." ECF 26, at 1 (citing *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015)). But that rule does not apply here, and Plaintiffs' argument fails for several reasons.

First, the "general" principle that Plaintiffs invoke cannot sensibly apply in the circumstances of this case. A party cannot file a lawsuit for the sole purpose of challenging a confidentiality agreement, attach the confidential material in dispute, and then use the public-access doctrine as a pretext to publicize it before the opposing party has a full and fair opportunity to defend the confidentiality agreement. That would turn the litigation process into an absurdity, and Plaintiffs cannot cite any case applying the public-access doctrine in this way.

Second, the confidentiality agreement here is not just any ordinary contract. Instead, it is part of an arbitration agreement and is thus entitled to unique protection under the Federal Arbitration Act (FAA). As the Second Circuit has recognized, "in the arbitration context," an "attack on [a] confidentiality provision is, in part, an attack on the character of arbitration itself." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008). The FAA's strong federal policy protecting the terms of arbitration agreements thus weighs heavily against any disclosure that would vitiate an arbitral confidentiality term.

**ADD.037**

JONES DAY

Hon. Jesse M. Furman
October 28, 2021
Page 3

Third, IBM is not relying on a mere confidentiality agreement "by itself." Instead, much of the protected material is covered not only by IBM's confidentiality agreements, but also by protective orders issued by the arbitrators in the various arbitration proceedings. Whether those protective orders are valid and enforceable is bound up with the underlying merits of Plaintiffs' attack on arbitral confidentiality, which this Court has not yet resolved.

Fourth, it would be premature for the Court to resolve how the public-access doctrine applies to the confidential arbitration materials at this early stage of the case. The presumption of public access applies only to "judicial documents" that are actually "used in the performance of Article III functions." *United States v. Amodeo*, 71 F.3d 1044, 1048-49 (2d Cir. 1995). Here, however, as IBM's brief will explain, the Court can and should reject Plaintiffs' attack on arbitral confidentiality without any need to "use" or consider the confidential materials at all. At best, the materials could "play only a negligible role" in this case, and thus "the weight of the presumption" is exceedingly light. *Id*. at 1050. The Court will be much better positioned to weigh the public interest in disclosure after resolving the summary-judgment motion, at which point the Court can determine how much it needed to rely on the confidential materials to render a decision.

Finally, it is worth emphasizing that Plaintiffs did not need to file *any* confidential documents to support their summary-judgment brief. In fact, prior to the filing of the brief, Plaintiffs agreed to proceed without discovery and confer with IBM on stipulated facts to submit to the Court, and only submit separate statements of facts if Plaintiffs and IBM were unable to agree. ECF 16, at 3. As that agreement reflects, the issue before the Court is a purely legal question regarding the validity of the arbitral confidentiality agreement. There is no need to review the underlying confidential materials to resolve that question. Rather, Plaintiffs included and attached the confidential materials solely for the improper purpose of trying to disclose them under the public-access doctrine, in a transparent attempt to force the Court's hand to rule in their favor one way or another. That IBM is even required to make these points now—rather than in response to Plaintiffs' summary-judgment brief—exposes just how premature and absurd Plaintiff's argument is.

For these reasons, IBM respectfully requests that the Court leave the redactions in place to protect the confidential materials pending resolution of the underlying dispute. If Your Honor disagrees, IBM requests that the Court stay its decision and provide IBM with adequate time to seek emergency appellate review before any confidential materials are made public.

JONES DAY

Hon. Jesse M. Furman
October 28, 2021
Page 4

                    Respectfully submitted,

                    /s/ Matthew W. Lampe

                    Matthew W. Lampe

cc:    Shannon Liss-Riordan, Esq.

The Court's October 8, 2021 and October 13, 2021 Orders already temporarily granted the motion to seal, pending the Court's resolution of the underlying motion, and directed the parties to publicly file the relevant materials with proposed redactions. *See* ECF Nos. 32, 36. To the extent this letter-motion seeks that same relief, the Court's prior orders still govern. In light of the foregoing, this application is DENIED as moot. The Clerk of Court is directed to terminate ECF No. 41.

SO ORDERED.

October 29, 2021

**ADD.039**

LB5QibmC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE:  IBM ARBITRATION
     AGREEMENT LITIGATION
4
                                        21 Civ. 6296 (JMF)
5                                       Remote Teleconference
     ------------------------------x
6                                       New York, N.Y.
                                        November 5, 2021
7                                       11:30 a.m.

8    Before:

9                        HON. JESSE M. FURMAN

10                                          District Judge

11                          APPEARANCES

12   LICHTEN & LISS-RIORDAN PC
            Attorneys for Plaintiffs
13   SHANNON LISS-RIORDAN
     ZACHARY RUBIN
14

15   JONES DAY
            Attorneys for Defendants
16   MATTHEW LAMPE
     ALISON B. MARSHALL
17

18

19

20

21

22

23

24

25

**ADD.040**

LB5QibmC

 1                (The Court and all parties appearing via remote

 2       teleconference)

 3                THE COURT:  Good morning.  This is Judge Furman.

 4                Before I take appearances, this is in the matter of In

 5       Re:  IBM Arbitration Litigation 21 CV 6296.

 6                A couple reminders:  One, please mute your phone if or

 7       when you're not speaking to avoid background noise distraction.

 8       Remember to unmute it for when you wish to say something.  And

 9       remember to begin with your name so the court reporter and I

10       are clear on who is doing the speaking.

11                A reminder that this is a public conference, as it

12       would be if we were in open court, and a reminder that no one

13       may record or rebroadcast the conference.

14                With that, I'll take appearances, beginning with

15       counsel for plaintiffs.

16                MS. LISS-RIORDAN:  Good morning, your Honor.  For the

17       plaintiffs, this is Shannon Liss-Riordan.

18                THE COURT:  And for defendant.

19                MR. LAMPE:  Good morning, your Honor.  This is Matt

20       Lampe with Jones Day for defendants IBM, and my partner, Alison

21       Marshall is also on the line.

22                THE COURT:  Good morning to both of you as well.

23                I wanted to have a quick conference because, candidly,

24       the letter-writing campaign with respect to the sealing matter

25       is getting to be a bit much, and I just want to put it to rest.

LB5QibmC

1              As far as I can tell, I think the defendant has the

2    better of this one, which is to say it cannot be the law,

3    *Lugosch* notwithstanding, that the issue in dispute is the

4    legitimacy of a confidentiality provision, and the issue in the

5    lawsuit is a challenge to that confidentiality provision that

6    by challenging it, you can render public things that are

7    subject to the provision that is being challenged.  I am well

8    aware of *Lugosch*.  I am well aware of the standard.  I am well

9    aware that, in general, materials submitted in support of a

10   summary judgment motion are judicial documents subject to a

11   strong presumption in favor of public access, and that *Lugosch*

12   says that that is to be done immediately.  And there is also

13   law reflected in *Lugosch* that things are not necessarily

14   judicial documents merely because they are filed, and that some

15   assessment of what they are is necessary.

16             But more to the point, *Lugosch* does not involve a case

17   like this where the issue in dispute is the legitimacy of the

18   confidentiality provision itself, and it would be perverse and

19   absurd if by virtue of challenging a confidentiality provision,

20   the plaintiff was entitled to publicize the materials that are

21   subject to the confidentiality provision.

22             So, I'm happy to give plaintiff, Ms. Liss-Riordan, if

23   you wish to say -- if you can cite authority for the

24   proposition that *Lugosch* or public access principles apply in

25   these circumstances, I'm certainly happy to look at it, but

LB5QibmC

1     *Lugosch* itself does not speak to this particular issue, and I

2     think we have to put this to an end.

3            I did mandate that submissions be docketed publicly as

4     much as possible and redactions be limited to the matters that

5     are subject to the confidentiality provision, but whether and

6     to what extent those portions should be public I think will

7     have to wait until I rule on the validity of the

8     confidentiality provision itself.

9            Ms. Liss-Riordan.

10           MS. LISS-RIORDAN:  Yes.  Thank you, your Honor.

11           I understand what you are saying.  And I do apologize

12    for all of the back-and-forth letter-writing.  I know it came

13    out a bit confusing because we started it by asking to have the

14    documents under seal because we knew IBM took the position that

15    they were confidential, and then that led to a little bit of

16    initial confusion about what our position was, so I know it led

17    to a number of letters.

18           But the only point that I was simply trying to make

19    was that the substantive argument we're making in the lawsuit

20    is a different argument from here.  In the lawsuit, we are

21    arguing substantively that the confidentiality provision should

22    not be allowed to be used the way IBM is using it, and that

23    wouldn't apply just to the documents that have now been filed

24    in support of our summary judgment.  That would apply to any

25    documents we ultimately obtain through these arbitrations.  So,

1    really a broader question than this initial question before

2    you.

3         My understanding, based on your Honor's individual

4    practices, was that in the ordinary course when documents are

5    filed in support -- when documents are filed at all on the

6    docket, that a party wishes to keep them redacted or under

7    seal, they have to justify it for one of the reasons that is a

8    justification, such as commercially sensitive information, etc.

9         So that's why I was a bit surprised that when IBM

10   ultimately did file that letter requesting that the documents

11   remain under seal, they didn't cite any substantive reason that

12   would justify sealing on a federal court docket; i.e., that the

13   documents contain proprietary information, trade secrets or

14   other commercially sensitive information.  They simply said,

15   well, they're subject to a confidentiality agreement, and your

16   Honor's own individual practices states that the mere fact that

17   the parties have agreed to confidentiality doesn't mean that

18   documents are to be sealed on the public record, so --

19         THE COURT:  You're absolutely right that in general

20   that is the case, and that is reflected in my individual rules

21   and practices, and I have scores of decisions that reinforce

22   the point.

23         My question to you is, can you cite any authority in a

24   case where the very issue in the lawsuit is the validity of a

25   confidentiality provision where by virtue of filing that

LB5QibmC

1    lawsuit the plaintiff was entitled to make public materials

2    that are subject to that confidentiality provision.  That

3    strikes me as a very different situation than the

4    run-of-the-mill, you know, civil dispute where there's a

5    confidentiality provision, and that's the only basis to keep

6    something under seal.  Here, the very issue that you're seeking

7    to litigate is the validity of the confidentiality provision.

8    It would really be, I think, perverse to suggest that by virtue

9    of challenging it, you can publicize everything that's subject

10   to it.

11          MS. LISS-RIORDAN:  Well, I understand what you're

12   saying, your Honor, and again, we are not through this request

13   seeking to publicize everything.  Yes?

14          THE COURT:  Ms. Liss-Riordan?  Answer my question.

15          MS. LISS-RIORDAN:  Yes.  Yes, I will.

16          THE COURT:  Can you cite any case where the issue in

17   the litigation is the validity of a confidentiality provision

18   where the materials subject to that provision were not filed

19   under seal or in redacted form?

20          MS. LISS-RIORDAN:  I am not aware of any case that

21   raises that and addresses this issue one way or the other.

22          THE COURT:  Okay.  So, then I'm going to leave things

23   where they are.  I don't want any further letter-writing about

24   sealing.  If I agree with you that the confidentiality

25   provision is void, then obviously we can revisit it.  If I

LB5QibmC

1    uphold it, then I think that these materials would presumably

2    remain redacted, but we can revisit it at that time, in any

3    event.  So that's where things are.

4            Anything else to raise or discuss while I have you,

5    Ms. Liss-Riordan?

6            MS. LISS-RIORDAN:  I don't believe so at this time.

7    Thank you, your Honor.

8            THE COURT:  Mr. Lampe or Ms. Marshall?

9            MR. LAMPE:  Nothing for defendant, your Honor.

10           THE COURT:  All right.  Thank you very much.  I wish

11   everybody a pleasant weekend.  We are adjourned.

12           (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25

# LICHTEN & LISS-RIORDAN, P.C.

HAROLD L. LICHTEN×
SHANNON LISS-RIORDAN×△◇
SARAH SCHALMAN-BERGEN∎
MATTHEW W. THOMSON×
ADELAIDE H. PAGANO×

THOMAS P. FOWLER×◇
OLENA SAVYTSKA×
ANNE KRAMER×△
MICHELLE CASSORLA×^○
ZACHARY RUBIN×◇♦
ANASTASIA DOHERTY×
TARA BOGHOSIAN×
MATTHEW PATTON×
KRYSTEN CONNON×∎
BENJAMIN J. WEBER×○ OF COUNSEL

ATTORNEYS AT LAW

729 BOYLSTON STREET, SUITE 2000
BOSTON, MASSACHUSETTS  02116
———————
TELEPHONE  617-994-5800
FACSIMILE  617-994-5801

WWW.LLRLAW.COM

———————

× ADMITTED IN MASSACHUSETTS
△ ADMITTED IN CALIFORNIA
◇ ADMITTED IN NEW YORK
∎ ADMITTED IN PENNSYLVANIA
^ ADMITTED IN NEW JERSEY
♦ ADMITTED IN CONNECTICUT
○ ADMITTED IN DISTRICT OF COLUMBIA
□ ADMITTED IN TENNESSEE

December 1, 2021

**VIA CM/ECF**
Hon. Jesse M. Furman
Thurgood Marshall United State Courthouse
40 Foley Square
Courtroom 1105
New York, NY 10007

RE:   **IBM Arbitration Agreement Litigation**, C.A. No. 21-CV-6296 (JMF)

Dear Judge Furman:

Pursuant to Your Honor's Individual Rule 7(C)(ii), Plaintiffs seek permission to file their Reply in Support of Their Motion for Summary Judgment under seal, along with the accompanying Declaration of Shannon Liss-Riordan.

As discussed during the hearing of November 24, 2021, we do not believe that any of these documents should remain sealed or redacted. Nevertheless, we are cognizant of Your Honor's order.  We thus request that the Court direct the parties to confer in order to narrow the portions of the brief and accompanying documents that IBM contends are confidential and should remain redacted or under seal for the time being, so that Plaintiffs can then (as we did with our original motion) publicly file those portions that IBM does not contend are confidential.

Sincerely,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

*Attorney for Plaintiffs*

**ADD.047**

# LICHTEN & LISS-RIORDAN, P.C.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2021, a true and accurate copy of the foregoing document was filed via this Court's CM/ECF system.

<u>/s/ Shannon Liss-Riordan</u>
Shannon Liss-Riordan

Insofar as Paragraph 7 of the Court's Individual Rules and Practices in Civil Cases already directs the parties to "meet and confer . . . in advance to narrow the scope of . . . request[s]" to seal, Plaintiffs' motion is DENIED in part as moot.  After conferring with Defendant's counsel, Plaintiffs shall follow the procedures laid out in Paragraph 7(C)(ii)-(iii) of the Court's Individual Rules regarding filing sealed documents or redacted documents.

Plaintiffs' counsel is also reminded to comply with Paragraph 7(C)(i) of the Court's Individual Rules, which provides: "When a party seeks leave to file a document under seal or in redacted form on the ground that an opposing party or third party has requested it, the filing party shall notify the opposing party or third party that it must file, within three days, a letter explaining the need to seal or redact the document."

The Court will address this motion to seal once Defendant IBM has filed the aforementioned letter. Going forward, the parties are reminded to consult and comply with the Court's Individual Rules regarding redactions and sealed filings.

SO ORDERED.

December 2, 2021

2

**ADD.048**

# JONES DAY

250 VESEY STREET  •  NEW YORK, NEW YORK  10281.1047

TELEPHONE: +1.212.326.3939  •  FACSIMILE: +1.212.755.7306

Direct Number: (212) 326-8338
mwlampe@jonesday.com

December 9, 2021

CM/ECF

The Honorable Jesse M. Furman
United States District Judge
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

Re:      In Re: IBM Arbitration Agreement Litigation, No. 1:21-CV-06296-JMF

Dear Judge Furman:

Pursuant to this Court's Order of December 2, 2021, I write on behalf of IBM to request that the Court allow the sealed and redacted versions of the reply brief and supporting declaration that Plaintiffs recently filed. *See* ECF 61, 62, 69, 70. These documents contain material covered by IBM's arbitral confidentiality agreement. Thus, as Your Honor has already determined, the documents should be sealed and redacted pending resolution of Plaintiffs' challenge to the confidentiality agreement. *See* ECF 32, 36, 52.

On December 1, 2021, Plaintiffs filed their reply brief and supporting declaration entirely under seal (ECF 61, 62) along with a motion asking the Court to "direct the parties to confer in order to narrow the portions of the brief and accompanying documents that IBM contends are confidential and should remain redacted or under seal for the time being, so that Plaintiffs can then . . . publicly file those portions that IBM does not contend are confidential."  ECF 60 at 1. That filing violated Your Honor's individual rules, which require parties "to 'meet and confer . . . *in advance* to narrow the scope of . . . request[s]' to seal." *See* Individual Rules and Practices in Civil Cases, ¶ 7(C)(ii)-(iii) (emphasis added).  As a result, Your Honor ordered Plaintiffs to meet and confer with IBM to agree upon targeted redactions. *See* ECF 63.

In response to that order, Plaintiffs provided IBM with the sealed documents for review on December 2, 2021.  The parties have since conferred on redactions. Earlier today, Plaintiffs filed versions of their reply brief and the supporting declaration with targeted redactions covering confidential arbitration material.

As Your Honor has already determined, confidential arbitration material should remain sealed (with redacted versions of the documents filed publicly), at least until the Court has

AMSTERDAM  •  ATLANTA  •  BEIJING  •  BOSTON  •  BRISBANE  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  DETROIT
DUBAI  •  DÜSSELDORF  •  FRANKFURT  •  HONG KONG  •  HOUSTON  •  IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MELBOURNE
MEXICO CITY  •  MIAMI  •  MILAN  •  MINNEAPOLIS  •  MUNICH  •  NEW YORK  •  PARIS  •  PERTH  •  PITTSBURGH  •  SAN DIEGO  •  SAN FRANCISCO
SÃO PAULO  •  SAUDI ARABIA  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

JONES DAY

Hon. Jesse M. Furman
December 9, 2021
Page 2

resolved Plaintiffs' challenge to IBM's arbitral confidentiality agreement.  ECF 32 at 2; ECF 36 at 3.  Indeed, the Court stated during a hearing that it would be "perverse" to allow a plaintiff who is challenging a confidentiality provision to achieve the public disclosure of the underlying documents just by filing them on the court docket.  *See* ECF 52.  Accordingly, IBM respectfully requests, consistent with Your Honor's prior orders, that (i) unredacted versions of Plaintiffs' reply brief and the accompanying declaration remain under seal, and (ii) the redacted versions of these documents be allowed, pending resolution of Plaintiffs' pending summary-judgment motion and IBM's pending motion to dismiss.

Respectfully submitted,

*/s/ Matthew W. Lampe*

Matthew W. Lampe

cc:   Shannon Liss-Riordan, Esq.

The motion to seal is granted temporarily.  The Court will assess whether to keep the materials at issue sealed or redacted when deciding the underlying motions.

SO ORDERED.

December 13, 2021

**ADD.050**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                   :
IN RE:                        :        21-CV-6296 (JMF)
                   :
IBM ARBITRATION AGREEMENT LITIGATION   :    MEMORANDUM OPINION
                   :        AND ORDER
--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

On July 14, 2022, the Court issued an Opinion and Order granting a motion to dismiss

filed by Defendant International Business Machines Corp. ("IBM") and denying as moot a

motion for summary judgment filed by Plaintiffs, former IBM employees. *In re IBM Arb.*

*Agreement Litig.*, No. 21-CV-6296 (JMF), 2022 WL 2752618, at *9, 12 (S.D.N.Y. July 14,

2022). In its Opinion and Order, the Court also ordered "any party that believes any materials

currently under seal or in redacted form should remain [so] . . . to show cause in writing, on a

document-by-document basis, why doing so would be consistent with the presumption in favor

of public access." *Id*. at *12. In response, IBM filed a motion to seal, requesting that the

materials filed in support of Plaintiffs' summary judgment motion and the motion itself remain

sealed or redacted. ECF No. 94 ("Def.'s Mot."), at 1, 9-12, 20. IBM also requested that

Plaintiffs' opposition to IBM's motion to dismiss be redacted to remove: "(a) the names and

titles of executives, managers, and other IBM employees; and (b) the names and titles of

individuals listed as authors and recipients of documents and the month and day (but not year) of

those documents." *Id*. at 8. By contrast, Plaintiffs submitted a letter requesting that all of "the

motion papers and accompanying exhibits . . . be unsealed with limited exceptions." ECF No. 93

("Pls.' Ltr."), at 2 (footnotes omitted). For the reasons that follow, the Court agrees with IBM.

"The common law right of public access to judicial documents is firmly rooted in our

nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *see also Brown v. Maxwell*, 929 F.3d 41, 47-52 (2d Cir. 2019).  This right arises from "the need for federal courts, although independent — indeed, particularly because they are independent — to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1048 (2d Cir. 1995).  In light of the presumption in favor of public access, the Second Circuit has established a three-part test for determining whether documents may be placed under seal.  First, "a court must . . . conclude that the documents at issue are indeed 'judicial documents' . . . and that therefore a common law presumption of access attaches." *Lugosch*, 435 F.3d at 119; *accord Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022).  Notably, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Olson*, 29 F.4th at 87 (quoting *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995)).  "Instead, for a court filing to be classified as a 'judicial document,' it must be relevant to the performance of the judicial function and useful in the judicial process." *Id*. (internal quotation marks omitted).  "A document is . . . relevant to the performance of the judicial function if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown*, 929 F.3d at 49 (internal quotation marks omitted).

Second, if the documents at issue are judicial documents, the court "must determine the weight" of the presumption in favor of public access, which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (internal

quotation marks omitted). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (cleaned up). "Finally, . . . the court must balance competing considerations against" the presumption of access, including "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* at 120 (internal quotation marks omitted). Any sealing or redaction must be "narrowly tailored" to serve the interest that justifies it. *Id.* at 120. And the party seeking to maintain information filed under seal bears "the burden . . . to demonstrate that the interests favoring non-access outweigh those favoring access." *Amodeo I*, 44 F.3d at 148.

Applying the foregoing standards, the Court concludes that Plaintiffs' motion for summary judgment, accompanying exhibits, and supporting memoranda of law (to the extent those memoranda address Plaintiffs' motion for summary judgment exclusively) are not judicial documents, substantially for the reasons stated in IBM's motion to seal. *See* Def.'s Mot. 6-12. As the Court noted in its Opinion and Order dismissing Plaintiffs' claims, the Court "d[id] not reach Plaintiffs' motion [for summary judgment]" and, therefore, "d[id] not consider" the "evidence outside of the pleadings" submitted by Plaintiffs "in support of their motion for summary judgment." *In re IBM Arb. Agreement Litig.*, 2022 WL 2752618, at *1 n.2. Indeed, the Court could not have considered such evidence in resolving IBM's motion to dismiss. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under [Federal Rule of Civil Procedure] 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference."); *see also, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

**ADD.053**

As a result, Plaintiffs' summary judgment motion and accompanying materials had no "tendency" — or, for that matter, ability — "to influence [this Court's] ruling on [IBM's] motion," which resulted in dismissal of the consolidated cases in their entirety. *Brown*, 929 F.3d at 49 (emphasis omitted). It follows that they were neither "relevant to the performance of the judicial function [nor] useful in the judicial process." *Id.* Thus, they are not "judicial documents" subject to a presumption of public access. *Id.*; *see, e.g.*, *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 66 (S.D.N.Y. 2007) ("[B]ecause documents [outside of the pleadings] submitted with a Rule 12(b)(6) motion can play no role in the court's deliberations absent conversion [to a motion for summary judgment], the documents cannot qualify as judicial for presumption-of-access purposes."); *cf. Giuffre v. Maxwell*, No. 15-CV-7433 (LAP), 2020 WL 133570, at *3-4 (S.D.N.Y. Jan. 13, 2020) (holding that, after a settlement, "undecided motions and the papers associated with them are not judicial documents" because "there is simply no decision to be made, no exercise of the judicial power that can take place, and no court action for the public to monitor" in relation to those documents), *reconsideration denied*, No. 15-CV-7433 (LAP), 2020 WL 917057 (S.D.N.Y. Feb. 26, 2020). That conclusion ends the inquiry.

In any event, even if Plaintiffs' motion for summary judgment and related filings were judicial documents, the sealing requested by IBM would still be warranted. Given that the Court did not, and *could not*, consider these documents in resolving IBM's motion to dismiss, for the reasons discussed above, they would be subject to only a weak presumption of public access. *See In re IBM Arb. Agreement Litig.*, 2022 WL 2752618, at *1 n.2. And on the other side of the scale, there are strong "competing considerations" that favor maintaining these documents under seal or in redacted form. *Lugosch*, 435 F.3d at 120. Most notably, pursuant to the Federal

4

Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "courts must rigorously enforce arbitration agreements," including confidentiality provisions, "according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008) (recognizing that an "attack on [a] confidentiality provision is, in part, an attack on the character of arbitration itself"). Granted, the Court here did not ultimately rule on the validity of the confidentiality provisions at issue. *See In re IBM Arb. Agreement Litig.*, 2022 WL 2752618, at *6. But to deny IBM's sealing request would be to grant Plaintiffs the relief they sought in the first instance even though their claims did not get past IBM's motion to dismiss. That would be "perverse." ECF No. 52, at 3.

The Court acknowledges that its decision differs from the one reached in *Lohnn v. International Business Machines Corp.*, No. 21-CV-6379 (LJL), 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022), in which the court read language from *Lugosch* to mean that "[i]t is irrelevant" to the judicial-document inquiry that, "if [the defendant's] motion to dismiss ends up being granted, the [c]ourt will also deny the [plaintiff's] motion for summary judgment." *Id.* at *9 (citing *Lugosch*, 435 F.3d at 123). Yes, the *Lugosch* court held that, "[a]s a matter of law, . . . documents[,] by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment[,] are unquestionably judicial documents under the common law." 435 F.3d 123. In *Lugosch*, however, "[m]uch of the case ha[d] already survived a motion to dismiss," *id.* at 113, so the district court was *required* to resolve the motion for summary judgment before it. *Lugosch* did not hold that summary judgment papers are automatically judicial documents where, as here, a motion to dismiss and motion for summary judgment are pending simultaneously and the court can consider the latter only if it first denies the former. To the contrary, *Lugosch* explicitly reaffirmed that "the mere filing of a paper or document with the

**ADD.055**

court is insufficient to render that paper a judicial document subject to the right of public access." *Id.* at 119 (quoting *Amodeo II*, 44 F.3d at 145); *accord Olson*, 29 F.4th at 87.

In *Lohnn*, the court voiced a concern that holding otherwise could "invite a slew of motions to dismiss . . . (meritorious or not)" by defendants seeking to keep "information filed under seal . . . until the motion is decided." 2022 WL 36420, at *9. But there are other tools — for instance, sanctions — available to deter unmeritorious motions to dismiss. And, in any event, if it turns out that the court later considers the documents at issue, their sealing would be temporary — lasting only as long as it takes to confirm that they are relevant to the judicial function. On the flip side, the approach taken by the *Lohnn* court would create its own perverse incentives. If summary judgment materials automatically qualified as judicial documents upon filing in all instances, then plaintiffs seeking to make confidential documents public could simply submit the documents in support of a motion for summary judgment, whether or not they even stated a valid claim, thereby shifting the burden to the opposing party to justify sealing in each instance. In fact, this very case may well be an example of the potential for abuse. In their Amended Complaint, Plaintiffs challenged the validity of the confidentiality provision in their arbitration agreements with IBM, but their challenge did not survive IBM's motion to dismiss. To treat the documents they filed in connection with their summary judgment motion as judicial documents subject to the presumption in favor of public access — despite the fact that the Court was never called upon to consider them — would potentially conflict with the parties' legitimate expectations and run contrary to the FAA's strong policy in favor of enforcing arbitral confidentiality provisions. *See Am. Express Co.*, 570 U.S. at 233; *Guyden*, 544 F.3d at 385. To conclude that Plaintiffs are entitled to the relief they ultimately sought — namely, public disclosure — merely by asking for it (even though their request turned out to be premature and

**ADD.056**

without merit) would be even more absurd.  Accordingly, the Court declines to follow *Lohnn* and

concludes that the summary judgment materials filed in this case, but never considered by the

Court, are not judicial documents subject to a presumption of public access.

By contrast, the parties' submissions in connection with IBM's motion to dismiss are, as

IBM concedes, *see* Def.'s Mot. 8, plainly judicial documents.  That said, the Court agrees with

IBM that the following information should be redacted from Plaintiffs' opposition to IBM's

motion to dismiss: "(a) the names and titles of executives, managers, and other IBM employees;

and (b) the names and titles of individuals listed as authors and recipients of documents and the

month and day (but not year) of those documents."  *Id*.  On this score, the Court agrees with the

*Lohnn* court that the "privacy interests" of third parties outweigh the presumption of public

access afforded to these portions of the filings.  2022 WL 36420, at *18 *see, e.g.*, *City of*

*Providence v. BATS Glob. Mkts., Inc.*, No. 14-CV-2811 (JMF), 2022 WL 539438, at *3-4, 6

(S.D.N.Y. Feb. 23, 2022); *see also Amodeo II*, 71 F.3d at 1050.

For the foregoing reasons, the Court grants IBM's motion to seal and denies Plaintiffs'

requests to the extent that they conflict with IBM's motion.  The Court approves the redactions

to Plaintiffs' opposition proposed by IBM, *see* ECF No. 95-5, and directs IBM to publicly file

the redacted version of that document no later than **August 4, 2022**.  Per the Court's July 14,

2022 Opinion and Order the parties shall also, no later than **August 4, 2022**, file a joint letter

with the list of the ECF numbers of the filings to be unsealed, if any.

The Clerk of Court is directed to terminate ECF No. 94.

SO ORDERED.

Dated: August 2, 2022
       New York, New York
                                                        _____
                                                        JESSE M. FURMAN
                                                        United States District Judge

**ADD.057**

🚩 KeyCite Red Flag - Severe Negative Treatment
Unconstitutional or Preempted  Held Unconstitutional by  Kimel v. Florida Bd. of Regents,  U.S.Fla.,  Jan. 11, 2000

🚩 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 29. Labor
    Chapter 14. Age Discrimination in Employment (Refs & Annos)

29 U.S.C.A. § 626

§ 626. Recordkeeping, investigation, and enforcement [Statutory Text & Notes of Decisions subdivisions I to VI]

Effective: January 29, 2009

Currentness

<Notes of Decisions for 29 USCA § 626 are displayed in multiple documents.>

**(a) Attendance of witnesses; investigations, inspections, records, and homework regulations**

The Equal Employment Opportunity Commission shall have the power to make investigations and require the keeping of records necessary or appropriate for the administration of this chapter in accordance with the powers and procedures provided in sections 209 and 211 of this title.

**(b) Enforcement; prohibition of age discrimination under fair labor standards; unpaid minimum wages and unpaid overtime compensation; liquidated damages; judicial relief; conciliation, conference, and persuasion**

The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section. Before instituting any action under this section, the Equal Employment Opportunity Commission shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion.

**(c) Civil actions; persons aggrieved; jurisdiction; judicial relief; termination of individual action upon commencement of action by Commission; jury trial**

**(1)** Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* That the right of any person to bring such action shall terminate upon

the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.

**(2)** In an action brought under paragraph (1), a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action.

**(d) Filing of charge with Commission; timeliness; conciliation, conference, and persuasion; unlawful practice**

**(1)** No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed--

**(A)** within 180 days after the alleged unlawful practice occurred; or

**(B)** in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

**(2)** Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

**(3)** For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this chapter, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

**(e) Reliance on administrative rulings; notice of dismissal or termination; civil action after receipt of notice**

Section 259 of this title shall apply to actions under this chapter. If a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 630(a) of this title against the respondent named in the charge within 90 days after the date of the receipt of such notice.

**(f) Waiver**

**(1)** An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum--

**(A)** the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

**(B)** the waiver specifically refers to rights or claims arising under this chapter;

**(C)** the individual does not waive rights or claims that may arise after the date the waiver is executed;

**(D)** the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

**(E)** the individual is advised in writing to consult with an attorney prior to executing the agreement;

**(F)(i)** the individual is given a period of at least 21 days within which to consider the agreement; or

**(ii)** if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

**(G)** the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

**(H)** if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to--

**(i)** any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

**(ii)** the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

**(2)** A waiver in settlement of a charge filed with the Equal Employment Opportunity Commission, or an action filed in court by the individual or the individual's representative, alleging age discrimination of a kind prohibited under section 623 or 633a of this title may not be considered knowing and voluntary unless at a minimum--

**(A)** subparagraphs (A) through (E) of paragraph (1) have been met; and

**(B)** the individual is given a reasonable period of time within which to consider the settlement agreement.

**(3)** In any dispute that may arise over whether any of the requirements, conditions, and circumstances set forth in subparagraph (A), (B), (C), (D), (E), (F), (G), or (H) of paragraph (1), or subparagraph (A) or (B) of paragraph (2), have been met, the party

ADD.060

asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary pursuant to paragraph (1) or (2).

**(4)** No waiver agreement may affect the Commission's rights and responsibilities to enforce this chapter. No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the Commission.

### CREDIT(S)

(Pub.L. 90-202, § 7, Dec. 15, 1967, 81 Stat. 604; Pub.L. 95-256, § 4(a), (b)(1), (c)(1), Apr. 6, 1978, 92 Stat. 190, 191; 1978 Reorg. Plan No. 1, § 2, eff. Jan. 1, 1979, 43 F.R. 19807, 92 Stat. 3781; Pub.L. 101-433, Title II, § 201, Oct. 16, 1990, 104 Stat. 983; Pub.L. 102-166, Title I, § 115, Nov. 21, 1991, 105 Stat. 1079; Pub.L. 111-2, § 4, Jan. 29, 2009, 123 Stat. 6.)

Notes of Decisions (1261)

29 U.S.C.A. § 626, 29 USCA § 626
Current through P.L. 117-179. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

ADD.061

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2022, an electronic copy of the foregoing was filed with the Clerk of the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on them via the appellate CM/ECF system.

Dated: October 12, 2022

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan