# 22-1728

# United States Court of Appeals for the Second Circuit

IN RE: IBM ARBITRATION AGREEMENT LITIGATION

On Appeal from the United States District Court for the
Southern District of New York
No. 21-cv-6296 – Judge Jesse M. Furman

## RESPONSE BRIEF OF DEFENDANT-APPELLEE INTERNATIONAL BUSINESS MACHINES CORP.

Anthony J. Dick
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939
ajdick@jonesday.com

Matthew W. Lampe
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
mwlampe@jonesday.com

J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St., Ste. 500
Dallas, TX 75201
Telephone: (214) 220-3939
jbaguinaga@jonesday.com

*Counsel for Defendant-Appellee IBM*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee International Business Machines Corporation ("IBM") states that it has no parent corporation, and there is no publicly held corporation that owns 10% or more of its stock.

## TABLE OF CONTENTS

Corporate Disclosure Statement.............................................................. i

Table of Contents ...................................................................…........ ii

Table of Authorities...............................................................…......... iv

Introduction......................................................................................1

Jurisdictional Statement........................................................…........ 5

Issues Presented..................................................................…............6

Statement of the Case ...................................................................... 7

Summary of Argument........................................................…........ 18

Standard of Review .......................................................................... 21

Argument......................................................................................... 22

I.  The District Court Correctly Dismissed the Challenge to the
Timeliness Provision. .................................................................. 22

A.  The Timeliness Provision is Valid and Enforceable........... 23

1.  Arbitration provisions must be upheld as long as
they give plaintiffs a fair opportunity to present
their claims in the arbitral forum.............................. 23

2.  The Timeliness Provision gave Plaintiffs a fair
opportunity to vindicate their ADEA claims. ........... 26

B.  Plaintiffs' Piggybacking Argument Fails............................ 28

1.  The judge-made piggybacking doctrine is an
inapposite exhaustion rule for EEOC charges,
which Plaintiffs were not required to file.................. 29

2.   Even if piggybacking were part of the ADEA's
     statute of limitations, it is a procedural rule,
     not a substantive right. ...............................................34

3.   The Sixth Circuit's decision in Thompson does
     not help Plaintiffs. ...................................................... 38

4.   The OWBPA is irrelevant. ......................................... 45

C.   The Post-Arbitration Plaintiffs Have Waived Their
     Challenges To The Timeliness Provision ........................... 46

II.  The District Court Properly Declined To Entertain Time-Barred
     Plaintiffs' Challenge To The Confidentiality Provision ............. 48

III. The District Court Properly Denied Plaintiffs' Belated Attempt
     To Add A Fraud Claim. .............................................. 50

A.   The Post-Arbitration Plaintiffs Waived Any Attempt To
     Challenge The Validity Of The Arbitration Agreement..... 51

B.   The Proposed Fraud Claim Is Futile. ................................ 53

C.   Plaintiffs Cannot Avoid Arbitrating A Discrimination
     Claim By Repackaging It As A "Fraud" Claim................... 57

IV.  The District Court Rightly Rejected Plaintiffs' Bid For
     Unsealing..................................................................... 60

A.   The Confidential Documents Are Not Judicial
     Documents .......................................................... 60

B.   Plaintiffs' Counterarguments Fail..................................... 66

Conclusion ............................................................. 71

iii

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE**

*14 Penn Plaza LLC v. Pyett*,
556 U.S. 247 (2009)...................................................................... passim

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005) ............................................................... 53

*Am. Contex Corp. v. ELTE*,
No. 96 Civ. 1514, 1997 WL 540813
(S.D.N.Y. Sept. 3, 1997) ..................................................................... 59

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)............................................................... 23, 25, 26

*Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*,
274 F.2d 805 (2d Cir. 1960) ............................................................... 51

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)............................................................................ 23

*Badgerow v. Walters*,
142 S. Ct. 1310 (2022)......................................................................... 5

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132 (2d Cir. 2016) ........................................................ .21,70

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) ...................................................... 61, 66, 67

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*,
117 F.3d 655 (2d Cir. 1997) ........................................................ 57, 59

*Chandler v. IBM*,
No. 21-cv-6319, 2022 WL 2473340
(S.D.N.Y. July 6, 2022) ..................................................... 27, 31, 42, 45

iv

*Chandler v. IBM*,
  No. 22-1733 (2d Cir.)...................................................................... 10, 50

*Charter Commc'ns, Inc. v. Garfin*,
  No. 20 Civ 7049, 2021 WL 694549
  (S.D.N.Y. Feb. 23, 2021) .................................................................. 51

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*,
  897 F.3d 75 (2d Cir. 2018) ............................................................... 56

*ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*,
  102 F.3d 677 (2d Cir. 1996) ............................................................. 51

*Cook Indus., Inc. v. C. Itoh & Co. (Am.) Inc.*,
  449 F.2d 106 (2d Cir. 1971) ............................................................. 53

*Doscher v. Sea Port Group Securities, LLC*,
  832 F.3d 372 (2d Cir. 2016) ...............................................................5

*Dow Jones & Co. v. Harrods Ltd.*,
  346 F.3d 357 (2d Cir. 2003) ............................................................. 21

*Duane Reade Inc. v. St. Paul Fire & Marine Ins.*,
  411 F.3d 384 (2d Cir. 2005) ....................................................21, 47, 48

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)...........................................................23, 24, 41

*Estle v. IBM*,
  23 F.4th 210 (2d Cir. 2022)......................................................... passim

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)........................................................................ passim

*Guyden v. Aetna Inc.*,
  544 F.3d 376 (2d Cir. 2008) ..............................................................64

v

*Gvozdenovic v. United Air Lines, Inc.*,
933 F.2d 1100 (2d Cir. 1991) ............................................................. 52

*Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*,
752 F. Supp. 638 (S.D.N.Y. 1990) ....................................................... 52

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) ................................................................. 21

*Holowecki v. Fed. Express Corp.*,
440 F.3d 558 (2d Cir. 2006) ........................................................... 9, 31

*Howell v. Rivergate Toyota, Inc.*,
144 F. App'x 475 (6th Cir. 2005) ........................................................ 42

*Kinney v. IBM*,
557 F. Supp. 3d 823 (W.D. Tex. 2021) .......................................... 58, 59

*Kumaran v. ADM Inv. Servs., Inc.*,
No. 20-cv-3873, 2021 WL 2333645 (S.D.N.Y. June 7, 2021) .............. 51

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) ............................................................... 54

*Lodi v. IBM*,
No. 22-1737 (2d Cir.) ......................................................................... 10

*Logan v. MGM Grand Detroit Casino*,
939 F.3d 824 (6th Cir. 2019) .................................... 41, 42, 43, 44, 46

*Lohnn v. IBM*,
No. 21-cv-6379, 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022) ............. 69, 70

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ...................................................... passim

vi

*McCormack v. IBM,*
  145 F. Supp. 3d 258 (S.D.N.Y. 2015) ............................................ 56, 59

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985) .............................................................................. 59

*Morgan v. Sundance, Inc.,*
  142 S. Ct. 1708 (2022) ......................................................................... 43

*Morrison v. Circuit City Stores, Inc.,*
  317 F.3d 646 (6th Cir. 2003) ................................................. 41, 44, 46

*Nghiem v. NEC Elec., Inc.,*
  25 F.3d 1437 (9th Cir. 1994) ............................................................. 51

*Nicosia v. Amazon.com, Inc.,*
  834 F.3d 220 (2d Cir. 2016) ............................................................... 23

*Olson v. MLB,*
  29 F.4th 59 (2d Cir. 2022) ................................................................. 67

*Opals on Ice Lingerie v. Body Lines Inc.,*
  320 F.3d 362 (2d Cir. 2003) ............................................................... 52

*Openshaw v. FedEx Ground Package Sys., Inc.,*
  731 F. Supp. 2d 987 (C.D. Cal. 2010) ............................................... 52

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.,*
  681 F.3d 114 (2d Cir. 2012) ............................................................... 21

*Ragone v. Atlantic Video at Manhattan Center,*
  595 F.3d 115 (2d Cir. 2010) ............................................................... 37

*Rent-A-Ctr., W., Inc. v. Jackson,*
  561 U.S. 63 (2010) ............................................................................... 57

*Rusis v. IBM*,
    529 F. Supp. 3d 178 (S.D.N.Y. 2021) ........................................ passim

*Sands Bros & Co. v. Zipper*,
    No. 03 Civ 7731, 2003 WL 22439789
    (S.D.N.Y. Oct. 27, 2003) ..................................................... 51

*Smith v. IBM*,
    No. 21-CV-03856, 2022 WL 1720140
    (N.D. Ga. May 27, 2022) .................................................. 27

*Spira v. J.P. Morgan Chase & Co.*,
    466 F. App'x 20 (2d Cir. 2012) ........................................... 35

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    621 F. Supp. 2d 55 (S.D.N.Y. 2007) ..................................... 63

*Tavenner v. IBM*,
    No. 21-CV-6345, 2022 WL 4449215
    (S.D.N.Y. Sept. 23, 2022) .................................................. 10

*Tavenner v. IBM*,
    No. 22-2318 (2d Cir.) ......................................................... 42

*Testamentary Tr. Under Article Seventh of Last Will &*
    *Testament of Walter H. Jones v. Watts Inv. Co.*,
    No. 99 Civ 10590, 2000 WL 546490
    (S.D.N.Y. May 3, 2000) ..................................................... 52

*Tex. Dep't of Cmty. Affs. v. Burdine*,
    450 U.S. 248 (1981) ........................................................... 58

*Thompson v. Fresh Products, LLC*,
    985 F.3d 509 (6th Cir. 2021) ..................................... passim

*Time Warner Cable of N.Y.C. LLC v. Int'l Bhd. of Elec.*
  *Workers, AFLCIO, Loc. Union No. 3,*
  684 F. App'x 68 (2d Cir. 2017) ............................................. 52

*Tolliver v. Xerox Corp.,*
  918 F.2d 1052 (2d Cir. 1990) ............................................ 29, 31, 32, 33

*United States v. Amodeo,*
  44 F.3d 141 (2d Cir. 1995) ............................................. 61, 67

*United States v. Amodeo,*
  71 F.3d 1044 (2d Cir. 1995) ............................................. 60, 61, 62, 65

*United States v. Bichsel,*
  156 F.3d 1148 (11th Cir. 1998) ............................................. 50

*United States v. Johnson,*
  127 F. App'x 894 (7th Cir. 2005) ............................................. 50

*United States v. McDougal,*
  133 F.3d 1110 (8th Cir. 1998) ............................................. 50

*Vaden v. Discover Bank,*
  556 U.S. 49 (2009) ............................................. 5

*Vernon v. Cassadaga Valley Central School District,*
  49 F.3d 886 (2d Cir. 1995) ............................................. passim

## STATUTES                                                              PAGE

28 U.S.C. § 1291 ............................................. 5

Age Discrimination in Employment Act of 1967,
  29 U.S.C.A. § 621 et seq. ............................................. passim

Consolidated Omnibus Budget Reconciliation Act ("COBRA")
  29 U.S.C. § 1161, et seq. ............................................. 12, 56

Declaratory Judgment Act,
   28 U.S.C. §§ 2201-2202 .......................................................... 5, 21, 47

Federal Arbitration Act,
   9 U.S.C.A. § 1 et seq. ................................................................ passim

Older Workers' Benefits Protection Act,
   29 U.S.C. § 626(f) .................................................................... passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure Rule 9(b) ....................... 3, 16, 20, 53, 54

Federal Rule of Civil Procedure 12(b)(6) ................................................ 21

Federal Rule of Civil Procedure 60 ........................................................ 47

## **INTRODUCTION**

Last year, the Southern District of New York was flooded by individual declaratory-judgment actions filed by the same counsel seeking the same result: the invalidation of key provisions in arbitration agreements between IBM and its former employees. The district judges in each case have now unanimously granted IBM's motions to dismiss and denied Plaintiffs' competing summary-judgment motions as moot. In doing so, they recognized that Plaintiffs' arguments have "no merit," and in some instances are "patently absurd." As the decision below illustrates, that is the right result.

This matter involves 26 consolidated actions filed by former IBM employees who signed agreements with IBM requiring confidential arbitration of any claims arising under the Age Discrimination in Employment Act ("ADEA"). Under those agreements, Plaintiffs had the same amount of time to file an arbitration demand as ADEA plaintiffs typically have to file a charge of discrimination with the EEOC—either 180 or 300 days after termination, depending on their jurisdiction. But nevertheless, it is undisputed that Plaintiffs failed to file timely arbitration demands within the prescribed deadline.

In an attempt to resurrect their untimely claims, Plaintiffs now challenge the validity of the filing deadline they agreed to in their arbitration agreements. Under the Federal Arbitration Act ("FAA"), however, their challenge clearly fails. The FAA requires the terms of arbitration agreements to be strictly enforced as long as they give plaintiffs a "fair opportunity" to assert the substance of their claim in the arbitral forum. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). Here there is no question that Plaintiffs had a "fair opportunity," because they had the same amount of time the ADEA typically provides for a plaintiff to file a charge of discrimination. Plaintiffs thus had every opportunity to file timely claims; they simply failed to do so.

Plaintiffs try to get around this problem by resorting to the so-called "piggybacking" doctrine—a judge-made rule that sometimes excuses plaintiffs from filing an EEOC charge before filing suit in court. But as the court below recognized, piggybacking is irrelevant here because Plaintiffs were not required to file an EEOC charge before arbitrating. And in any event, piggybacking has nothing to do with the relevant question under *Gilmer*—whether Plaintiffs had a "fair opportunity" to pursue their ADEA claims in arbitration—which they plainly did.

2

Plaintiffs also challenge their arbitral confidentiality provision, but that challenge is not ripe. Plaintiffs argue the confidentiality provision is invalid because it somehow hampers their ability to prove their claims in arbitration. But since their claims are time-barred, they cannot advance them regardless. The district court properly declined to reach this issue.

Sensing imminent defeat on these two claims, Plaintiffs sought leave to amend their complaints—a month after dispositive briefing concluded—to add a fraud claim seeking to invalidate the arbitration agreement altogether. This claim primarily alleges that IBM falsely told Plaintiffs they were being terminated for "legitimate" reasons when they were actually being fired because of their age.

The district court rightly denied leave to amend. As to the 24 Plaintiffs who already arbitrated and lost, they waived any challenge to their arbitration agreements. And as to the other two, the fraud claim is futile for several reasons: It does not allege facts with particularity as required by Rule 9(b). Nor does it allege Plaintiffs were deceived about the arbitration agreement they signed. Nor can Plaintiffs evade their agreement to arbitrate age-discrimination claims by alleging that they were "defrauded" by secretly being subjected to age discrimination.

3

That leaves only Plaintiffs' demand that the confidential arbitration materials attached to their summary-judgment papers be unsealed under the public-access doctrine. The district court rightly rejected that demand as "perverse" and "absurd" because it would allow Plaintiffs to achieve the unsealing of confidential documents just by challenging the confidentiality provision. That is not the law. Under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), the confidential materials are not subject to any presumption of public access because they were irrelevant to the judicial function in this case. The district court dismissed the case on the pleadings and thus did not, and could not, consider the materials attached to Plaintiffs' summary-judgment briefing. Even if there were a presumption of public access, moreover, it would be exceedingly weak (given that the materials played no role in the court's decision) and easily overcome (given the FAA's strong policy favoring arbitral confidentiality). The district court thus did not abuse its discretion in keeping the materials sealed.

In short, although this matter involves many distinct issues, the district court methodically and correctly explained why Plaintiffs' arguments on each front are meritless. This Court should affirm.

## JURISDICTIONAL STATEMENT

IBM agrees that this Court has jurisdiction under 28 U.S.C. § 1291. The district court originally determined it had federal-question jurisdiction under *Doscher v. Sea Port Group Securities, LLC*, 832 F.3d 372, 388 (2d Cir. 2016). *See* Add.010 n.10 (citing Dist. Ct. ECF No. 20). Although the Supreme Court overturned *Doscher* in *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), that makes no difference here because the district court also had diversity jurisdiction. As IBM and Plaintiffs agreed below, the parties are completely diverse and the amount in controversy exceeds $75,000. Dist. Ct. ECF No. 18 at 3 ¶ 10; Dist. Ct. ECF No. 14 at 2 n.1.

In addition, the district court also had federal-question jurisdiction because the hypothetical coercive action for Declaratory Judgment Act purposes—IBM's motion to compel arbitration—presents a federal question under the ADEA. Dist. Ct. ECF No. 18 at 6 n.2 (citing *Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009)).

## STATEMENT OF ISSUES PRESENTED

1.     Whether the district court correctly held that the Timeliness Provision is enforceable.

2.     Whether the district court abused its discretion in declining to exercise jurisdiction over Plaintiffs' challenge to the Confidentiality Provision.

3.     Whether the district court abused its discretion in denying Plaintiffs leave to amend their complaint to add a fraudulent-inducement claim.

4.     Whether the district court abused its discretion in sealing confidential arbitration materials that Plaintiffs submitted in support of their summary-judgment motion, which the district court denied as moot.

## **STATEMENT OF THE CASE**

**1.** When Plaintiffs separated from IBM, they signed an agreement to waive most claims against IBM in exchange for a severance package. Add.003. The agreement did not waive ADEA claims, however, instead providing for such claims to be resolved through individual arbitration. *Id.* The parties agreed that any dispute over the "interpretation" of the agreement "shall be submitted to and ruled on by the Arbitrator." JAMS Rule 11(b), *incorporated by* App.102, 105. But "[a]ny issue concerning" the "validity or enforceability" of the agreement must be "decided only by a court of competent jurisdiction." Add.004.

The agreement contains a Timeliness Provision, which states that, "[t]o initiate arbitration, [the employee] must submit a written demand for arbitration . . . no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim." Add.003. Under the Timeliness Provision, "[t]he filing of a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration." Add.004.

The agreement also contains a Confidentiality Provision, which states that "the parties shall maintain the confidential nature of the arbitration proceeding and the award." *Id.* With narrow exceptions, "[t]he parties agree[d] that any information related to the proceeding . . . is confidential information which shall not be disclosed." *Id.*

**2.** Before filing suit in court, 24 out of the 26 Plaintiffs—all but Flannery and Corbett—filed arbitration demands asserting ADEA claims against IBM. *Id.* In each case, the arbitrator dismissed the claims of these Post-Arbitration Plaintiffs as untimely under the Timeliness Provision. *Id.*

In so doing, each arbitrator held that the Timeliness Provision "bars application of the 'piggybacking rule,' which Plaintiffs had argued would render their claims timely." *Id.* "The judicially created piggybacking rule is an exception to the ADEA's EEOC charge-filing requirement, which requires a plaintiff seeking to bring an ADEA claim in court to file an EEOC charge within 180 or 300 days after the 'alleged unlawful [employment] practice occurred,' and then to wait 'until 60 days after' that charge is filed to sue. Add.004–5 (quoting 29 U.S.C. § 626(d)(1)). Under the piggybacking rule, "a plaintiff who failed to file his or her own

8

EEOC charge within the 180- or 300-day deadline can 'piggyback' off of another person's timely filed EEOC charge that alleges 'similar discriminatory treatment in the same time frame.'" Add.005 (quoting *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 564 (2d Cir. 2006)).

Following the dismissal of their arbitrations, none of the Post-Arbitration Plaintiffs filed a petition to vacate under the FAA. *Id.*

**3.** In an attempt to rescue their untimely claims, all but two of the Plaintiffs sought to opt into a collective action filed by Plaintiffs' counsel on behalf of other IBM employees, arguing that their claims should be deemed timely under the "piggybacking" doctrine. *Id.* In March 2021, Judge Valerie Caproni dismissed them on the ground that they had "signed . . . a class and collective action waiver" and thus could not participate in the collective action. *Rusis v. IBM*, 529 F. Supp. 3d 178, 195–96 (S.D.N.Y. 2021). Although Judge Caproni did not reach Plaintiffs' "piggybacking" argument, she "note[d] [her] skepticism" of it. *Id.* at 192 n.4. Piggybacking is an exception to the EEOC charge-filing requirement. But since Plaintiffs were "not required to file a charge of discrimination with the EEOC" before arbitrating, piggybacking "is wholly inapplicable in the arbitration context." *Id.*

9

Judge Caproni also stated that it was "patently absurd" for Plaintiffs to argue that IBM or the Timeliness Provision somehow prevented them from filing timely arbitration demands. *Id.* at 194 n.8. They "could have avoided this entire issue" by filing claims within the deadline provided under the arbitration agreement—and had they done so, "there would be no need to resort to a (far-fetched) argument that the piggybacking doctrine saves their untimely demands." *Id.* at 195 n.8. Plaintiffs cannot "set the fault at IBM's feet when they need look no further than their own counsel for the appropriate locus of blame." *Id.*

**4.** Some four months after Judge Caproni's decision in *Rusis*, Plaintiffs' counsel filed over two dozen individual declaratory-judgment actions seeking to invalidate the Timeliness Provision and the Confidentiality Provision. Twenty-six of the actions were consolidated with Judge Furman in the present case. Of the other three cases, one was assigned to Judge Karas in *Tavenner v. IBM*, No. 22-2318 (2d Cir.), and two were assigned to Judge Koeltl in *Chandler v. IBM*, No. 22-1733 (2d Cir.) and *Lodi v. IBM*, No. 22-1737 (2d Cir.). All three judges have now unanimously dismissed these cases, and Plaintiffs have appealed.

After Judge Furman consolidated these cases below, the parties filed competing dispositive motions. IBM moved to dismiss, and Plaintiffs moved for summary judgment. Add.006. When Plaintiffs filed their summary-judgment motion, they attached a slew of confidential arbitration materials their counsel had obtained from confidential arbitrations involving other plaintiffs. Those materials are covered by the same Confidentiality Provision that Plaintiffs challenge here.

Although they filed the confidential materials under seal, Plaintiffs asked the district court to immediately *unseal* them. According to Plaintiffs, the mere filing of those materials required their unsealing under the "public access" doctrine. The district court rejected that argument as "perverse" and "absurd." Since Plaintiffs were challenging the Confidentiality Provision, immediately unsealing the materials would prematurely give them the very "relief they ultimately s[eek]"— public disclosure of the confidential documents—simply by virtue of their filing a challenge. Add.055, 056–57. The district court thus granted IBM's motions to seal "pending [a] decision on the underlying motions." Add.025.

11

Finally, "[n]early a month after briefing [on the dispositive] motions was complete," Plaintiffs filed a motion for leave to amend their complaints to add a fraudulent-inducement claim. Add.006. The proposed claim alleges that IBM fraudulently induced Plaintiffs to "sign [the] separation agreement" by (1) representing that they were being laid off "for legitimate business reasons" when in fact they were being discriminated against, and (2) misrepresenting that "they could only maintain their health benefits through COBRA by signing the agreement." Add.019.

**5.** On July 14, 2022, the district court granted IBM's motion to dismiss and denied Plaintiffs' summary-judgment motion "as moot." Add.001–2. At the outset, the district court concluded, "as an exercise of its discretion," that it would not reach the claims of the 24 "Post-Arbitration" Plaintiffs, because they had already arbitrated their claims, lost, and then failed to file timely petitions to vacate under the FAA. Add.008–9. Indeed, they "waited nearly two (and in some cases more than two) years after they received their arbitration decision to [seek] declaratory relief." *Id*. As a result, they were bound by the adverse arbitration decisions.

12

The district court then disposed of the claims of the two remaining Plaintiffs, Flannery and Corbett. *First*, the court rejected their challenge to the Timeliness Provision. The court emphasized that, under the FAA, "'courts must rigorously enforce arbitration agreements according to their terms,' including 'the rules under which that arbitration will be conducted.'" Add.012. The district court also acknowledged that an arbitration agreement "'will not be upheld'" where it contains "'a substantive waiver of federally protected civil rights'" or "'prevent[s] the "effective vindication" of a federal statutory right.'" Add.013. But the district court concluded that neither of these exceptions were met.

To start, the district court concluded that "there is no merit to Plaintiffs' contention that the judge-made piggybacking rule gives rise to a substantive, nonwaivable right under the ADEA." *Id.* "[W]hether or not the piggybacking rule is properly considered part of the ADEA's limitations period . . . Supreme Court precedent makes plain that the substantive right protected from waiver under the FAA is far narrower than Plaintiffs claim." Add.014. In particular, the substantive right protected by the ADEA is "the 'right to be free from workplace age discrimination,'" which the Supreme Court has "'distinguished'" from

13

"'procedural [rights], like the right to seek relief from a court in the first instance.'" *Id.* (quoting *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009), and *Estle v. IBM*, 23 F.4th 210, 214 (2d Cir. 2022) (internal marks omitted)). And the ADEA's "limitations period falls comfortably in the latter category" because it is just about when a claim must be filed—making it a "procedural" right as opposed to "the substantive 'right to be free from workplace age discrimination.'" *Id.*

That conclusion, moreover, "is bolstered" by this Court's holding in *Vernon v. Cassadaga Valley Central School District*, 49 F.3d 886 (2d Cir. 1995), that "the ADEA statute of limitations is a procedural, not substantive, right in the context of determining whether the limitations period could apply retroactively." Add.014. "Because the ADEA's limitations period governs 'secondary conduct'—namely, the time period for filing a suit under the ADEA—it should not be considered a substantive, and therefore *categorically* nonwaivable, right in the arbitration context." Add.015 (quoting *Vernon*, 49 F.3d at 890).

In reaching that conclusion, the district court rejected Plaintiffs' claims that the Sixth Circuit's case law and the Older Workers Benefit Protection Act ("OWBPA") compel the opposite conclusion. The Sixth

Circuit's case law "undermines rather than supports Plaintiffs' position" because the Sixth Circuit has allowed parties to contract for their own reasonable filing periods for ADEA claims in arbitration agreements. Add.016. And "Plaintiffs' reliance on the OWBPA adds nothing" because it covers only substantive rights—which piggybacking is not. Add.017.

Since piggybacking is not a substantive right, the only question is whether the Timeliness Provision prevented the "effective vindication" of Plaintiffs' ADEA claims. And on that question, the district court held that Plaintiffs' argument "borders on frivolous." *Id.* They "do not identify any obstacle, let alone one imposed by IBM, that prevented [them] from filing an arbitration demand on their ADEA claims within the 180- or 300-day deadline established by the arbitration agreements." Add.017–18 (quoting *Rusis*, 529 F. Supp. 3d at 194 n.8). To the contrary, "the timeline for filing an arbitration demand established by the Timeliness Provision is the *same* 180- or 300-day deadline provided by the ADEA itself." Add.018. "Thus, to hold that Plaintiffs were prevented by the Timeliness Provision from effectively vindicating their rights under the ADEA would be to hold that no plaintiff can effectively vindicate his or her rights under the statute"—and that "would be 'patently absurd.'" *Id.*

15

*Second*, having rejected Plaintiffs' challenge to the Timeliness Provision, the district court declined to exercise jurisdiction over Plaintiffs' challenge to the Confidentiality Provision. "[T]he Confidentiality Provision will play a role in Flannery and Corbett's arbitration proceedings only if the arbitrator rules that they have timely ADEA claims to arbitrate in the first place." Add.011. But because their claims are time-barred, their challenge is "not yet—and may never become—ripe." *Id.*

*Lastly*, the district court denied Plaintiffs' motion to amend their complaint to add a fraudulent-inducement claim. The district court first held that the 24 Post-Arbitration Plaintiffs "waived any such challenge to their arbitration agreements" by arbitrating their claims to a final judgment without objection. Add.020–22. In addition, the court held that the proposed claim "does not come close to satisfying" Rule 9(b)'s heightened pleading standard for fraud claims. Add.023. It "does not 'state where and when the statements were made,'" "[n]or does it 'identify the speaker,' other than through vague references to 'IBM' and 'low-level managers.'" Add.024 (citation omitted).

16

**6.** Following supplemental briefing, the district court also declined to unseal the confidential arbitration materials that Plaintiffs attached to their now-moot summary-judgment briefing. Add.051. The court reasoned that the presumption of public access applies only to "'judicial documents'"—*i.e.*, those that "'reasonably have the *tendency* to influence a district court's ruling.'" Add.052. Here, however, the district court "did not, and *could not*, consider" the confidential materials "in resolving IBM's motion to dismiss" because they were outside the pleadings. Add.054 (emphasis in original). Thus, they are not judicial documents.

Even if the moot summary-judgment submissions were judicial documents, the court continued, "they would be subject to only a weak presumption of public access" given that the court could not consider them. *Id.* And there would be "strong 'competing consideration[s]' that favor maintaining these documents under seal or in redacted form"— namely, the FAA's mandate that courts "'rigorously enforce arbitration agreements,' including confidentiality provisions," as well as the "perverse" and "absurd" consequence of giving Plaintiffs "the relief they ultimately sought" (public disclosure) even though they did not prevail on their challenge to the Confidentiality Provision. Add.054–57.

17

**7.** Plaintiffs appealed and filed a motion to temporarily seal the confidential materials contained and referenced in their opening brief and appendix—but simultaneously requested that this Court immediately unseal the materials. ECF No. 51. IBM opposed that request on various grounds, including that the validity of the district court's sealing order is one of the merits issues presented in Plaintiffs' opening brief. ECF No. 61. On October 31, 2022, Judge Merriam granted the motion to seal and "referred to the merits panel . . . Appellants' requests that the now-sealed documents be unsealed." ECF No. 68 at 2.

## SUMMARY OF ARGUMENT

**I.** The district court correctly rejected Plaintiffs' challenge to the Timeliness Provision.

      **A.** The FAA requires arbitration provisions to be enforced as long as they allow plaintiffs a "fair opportunity" to pursue their claims in the arbitral forum. Here, Plaintiffs had a fair opportunity to pursue their ADEA claims in arbitration because the Timeliness Provision gave them the same deadline to file a claim that plaintiffs typically have to file a charge of discrimination with the EEOC.

18

**B.** Plaintiffs are wrong to contend that the Timeliness Provision is invalid because it waives the judge-made "piggybacking" rule. Piggybacking is an exhaustion doctrine that excuses a plaintiff from the ordinary procedural requirement to file an EEOC charge before filing an ADEA suit in court. But that doctrine is entirely inapplicable here, because there is no requirement for a plaintiff to file an EEOC charge before filing an ADEA claim in arbitration. Moreover, piggybacking is clearly waivable under the FAA because it is a procedural rule about how to file a claim, not part of the "substantive" right to be free from workplace age discrimination.

**C.** The district court also correctly held that 24 of the 26 Plaintiffs here waived any right to challenge their arbitration agreements. They already arbitrated their ADEA claims, lost, and failed to file timely petitions to vacate.

**II.** The district court did not abuse its discretion in declining to entertain Plaintiffs' challenge to the Confidentiality Provision. Plaintiffs have no live ADEA claims to arbitrate—most of them already arbitrated and lost, and all of their claims are time-barred. Thus, their attack on the Confidentiality Provision is not—and may never become—ripe.

19

**III.** The district court properly rejected Plaintiffs' belated request to amend their complaints to add a "fraudulent inducement" claim. As to at least the 24 Plaintiffs who already arbitrated and lost, they waived any right to challenge their arbitration agreements. And as to the other two Plaintiffs, the proposed claim would be futile because it fails as a matter of law. As the district court recognized, Plaintiffs fail to plead fraud with particularity as required under Rule 9(b). Moreover, since Plaintiffs' "fraud" theory is just a repackaged version of their age-discrimination claim, it cannot nullify Plaintiffs' agreement to arbitrate age-discrimination claims.

**IV.** The district court did not abuse its discretion in denying Plaintiffs' request to unseal the confidential arbitration materials they attached to their summary-judgment briefing. Since the court dismissed the case on the pleadings, it never had occasion to consider the summary-judgment materials, and thus no presumption of public access applies. Even if such a presumption did apply, moreover, it would be exceedingly weak and easily overcome by the strong interests in upholding arbitral confidentiality and preventing plaintiffs from unsealing confidential materials merely by filing a challenge to a confidentiality provision.

20

## STANDARD OF REVIEW

**_Motion to Dismiss._** This Court "review[s] *de novo* the grant of a motion to dismiss for failure to state a claim . . . under Federal Rule of Civil Procedure 12(b)(6)." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

**_Declaratory Judgment Act Jurisdiction._** This Court "review[s] a district court's decision of whether to exercise jurisdiction over a declaratory judgment action deferentially, for abuse of discretion." *Duane Reade Inc. v. St. Paul Fire & Marine Ins.*, 411 F.3d 384, 388 (2d Cir. 2005); *see also Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (per curiam).

**_Leave to Amend._** Denial of leave to amend is reviewed for abuse of discretion unless it was "based on an interpretation of law, such as futility, in which case [the Court] review[s] the legal conclusion *de novo*." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

**_Sealing._** "In reviewing a district court's order to seal or unseal, [this Court] examine[s] the court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal

for abuse of discretion." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY DISMISSED THE CHALLENGE TO THE TIMELINESS PROVISION

The district court properly rejected Plaintiffs' challenge to the Timeliness Provision. Indeed, five federal judges have rejected identical challenges filed by Plaintiffs' counsel, and this Court should do the same. Under the FAA, arbitration terms must be upheld as long as they allow a "fair opportunity" to pursue a claim in arbitration. That is not a close question here, as the Timeliness Provision gave Plaintiffs the same amount of time to file ADEA claims in arbitration as plaintiffs typically have to file ADEA claims with the EEOC. Nothing prevented Plaintiffs from filing timely claims. They simply failed to do so.

The judge-made piggybacking rule that Plaintiffs invoke is wholly irrelevant here. Piggybacking excuses plaintiffs from filing an EEOC charge before filing in court, but Plaintiffs were not required to file an EEOC charge before initiating arbitration. Piggybacking has nothing to do with the ADEA's "substantive right" to be free from workplace age discrimination. Moreover, since the availability of piggybacking turns

22

entirely on the happenstance of whether another plaintiff has filed a similar charge, it would be nonsensical to deem it a "substantive" right.

## A. The Timeliness Provision Is Valid and Enforceable.

### 1. Arbitration provisions must be upheld as long as they give plaintiffs a fair opportunity to present their claims in the arbitral forum.

The FAA provides that, with narrow exceptions not at issue here, arbitration agreements "shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. In a long line of cases interpreting that provision, the Supreme Court has repeatedly held that "courts must rigorously enforce arbitration agreements according to their terms[.]" Add.012 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)); *accord Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016).

Among the terms courts must enforce are the parties' "chosen arbitration procedures." *E.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Indeed, a central feature of arbitration is that the parties enjoy "discretion in designing arbitration processes." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The Supreme Court has thus underscored that courts must "respect and enforce . . . '*the rules*'" that

23

parties adopt for arbitration. *Epic Sys.*, 138 S. Ct. at 1621 (emphasis in original).

In the context of ADEA claims, in particular, the Court has rejected complaints about arbitration procedures that were "more limited" than, or "not . . . as extensive" as, those in federal court. *Gilmer*, 500 U.S. at 31. After all, the entire point of arbitration is to allow parties to choose procedures *different* from those in court. "[B]y agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Id.*

Even when a statute "expressly" creates procedural rights—such as the right to a judicial forum, the right to a jury trial, or the right to pursue a class or collective action—the FAA makes such rights presumptively waivable in an arbitration agreement unless Congress "clearly" states otherwise. *Epic Sys.*, 138 S. Ct. at 1624, 1627–28. In *Gilmer*, for example, the Court held that even though the ADEA gives plaintiffs the express right to sue "'in any court of competent jurisdiction,'" 500 U.S. at 29, as well as the right to pursue a "'collective action,'" *id*. at 32, those rights can be waived in an arbitration agreement. Likewise, the ADEA provides that plaintiffs "shall be entitled to a trial by jury," 29 U.S.C. § 626(c)(2),

24

but *Gilmer* illustrates that this right too may be waived in favor of arbitration.

The Supreme Court has suggested—though never actually held—that a court may decline to enforce an arbitration provision that "prevent[s] the 'effective vindication' of a federal statutory right." *Italian Colors*, 570 U.S. at 235 & n.2. But to the extent the exception exists, it protects only the right of the plaintiff to "'vindicate its statutory cause of action in the arbitral forum.'" *Id.* at 235.

As the district court recognized, Add.014, the relevant "substantive" right protected by the ADEA is "the statutory right to be free from workplace age discrimination[.]" *14 Penn Plaza*, 556 U.S. at 265; *see also Estle*, 23 F.4th at 214. Accordingly, under the effective-vindication doctrine, an arbitration agreement cannot "forbid[] the assertion of [that] statutory right[]" by prohibiting a plaintiff from bringing an ADEA claim. *Italian Colors*, 570 U.S. at 235. Nor can an arbitration agreement impose obstacles that effectively deprive plaintiffs of the right to bring an ADEA claim, such as by setting an unreasonably short filing deadline or charging arbitration fees "that are so high as to make access to the forum impracticable." *Id.*

25

Simply put, the question under the effective-vindication doctrine is whether the arbitration procedures agreed to by the parties "allow" plaintiffs "a fair opportunity to present their claim[]." *Gilmer*, 500 U.S. at 31. "'[S]o long as the prospective litigant effectively may vindicate [that] statutory cause of action in the arbitral forum,'" the arbitration agreement must be enforced. *Italian Colors*, 570 U.S. at 235.

### 2. The Timeliness Provision gave Plaintiffs a fair opportunity to vindicate their ADEA claims.

As the district court held, the Timeliness Provision gave Plaintiffs a fair opportunity to pursue their claims in arbitration. Plaintiffs' contrary argument "borders on frivolous." Add.017. In particular, "the timeline for filing an arbitration demand established by the Timeliness Provision is the *same* 180- or 300-day deadline provided by the ADEA itself." Add.018 (citing 29 U.S.C. § 626(d)(1)). "Thus, to hold that Plaintiffs were prevented by the Timeliness Provision from effectively vindicating their rights under the ADEA would be to hold that no plaintiff can effectively vindicate his or her rights under the statute." *Id.* That "would be 'patently absurd.'" *Id.* (quoting *Rusis*, 529 F. Supp. 3d at 194 n.8).

26

On top of that, "'Plaintiffs do not identify any obstacle, let alone one imposed by IBM, that prevented [them] from filing an arbitration demand on their ADEA claims within the 180- or 300-day deadline established by the separation agreements.'" Add.017–18. Had they done so, "'they could have received any relief to which they were entitled in an individual arbitration, as contemplated by IBM's separation agreements.'" Add.018. As another district court addressing the same question put it, "[t]he simplest way for Plaintiff[s] to vindicate [their] ADEA claim[s] was to file a timely demand for arbitration, which [they] did not do." *Smith v. IBM*, No. 21-CV-03856, 2022 WL 1720140 (N.D. Ga. May 27, 2022); *accord Rusis*, 529 F. Supp. 3d at 194 n.8 (same); *Chandler v. IBM*, No. 21-cv-6319, 2022 WL 2473340, at *5 (S.D.N.Y. July 6, 2022) (same).

In short, Plaintiffs cannot "set the fault [for their untimely ADEA claims] at IBM's feet when they need look no further than their own counsel for the appropriate locus of blame." *Rusis*, 529 F. Supp. 3d at 194 n.8. The district court thus correctly held that the Timeliness Provision is enforceable.

27

### B. Plaintiffs' Piggybacking Argument Fails.

Plaintiffs nonetheless assert that the Timeliness Provision impermissibly waives the judge-made "piggybacking" rule, which they claim is a "substantive" right protected by the ADEA. But Plaintiffs fundamentally misunderstand both the substantive scope of the ADEA and the nature of the piggybacking doctrine. The ADEA protects the substantive right to be free from workplace age discrimination, which is distinct from the *procedural* questions of when, where, and how a claim of discrimination must be filed. Those procedural matters can be freely determined by the parties in an arbitration agreement, as long as the plaintiff retains a fair opportunity to pursue a claim in the arbitral forum.

Plaintiffs' argument is doubly wrong. First, piggybacking is an exhaustion doctrine, not a limitations rule. It excuses plaintiffs from filing EEOC charges before filing suit in court. But since plaintiffs are not required to file an EEOC charge before filing a claim in arbitration, piggybacking is entirely irrelevant in this context. Second, even if piggybacking were part of the ADEA's limitations period, it is still just a procedural rule, not a substantive right.

1. **The judge-made piggybacking doctrine is an inapposite exhaustion rule for EEOC charges, which Plaintiffs were not required to file.**

Plaintiffs primarily argue that the Timeliness Provision is invalid because it waives the piggybacking rule, which would have allowed them to file ADEA claims in court by piggybacking on EEOC charges filed by other plaintiffs. Br. 25. But no court has ever adopted that view—and numerous courts have rejected it. As the district court recognized, there is simply no authority for the claim "that the ADEA creates a substantive right to piggybacking in any context—let alone specifically in the context of determining the enforceability of an agreement to arbitrate." Add.013. Indeed, since piggybacking is about excusing the requirement to file EEOC charges before filing suit in court, it is irrelevant in arbitration.

**a.** As this Court explained in *Tolliver v. Xerox Corp.*, 918 F.2d 1052 (2d Cir. 1990), Title VII and the ADEA require a plaintiff to "fil[e] a charge with the EEOC before bringing a suit in . . . district court." *Id.* at 1056. "The purpose" of that exhaustion requirement "is to afford the agency the opportunity to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.'" *Id.* at 1057.

29

In broad terms, the judge-made piggybacking rule allows a plaintiff to forgo filing an EEOC charge by "piggybacking" onto a similar charge filed by a different plaintiff. *Id.* at 1057–58. The rationale for excusing exhaustion in that circumstance is that, if the EEOC "is satisfied that a timely filed administrative charge affords it sufficient opportunity to discharge [its conciliation, conference, and persuasion] responsibilities with respect to similar grievances, it serves no administrative purpose to require the filing of repetitive . . . charges." *Id.* at 1057. Thus, if the filed charge is broad enough to provide notice of the claims of non-charge filers, then the non-charge filers' failure to file their own charges can be excused. *Id.*

As the case law makes clear, therefore, the piggybacking rule has nothing to do with making sure plaintiffs have enough time to file a claim. It is an *exhaustion* rule, which excuses the statutory requirement that a plaintiff first file an EEOC charge before bringing suit in court. It is not a *statute-of-limitations* doctrine, as it "neither 'tolls' the statute of limitations nor is it intended to permit otherwise time-barred claims to proceed in litigation." *Rusis*, 529 F. Supp. 3d at 192 n.4. To be sure, there is language in piggybacking cases requiring the plaintiff who *did* file an

30

EEOC charge to have filed "a timely administrative charge." *Tolliver*, 918 F.2d at 1056. But that is just a requirement that *someone* must have filed a timely EEOC charge in order to make piggybacking possible.

If there were any doubt on this point, this Court has held that piggybacking is not available to plaintiffs who file their own untimely charges of discrimination, even if they otherwise would be eligible for piggybacking based on the timely-filed charge of a different plaintiff. *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 564 (2d Cir. 2006) ("[A]n individual who has previously filed an EEOC charge cannot piggyback onto someone else's EEOC charge."), *aff'd*, 552 U.S. 389 (2008). This "underscore[s]" that piggybacking does not extend the statute of limitations for filing an ADEA claim, but only excuses the requirement of filing an EEOC charge. *Chandler*, 2022 WL 2473340, at *5.

Accordingly, since plaintiffs who file "ADEA claims in arbitration" are "not required to file a charge of discrimination with the EEOC[,]" "the piggybacking doctrine is wholly inapplicable in the arbitration context." *Rusis*, 529 F. Supp. 3d at 192 n.4. Arbitration plaintiffs simply do not need the relief that piggybacking provides—an exception to the ADEA's charge-filing requirement. And a plaintiff who files an untimely

31

arbitration demand is in the same position as one who files his or her own untimely EEOC charge—the claim is time-barred.

**b.** Nothing in Plaintiffs' opening brief changes this fact. Plaintiffs claim that *Tolliver* understood piggybacking to be a limitations rule. But, as the discussion above suggests, Plaintiffs are mistaken.

For example, Plaintiffs emphasize (Br. 30–32) *Tolliver*'s discussion of the 1978 amendments to the ADEA's charge-filing provision. Those amendments "eliminate[d] the requirement that 'the individual' bringing suit" must have filed a charge, and replaced it with "the more general requirement that 'a charge . . . has been filed.'" *Tolliver*, 918 F.3d at 1056. Quoting a Senate report, this Court said that "Congress pointed out that '[f]ailure to timely file the notice . . . [was] the most common basis for dismissal of ADEA lawsuits by private individuals," and thus, "the purpose of the amendment was 'to make it more likely that the courts will reach the merits of the cases of aggrieved individuals[.]'" *Id.* From there, Plaintiffs conclude that "this Court acknowledged that piggybacking is baked into the language of the statutory provision of the ADEA that functions like a statute of limitations." Br. 31–32.

Plaintiffs vastly overread *Tolliver*. As is readily apparent from the legislative history *Tolliver* cited, Congress was focused on the burden imposed by the pre-suit "*charge filing obligation.*" *Tolliver*, 918 F.3d at 1056 (emphasis added). Neither Congress nor this Court had any reason to consider whether a piggybacking rule should be created where no charge filing obligation exists in the first place—and that is this case. Indeed, "the statutory provision" containing the charge filing obligation—which this Court discussed and Plaintiffs emphasize so heavily—is completely irrelevant in this litigation.

Plaintiffs similarly say that piggybacking "bolsters the remedial effect of the [ADEA]" because it "affords the EEOC the ability to fulfill its statutory purpose of 'seek[ing] to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion[,]' by investigating the initial charge." Br. 33. But that proves *IBM's* point. *Gilmer* held that arbitration can substitute for the EEOC charge-filing process. 500 U.S. at 29. The EEOC's "informal methods" responsibilities thus do not exist in arbitration, and piggybacking in the arbitration context makes no sense. For that reason alone, Plaintiffs' challenge to the Timeliness Provision fails.

33

### 2. Even if piggybacking were part of the ADEA's statute of limitations, it is a procedural rule, not a substantive right.

**a.** Even if piggybacking were part of the ADEA's limitations period, it would still be a procedural rule waivable through an arbitration agreement. After all, even the ADEA's express statutory rights such as the right to a jury trial and the right to a collective action can be waived, *supra* p. 23; there is no reason piggybacking should be non-waivable.

"As the Supreme Court explained in *14 Penn Plaza LLC*, the substantive right conferred by the ADEA for FAA purposes is the 'right to be free from workplace age discrimination.'" Add.014 (quoting 556 U.S. at 265). Significantly, the Supreme Court "distinguished" that right from "procedural [ones], like 'the right to seek relief from a court in the first instance.'" *Estle*, 23 F.4th at 214 (quoting *14 Penn Plaza*, 556 U.S. at 265–66). And "[t]he ADEA's limitations period falls comfortably in the latter category; it is more akin to the procedural 'right to seek relief from a court in the first instance' than it is to the substantive 'right to be free from workplace age discrimination.'" Add.014 (quoting *14 Penn Plaza*, 556 U.S. at 265–66).

34

This is especially so in light of this Court's holding that "the ADEA statute of limitations is a procedural, not substantive, right." *Id.* In *Vernon v. Cassadaga Valley Central School District*, 49 F.3d 886 (2d Cir. 1995), this Court considered whether the ADEA's amended statute of limitations could apply retroactively. That analysis turned on whether the limitations period was a procedural right or a substantive right. The Court "explained that substantive rights typically govern 'primary conduct'—*e.g.*, 'the alleged discrimination'—while procedural rights generally bear on 'secondary conduct'—*e.g.*, 'the filing of [a] suit.'" Add.014 (quoting *Vernon*, 49 F.3d at 890). "Applying that reasoning, [this Court] held that the ADEA statute of limitations is a procedural, not substantive, right." *Id.*

So too here: "Because the ADEA's limitations period governs 'secondary conduct'—namely, the time period for filing a suit under the ADEA—it should not be considered a substantive, and therefore *categorically* nonwaivable, right in the arbitration context." Add.015; *see also Spira v. J.P. Morgan Chase & Co.*, 466 F. App'x 20, 22–23 (2d Cir. 2012) ("[L]imitations periods generally do not modify underlying substantive rights.").

35

**b.** Plaintiffs offer three responses, but all fail. *First*, they argue that "*14 Penn Plaza* does not declare the right to be free from workplace age discrimination to be the ***only*** substantive right (to the exclusion of all others) provided under the ADEA[.]" Br. 37–38. But *Estle* forecloses that argument. There, this Court emphasized that, in *14 Penn Plaza*, the Supreme Court "distinguished" the ADEA's substantive "'statutory right to be free from workplace age discrimination' . . . from procedural rights, like 'the right to seek relief from a court in the first instance.'" *Estle*, 23 F.4th at 214.

Plaintiffs try to escape *Estle* on the ground that it did not involve the ADEA's limitations period. Br. 38 n.25. But that is irrelevant. The critical fact is that, under *14 Penn Plaza* as understood by this Court in *Estle*, the substantive right under the ADEA ("the statutory right to be free from workplace age discrimination") is distinct from procedural rights (such as "the right to seek relief from a court in the first instance"). And as the district court reasoned, the ADEA's limitations period fits comfortably within the latter category of procedural rights because it is about the secondary issue of how and when a claim must be filed—not about the substantive right to be free from age discrimination. Add.014.

36

*Second*, Plaintiffs try to avoid *Vernon* by relying on Judge Cabranes's concurrence. Br. 41 n.27, 46. But his reasoning strongly cuts against their position. Judge Cabranes explained that there is nothing "talismanic" about the labels "substantive" and "procedural"; what matters is that plaintiffs should not have their ADEA claims "cut off" by a filing deadline "without an opportunity to comply with it." *Vernon*, 49 F.3d at 891–92 (Cabranes, J., concurring). That reinforces IBM's point that the Timeliness Provision should be enforced because it gave Plaintiffs a "fair opportunity" to file their ADEA claims in arbitration. *Gilmer*, 500 U.S. at 31. And Judge Cabranes's logic also shows why Plaintiffs are mistaken to rely on the "talismanic" label of piggybacking as a "substantive" right. What matters is not the superficial label of substance/procedure, but whether the inability to piggyback somehow deprived Plaintiffs of a fair opportunity to assert their claims in arbitration. It did not. They had every opportunity to file.

*Finally*, Plaintiffs suggest (Br. 35 & n.22, 36–37) that "*dicta*" in *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115 (2d Cir. 2010), somehow supports their position. Not so. In the *Ragone* dicta, the Court said it was "possible" that shortening the statutory filing period for

Title VII claims to 90 days might be "incompatible with [the employee's] ability to pursue her Title VII claims in arbitration." *Id*. at 125–26. But the Court did not suggest that Title VII's filing period is a non-waivable "substantive right." Instead, the Court was referring to the effective-vindication doctrine discussed above, which requires that the filing deadline cannot be so short that it interferes with the plaintiff's right to "'vindicate its statutory cause of action in the arbitral forum.'" *Id*. at 125. That requires only that a filing deadline give plaintiffs "a fair opportunity to present their claims." *Gilmer*, 500 U.S. at 31. And here, that was indisputably true. Indeed, the filing deadline here was not shortened at all; it tracked the ADEA's deadline for filing an EEOC charge.

### 3. The Sixth Circuit's decision in *Thompson* does not help Plaintiffs.

**a.** Plaintiffs' reliance (Br. 33–39) on *Thompson v. Fresh Products, LLC*, 985 F.3d 509 (6th Cir. 2021), is misplaced. In *Thompson*, the Sixth Circuit held that the ADEA does not allow parties to shorten the express statutory time period for filing a claim *in court* after filing a timely charge of discrimination with the EEOC. The court did not consider the arbitration context, where there is no requirement to file an EEOC charge at all. The court also did not consider whether plaintiffs have a

38

substantive, non-waivable right to file *outside* of the usual limitations period by "piggybacking" on the timely filed charge of another plaintiff. In short, as the district court noted, "*Thompson* did not involve an agreement to arbitrate or the piggybacking rule." Add.015. As a result, it "had no occasion to consider . . . the arbitration context or whether the ADEA also confers a substantive right to piggybacking." *Id.*

In *Thompson*, the plaintiff filed an EEOC charge within 5 days of being fired, and there was no question that the charge was timely. 985 F.3d at 517–18 & n.3. The state civil-rights agency and the EEOC then spent over a year investigating the charge before the EEOC ultimately dismissed it and issued a right-to-sue letter. *Id.* at 518. The plaintiff then filed suit in court within the 90-day period that the ADEA allows after a right-to-sue letter is issued. *Id.* Nevertheless, the employer argued that the court filing was untimely based on an agreement to file claims within six months of separation. *Id.* at 519. The court rejected that argument, holding that it would improperly require filing suit before the EEOC could fully investigate and seek to resolve a timely charge. The Court emphasized "the importance of the pre-suit cooperative process, outlining the EEOC's obligation upon receiving a charge to 'seek to eliminate any

alleged unlawful practice by informal methods of conciliation, conference, and persuasion.'" *Id.* at 521 (quoting 29 U.S.C. § 626(d)(2)).

*Thompson* is inapposite here for four reasons. First, although the Sixth Circuit held in *Thompson* that the ADEA's express statutory filing deadline could not be waived, the Timeliness Provision here is consistent with that ruling. It requires an arbitration demand to be filed on the same deadline the statute sets for an EEOC charge—"'within 180 days after the alleged unlawful practice occurred'" (extended to 300 days in deferral jurisdictions). *Id.* at 521 & n.5 (quoting 29 U.S.C. § 626(d)(1)(A)). While the Timeliness Provision here does not allow a party to use the "piggybacking" doctrine to file *after* the ordinary EEOC filing deadline expires, *Thompson* did not address that issue.

Second, *Thompson* did not involve arbitration, and its rationale does not apply to arbitration cases. The court held that the ADEA's statutory filing deadline could not be shortened because it was necessary to protect the "delicate balance" of the pre-suit EEOC process that is required before a plaintiff may file suit *in court. Thompson*, 985 F.3d at 519. Here, however, Plaintiffs were not required to file EEOC charges before arbitrating. The Timeliness Provision thus does not interfere with

40

any mandatory EEOC process. *See Gilmer*, 500 U.S. at 29 (holding that "out-of-court dispute resolution, such as arbitration, is consistent with the statutory scheme established by Congress" in the ADEA).

Third, since *Thompson* did not involve arbitration, it did not have to contend with the FAA's rule that arbitration provisions "shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. That express statutory command requires enforcement of the arbitral Timeliness Provision. Indeed, the Supreme Court has said that even express statutory rights are generally waivable in arbitration provisions unless Congress has "clearly" provided otherwise. *Epic Sys.*, 138 S. Ct. at 1624, 1627–28. And when it comes to the judge-made piggybacking rule, Congress did not even mention it—much less "clearly" do so.

Fourth, the Sixth Circuit itself has recognized the distinction between the arbitration and non-arbitration contexts. *Thompson* relied on an earlier decision that addressed only "contractually shortened limitation period[s], *outside of an arbitration agreement.*" *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 839 (6th Cir. 2019) (emphasis added). And as Plaintiffs admit, Br. 40 & n.26, *Logan* expressly distinguished the Sixth Circuit's previous en banc decision in *Morrison*

41

*v. Circuit City Stores, Inc.*, 317 F.3d 646, 673 n.16 (6th Cir. 2003) (en banc), which *upheld* an arbitration provision that reasonably shortened the deadline for bringing a Title VII claim. *Logan*, 939 F.3d at 838.

Accordingly, as the district court recognized, "Sixth Circuit precedent *undermines* rather than *supports* Plaintiffs' position" because it recognizes that filing periods *can* be shortened in arbitration agreements. Add.016 (emphasis added); *Chandler*, 2022 WL 2473340, at *6 (same); *Tavenner v. IBM*, No. 21-CV-6345, 2022 WL 4449215, at *8 n.10 (S.D.N.Y. Sept. 23, 2022) (same). Indeed, the Sixth Circuit has actually upheld an arbitration provision that required an ADEA claim to be filed within "180[ ]day[s]," reasoning that the filing deadline was "not unreasonably short"—even if the ADEA would sometimes allow a longer period for filing in court. *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 480 (6th Cir. 2005) (per curiam). It is thus clear that the Sixth Circuit would enforce an arbitration agreement shortening the filing period for an ADEA claim as long as it provided a fair opportunity to pursue the claim.[1]

---

[1] Plaintiffs' reliance (Br. 36) on the EEOC amicus brief in *Thompson* is likewise misplaced. That "amicus brief did not take any position on the

**b.** For their part, Plaintiffs unsuccessfully try to slice and dice the Sixth Circuit's case law to avoid its clear foreclosure of their claims. They principally complain (Br. 38–39) that the Sixth Circuit's distinction between arbitration agreements and other contracts would run afoul of the rule that the FAA "does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). That principle, however, has no bearing here.

To begin, *Morgan* involved a *judge-made* rule that applied a heightened waiver standard to agreements to arbitrate. *See id.* Here, *the parties* adopted the relevant procedural rule—the Timeliness Provision— not *the courts*. There are many procedural rules that parties can adopt in arbitration that they could not adopt if they chose to litigate in court. And the FAA requires courts to enforce such rules. *Supra* Section I.A(1)

Moreover, as explained above, the FAA's enforcement mandate is not the only basis for the distinction the Sixth Circuit drew. Another

---

question at issue here because, as noted, *Thompson* did not involve an agreement to arbitrate or piggybacking." Add.016 n.14. In addition, the brief relied on "the Sixth Circuit's prior decision in *Logan*, which, as discussed, acknowledged that a different conclusion would be warranted in the arbitration context." *Id.*

43

obvious distinction is that the EEOC's mandatory pre-suit process does not come into play in arbitration because Plaintiffs were not required to file EEOC charges before arbitrating. As noted above, the Sixth Circuit emphasized in *Thompson* that altering the statutory filing period for claims filed in court conflicts with the EEOC pre-suit process and Congress's goal of giving the agency the chance to informally resolve the matter before a suit can be filed *in court*. But that concern does not exist *in arbitration*, where no EEOC charge is required.

Plaintiffs also try to undercut *Morrison* on the ground that, unlike Plaintiffs here, "the plaintiff had been able to actually arbitrate her claim on the merits to a final award." Br. 40–41. But the important takeaway from *Morrison* is not whether the plaintiff arbitrated or not; it is that the Sixth Circuit adjudicated the validity of a shortened statutory limitations period based on whether the period was "unduly burdensome[.]" *Logan*, 939 F.3d at 838. In other words, the Sixth Circuit allows shortened statutory limitations periods in arbitration agreements as long as they give plaintiffs enough time to file a claim—and there is no serious question about that here.

### 4.     The OWBPA is irrelevant.

The foregoing discussion forecloses Plaintiffs' final argument that the Timeliness Provision could not "waive application of the piggybacking rule . . . since IBM did not provide the disclosures required under [the] OWBPA to obtain such a waiver." Br. 42.

As the district court outlined, the OWBPA "require[s] an employer to make certain disclosures" before an employee waives his or her rights under the ADEA. Add.016 (citing 29 U.S.C. § 626(f)(1)). But the OWBPA disclosure rule "is limited to [waiver of] substantive rights and does not include procedural ones." *Estle*, 23 F.4th at 214. As a result, the OWBPA "adds nothing" here: "[T]he piggybacking rule does not give rise to a substantive right under the ADEA," and thus, "[i]t follows that the OWBPA's disclosure requirements do not apply to waivers of that rule." Add.017; *Chandler*, 2022 WL 2473340, at *5 (agreeing that this argument is "without merit").

On appeal, Plaintiffs raise only two arguments, both of which have already been addressed. First, Plaintiffs claim that piggybacking *is* a substantive right. Br. 45–46. It is not; it is a procedural rule about where, when, and how a claim can be filed. *Supra* Section I.B(1), (2), (3). Second,

again citing Judge Cabranes's concurrence in *Vernon*, Plaintiffs argue that the ADEA's limitations period is substantive "for the purposes of determining whether a limitations period may be waived or truncated (as argued herein), or for the purposes of OWBPA." Br. 46–47 (emphasis omitted). Again, it is not. *Supra* Section I.B(1), (2), (3).[2]

The Court should thus reject this argument and affirm.[3]

## C. The Post-Arbitration Plaintiffs Have Waived Their Challenges to the Timeliness Provision.

As for the 24 Post-Arbitration Plaintiffs, although their challenge to the Timeliness Provision would fail on the merits for the same reasons outlined above, the district court correctly held that they waived their ability to challenge it. After all, these Plaintiffs "already arbitrated their ADEA claims, lost, and chose not to file any motion to vacate the arbitral decision within the three-month deadline under the FAA." Add.008. In

---

[2] Plaintiffs claim that the Timeliness Provision is "further invalid" under the OWBPA because it was not understandable. Br. 44 n.29. But since the OWBPA is not implicated here, this claim is beside the point. Moreover, Plaintiffs forfeited this claim by failing to raise it below, and the Timeliness Provision was perfectly understandable in any event.

[3] The same problems doom Plaintiffs' attempt to distinguish *Logan* and *Morrison* on the ground that they did not involve "the requirements of OWBPA[.]" Br. 41. Since piggybacking is not a substantive ADEA right, *Estle*, 23 F.4th at 214, the OWBPA is similarly irrelevant here.

46

addition, "they waited nearly two (and in some cases more than two) years after they received their arbitration decisions" before challenging their arbitration agreements. Add.008–9.

The upshot is that the arbitrations "definitively resolved the Post-Arbitration Plaintiffs' ADEA claims[.]" Add.009. And under ordinary Declaratory Judgment Act principles, "[t]here is no 'useful purpose' that a declaratory judgment would serve at this point; nor is there any 'uncertainty' in the parties' legal relations for the Court to resolve." *Id.* (quoting *Duane Reade, Inc.*, 411 F.3d at 389).

Plaintiffs offer no serious response. They say nothing is final because they can return to their arbitrators with motions for relief from judgment under Rule 60. Br. 53. But the district court rightly rejected that argument. Rule 60(c) requires any request for relief to be filed "within a reasonable time" (or in some cases within a year). *See* Fed. R. Civ. P. 60(c). But here, "it has been nearly two (or more) years since the Post-Arbitration Plaintiffs' ADEA claims were dismissed in arbitration, making it highly unlikely that any arbitrator would in fact entertain any Rule 60(b) motion." Add.009 n.9. That commonsense ruling was neither

47

a mistaken application of law nor a clearly erroneous finding of fact.[4] *See*

*Duane Reade, Inc.*, 411 F.3d at 388. While Plaintiffs argue the

agreements "require[]" these motions to be heard, Br. 56 n.38, nothing

precludes the arbitrators from denying them as untimely.

## II. THE DISTRICT COURT PROPERLY DECLINED TO ENTERTAIN TIME-BARRED PLAINTIFFS' CHALLENGE TO THE CONFIDENTIALITY PROVISION.

The district court did not abuse its discretion in declining to

entertain Plaintiffs' challenge to the Confidentiality Provision. The Post-

Arbitration Plaintiffs already arbitrated their claims and lost, so they

will not have any future arbitrations where confidentiality will be a live

issue. *See* Add.008–10. Likewise, Flannery and Corbett's challenge to

confidentiality is "not yet—and may never become—ripe." Add.011. Since

their challenge to the Timeliness Provision fails and their claims are

---

[4] Plaintiffs claim in passing that, if they "had sought declaratory relief prior to going to arbitration, it is likely the court would have held that the claims could not be addressed, because it was not clear that [the] arbitrators would hold the claims to be untimely." Br. 54. But there is no dispute here that Plaintiffs' arbitration demands were untimely under the agreements. The proper solution was thus for plaintiffs to seek a stay of arbitration proceedings so they could challenge the validity of the Timeliness Provision in court. Plaintiffs instead arbitrated to finality, failed to seek vacatur, and filed court challenges only years later.

untimely, it is highly unlikely they will have any future arbitrations where confidentiality will be a live issue.

As the district court held, the Confidentiality Provision "will play a role in Flannery and Corbett's arbitration proceedings only if the arbitrator rules that they have timely ADEA claims to arbitrate in the first place." *Id.* But "there is no 'practical likelihood' that that contingency will occur" because "there is no merit to Plaintiffs' claim that the Timeliness Provision is unenforceable." Add.011–12. Consequently, "there is no reason to believe an arbitrator would conclude Flannery and Corbett have timely ADEA claims"—and thus, "the 'controversy' raised by Flannery and Corbett's claims regarding the Confidentiality Provision lacks 'sufficient immediacy and reality' to render it ripe for this Court's review." Add.012.

On appeal, Plaintiffs say that their attack on the Confidentiality Provision *is* ripe merely because they "have challenged" it. Br. 50 n.33. But if Flannery and Corbett lose their challenge to the Timeliness Provision (and they do), then they have no claim to arbitrate and it is irrelevant whether their arbitrations would have to be kept confidential. That appears to be why Plaintiffs ultimately depend on the premise that

49

"the timeliness provision is unenforceable" and their claims are thus "timely." *Id.* But as discussed above, *supra* Section I, that is wrong.[5]

## III. THE DISTRICT COURT PROPERLY DENIED PLAINTIFFS' BELATED ATTEMPT TO ADD A FRAUD CLAIM.

Finally, the district court correctly denied Plaintiffs' request to amend their complaint to add a fraud claim seeking to invalidate their arbitration agreements altogether. Add.020. First, the Post-Arbitration Plaintiffs waived any challenge to the arbitration agreements by arbitrating, losing, and only years later seeking to challenge arbitrability. Second, the vague proposed fraud claim fails to allege facts with particularity. And third, Plaintiffs cannot nullify an agreement to arbitrate age-discrimination claims by claiming IBM "fraudulently" failed to tell them about the alleged age discrimination.

---

[5] Plaintiffs attempt to incorporate by reference the appellant's briefing on the confidentiality issue in *Chandler v. IBM*, No. 22-1733 (2d Cir.). Br. 48 & n.31. But that is improper both because the lower court in the present case did not reach the confidentiality issue, and because incorporating the briefing in a separate appeal is not allowed and Plaintiffs have disavowed any intent to consolidate the cases. *See United States v. Johnson*, 127 F. App'x 894, 901 n.4 (7th Cir. 2005); *United States v. Bichsel*, 156 F.3d 1148, 1150 n.1 (11th Cir. 1998); *United States v. McDougal*, 133 F.3d 1110, 1114 (8th Cir. 1998); ECF No. 89 at 2. To the extent this court allows it, Plaintiffs' arguments fail for the reasons in IBM's briefing in *Chandler*.

**A.     The Post-Arbitration Plaintiffs Waived Any Challenge to the Validity of the Arbitration Agreement.**

**1.** The district court correctly held that the Post-Arbitration Plaintiffs waived any challenge to their agreements to arbitrate. They "affirmatively initiated arbitration and actively participated in arbitration proceedings until their claims were dismissed." Add.021. They cannot now, years later, seek to invalidate the arbitration agreements. *Id.*; *see also ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 685 (2d Cir. 1996).

**2.** Plaintiffs offer no persuasive response. *First*, they claim that "mere participation in arbitration" does not waive objections to arbitrability. Br. 66. But numerous courts have held otherwise. Add.020–21.[6] And more fundamentally, the Post-Arbitration Plaintiffs did not

---

[6] *E.g.*, *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994); *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 809 (2d Cir. 1960); *Kumaran v. ADM Inv. Servs., Inc.*, No. 20-cv-3873, 2021 WL 2333645, at *4 (S.D.N.Y. June 7, 2021); *Charter Commc'ns, Inc. v. Garfin*, No. 20 Civ 7049, 2021 WL 694549, at *9 (S.D.N.Y. Feb. 23, 2021); *Sands Bros & Co. v. Zipper*, No. 03 Civ 7731, 2003 WL 22439789, at *2–3 (S.D.N.Y. Oct. 27, 2003).

While Judge Furman reached waiver only as to Post-Arbitration Plaintiffs, these cases provide grounds to likewise dismiss Flannery, who initiated arbitration after he filed suit.

merely "participate"; they arbitrated and lost. That is clear waiver.[7]

Plaintiffs' cited cases are inapposite, as they both involved plaintiffs who expressly *preserved* objections to the arbitral forum. *See Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003); *Openshaw v. FedEx Ground Package Sys., Inc.*, 731 F. Supp. 2d 987, 99 (C.D. Cal. 2010). Plaintiffs here did not. In fact, they actively "disclaimed" any challenge to arbitrability. Add.021.

*Second*, Plaintiffs try to excuse the waiver by claiming it was not until "long after their arbitrations had been initiated" that they learned of evidence allegedly supporting their fraud claim. Br. 66. This argument "does not pass the laugh test." Add.022. After all, "the principal basis" for Plaintiffs' fraud claim is that IBM "'represented to its employees that they were being laid off for legitimate business reasons'" when it was really allegedly discriminating against them based on age. *Id.* That, of

---

[7] *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991); *Time Warner Cable of N.Y.C. LLC v. Int'l Bhd. of Elec. Workers, AFLCIO, Loc. Union No. 3*, 684 F. App'x 68, 71 (2d Cir. 2017); *Testamentary Tr. Under Article Seventh of Last Will & Testament of Walter H. Jones v. Watts Inv. Co.*, No. 99 Civ. 10590, 2000 WL 546490, at *4 (S.D.N.Y. May 3, 2000); *Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*, 752 F. Supp. 638, 639–40 (S.D.N.Y. 1990).

course, was "the core of the very ADEA claims that [they] pursued in arbitration." *Id.* (citing example). Plaintiffs cannot repackage the same claim now as a challenge to arbitrability. *See Cook Indus., Inc. v. C. Itoh & Co. (Am.) Inc.*, 449 F.2d 106, 107–08 (2d Cir. 1971).

In response, Plaintiffs assert that at the time of arbitration they did not know enough facts to satisfy "the heightened pleading standard [under Rule 9(b).]" Br. 67. But even setting aside that Plaintiffs did not make this argument below and thus forfeited it, Plaintiffs conspicuously fail to point to any new information that would satisfy the Rule 9(b) pleading standard (a standard they failed to satisfy in any event, *infra* Section III.B) that was not reasonably available to them at the time of arbitration.

## B.    The Proposed Fraud Claim Is Futile.

In all events, the district court correctly held that adding a fraud claim would be futile because it would fail on the merits. Under New York law, fraudulent inducement requires a false statement of "material" fact made "to deceive another or induce him to act," which the plaintiff actually "relied on." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 580 (2d Cir. 2005). The plaintiff also "must state with

53

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).
The complaint must "'(1) specify the statements that the plaintiff
contends were fraudulent, (2) identify the speaker, (3) state where and
when the statements were made, and (4) explain why the statements
were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.
2006).

As the district court held, Plaintiffs' proposed amended complaint
"does not come close to satisfying these heightened pleading standards."
Add.023. For example, Plaintiffs do not "'identify the speaker' [of any
alleged false statements]," "'where and when the statements were made,'"
or "what specific statements" induced them to agree to arbitrate any
potential age-discrimination claims IBM. Add.024 & n.16.

In response, Plaintiffs assert that the proposed complaint did
"identif[y] the speakers," including Rometty, Gherson, Shelton, and
"lower-level managers." Br. 69 (citing Amend. Compl. ¶¶ 37, 40–51
(App.560–64)). But while the cited paragraphs mention Rometty and
Gherson, they do not identify a single statement they made, much less a
false one, much less one that Plaintiffs allegedly relied on in signing their
arbitration agreements. As for Shelton, Plaintiffs identify a statement

reproduced in a journal article (Amend. Compl. ¶ 43 (App.561–62)), but that was not a statement to Plaintiffs, much less one intended to induce them to act, or even one they claim to have relied on. And Plaintiffs' reference to unnamed "lower-level managers" (Br. 69) underscores that Plaintiffs have still failed to identify any relevant speaker with particularity.

As for when and where the statements were made, the only date Plaintiffs identify in their proposed complaint is the date of the article containing the Shelton statement, which is irrelevant as explained above. *See id.* (citing Amend. Compl. ¶ 43 (App.561–62)). They also say that their proposed complaint refers to the "template letters informing them of their layoffs." *See id.* (citing Amend. Compl. ¶ 47 (App.563)). But "Plaintiffs did not specify when these 'template letters' were sent." Add.024 n.16. And though they now claim the proposed amended complaint "made clear that the letters were sent upon the employees' terminations[,]" Br. 71, they again overstate the specificity of their pleadings, which do not actually provide any dates, *see* App.563.

Plaintiffs further assert that their proposed complaint "explained why [IBM's] statements were fraudulent," Br. 69 (citing Amend. Compl.

¶ 45 (App.562)), but the cited paragraph says only that ADEA claims would have to be resolved through "individual confidential arbitration," which is not a fraudulent statement. Moreover, as the district court explained, despite Plaintiffs' reliance on the so-called "template letters," Plaintiffs have not identified any "specific statements" in the letters that were fraudulent. Add.024 n.16. Plaintiffs never respond to that point.

Plaintiffs nonetheless suggest that their fraud claim should survive based on *McCormack v. IBM*, 145 F. Supp. 3d 258 (S.D.N.Y. 2015). But as the district court here explained (Add.024), the plaintiff in *McCormack* pled a fraud claim with particularity by identifying the speaker, a specific allegedly false statement, and the specific date of the statement. 145 F. Supp. 3d at 263. Plaintiffs here did none of that.[8]

---

[8] Notably, Plaintiffs abandon any fraud theory based on COBRA benefits. The district court held that they failed "to specify where and when 'IBM . . . misrepresented to [them] that they could only maintain their health benefits through COBRA by signing the agreement.'" Add.024. Plaintiffs do not dispute that finding. *See* Br. 68–69 n.42 (saying the COBRA allegations are simply "reflective of IBM's pattern of making false statements"). They have therefore abandoned it. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 87 n.9 (2d Cir. 2018).

## C. Plaintiffs Cannot Avoid Arbitrating a Discrimination Claim By Repackaging It As a "Fraud" Claim.

Even if pled with particularity, Plaintiffs' fraud theory could not invalidate their agreement to arbitrate ADEA claims. As Plaintiffs admit, the "crux" of their fraud claim is that IBM supposedly gave "false rationales" for its "layoff programs" when it was in fact "targeting older workers" in violation of the ADEA. Br. 69. This is just a repackaged version of the age-discrimination claim that Plaintiffs expressly agreed to arbitrate. Allowing this type of claim to nullify an arbitration agreement would make arbitration of discrimination claims a dead letter.

To address this problem, both this Court and the Supreme Court have recognized that when plaintiffs challenge an arbitration clause by claiming they were fraudulently induced into signing it, the alleged fraud must be "directed specifically to the agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). Accordingly, the Plaintiff must "'demonstrate that whatever fraud occurred misled [her] as to the arbitration agreement itself.'" *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997). Put differently, a plaintiff must point to fraud that rendered her "[un]aware of the content or import of the arbitration clause" when she signed it. *Id.* at 667.

57

There is good reason for this rule. Absent "fraud or misrepresentation that relates directly to the arbitration clause," courts would be forced to adjudicate the merits of the very claim the parties agreed to arbitrate. *Id.* This case is a perfect example. Plaintiffs plainly agreed to resolve any ADEA claims against IBM through arbitration. Yet Plaintiffs now attack their arbitration agreements *by claiming they were secretly subject to age discrimination.* If that claim were allowed to proceed in court, then "there would never be an instance" where an employer could secure an enforceable agreement to arbitrate wrongful-termination claims. *Id.* That is why another federal court recently dismissed a virtually identical fraud claim challenging an IBM arbitration clause, because the plaintiff "failed to plead any qualifying misrepresentation regarding the arbitration clause." *Kinney v. IBM*, 557 F. Supp. 3d 823, 833 (W.D. Tex. 2021). [9]

---

[9] Under the *McDonnell-Douglas* framework, an employment-discrimination plaintiff must show "that the legitimate reasons offered by the defendant [for the plaintiff's termination] were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). According to Plaintiffs, that same showing would suffice to invalidate any agreement to arbitrate the discrimination claim by recharacterizing the alleged "pretext" as alleged fraud.

Accordingly, the question here is whether the proposed amended complaint includes allegations of deception regarding "the content or import of the arbitration clause[.]" *Campaniello*, 117 F.3d at 667. It does not. Instead, Plaintiffs seem to argue "that the arbitration clause was included in furtherance of defendant's secret plan" to advance its purportedly discriminatory scheme. *Am. Contex Corp. v. ELTE*, No. 96 Civ. 1514, 1997 WL 540813, at *1 (S.D.N.Y. Sept. 3, 1997). But this, too, is a non-starter. A party "may not . . . establish a connection between the alleged fraud and the arbitration clause in particular merely by" alleging "that the arbitration clause was a part of [a] overall scheme to defraud." *Campaniello*, 117 F.3d at 668.[10]

---

[10] *McCormack* is not to the contrary. That case involved waivers of the right to pursue ADEA claims, which are subject to the onerous standards of the OWBPA. 145 F. Supp. 3d at 265–68, 270–73. This case involves an agreement to arbitrate, which is governed by the FAA's "'liberal federal policy favoring arbitration agreements.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). Consequently, as the only other court to consider this question correctly concluded, *McCormack* is "not on point" in the arbitration context. *Kinney*, 557 F. Supp. 3d at 833.

## IV.  THE DISTRICT COURT RIGHTLY REJECTED PLAINTIFFS' BID FOR UNSEALING.

Finally, the district court did not abuse its discretion in rejecting Plaintiffs' request to unseal confidential arbitration materials. Because the court granted IBM's motion to dismiss, these materials never became judicial documents subject to a presumption of public access. Moreover, even if such a presumption existed, it would be easily overcome since the documents played no role in the disposition of the case.

### A.  The Confidential Materials Are Not Judicial Documents.

The district court did not abuse its discretion in determining that the public access doctrine does not require unsealing.

**1.** The public access doctrine protects "[t]he common law right of public access to judicial documents." *Lugosch*, 435 F.3d at 119. The "presumption of access" is rooted in transparency—a "need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")). The doctrine serves a "monitoring" function, ensuring "conscientiousness,

60

reasonableness, or honesty of judicial proceedings." *Id.* (quoting *Amodeo II*, 71 F.3d at 1048).

"Before any . . . common law right [to public access] can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch*, 435 F.3d at 119. As this Court has made clear, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). Instead, "to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.*

A document is relevant to the performance of the judicial function—and hence subject to a presumption of public access—only "if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019); *see also Amodeo I*, 44 F.3d at 146 (documents relevant to

performance of judicial function because they would have "informed" the court's decision).

If the documents in question are judicial documents, a court "must determine the weight of [the] presumption [of access]." *Lugosch*, 435 F.3d at 119. The weight of that presumption is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *Amodeo II*, 71 F.3d at 1049). In general, "the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quoting *Amodeo II*, 71 F.3d at 1049)

Finally, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Id.* at 120 (quoting *Amodeo II*, 71 F.3d at 1050). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.*

62

**2.** As the district court determined, the sealing analysis in this case is straightforward. To start, the confidential materials at issue are not judicial documents. The district court dismissed Plaintiffs' claims on the pleadings, and then consequently denied Plaintiffs' summary-judgment motion as moot. As a result, the district court "did not, and *could not*, consider" the confidential documents Plaintiffs attached to their summary-judgment briefing, Add.054: those documents were outside of the pleadings and irrelevant at the motion-to-dismiss stage. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 66 (S.D.N.Y. 2007). The documents thus "had no 'tendency'—or, for that matter, ability—'to influence [the court's] ruling on [IBM's] motion,' which resulted in dismissal of the consolidated cases in their entirety." Add.054; *Standard Inv. Chartered, Inc.*, 621 F. Supp. 2d at 66.

Even if the materials were judicial documents, "they would be subject to only a weak presumption of public access" given that they played no role in the district court's exercise of the judicial function. Add.054. As discussed above, the weight of the presumption is "'governed by the role of the material at issue in the exercise of Article III judicial

63

power and the resultant value of such information to those monitoring the federal courts.'" *Lugosch*, 435 F.3d at 119. But, as just explained, the summary-judgment materials played *no role* in the district court's exercise of Article III judicial power in granting IBM's motion to dismiss, Add.002 n.2—and thus, they have *no value* to "'those monitoring the federal courts,'" *Lugosch*, 435 F.3d at 119. For that basic reason, the weight of any presumption of public access would be virtually non-existent.

That "weak" presumption would be easily overcome by "strong 'competing considerations'" on "the other side of the scale." Add.054 (quoting *Lugosch*, 435 F.3d at 120). "Most notably, pursuant to the [FAA], 'courts must rigorously enforce arbitration agreements,' including confidentiality provisions, 'according to their terms.'" Add.054–55. That mandate is especially important where arbitral confidentiality is at issue. As this Court has emphasized, "confidentiality is a paradigmatic aspect of arbitration," and an "'attack on [a] confidentiality provision is, in part, an attack on the character of arbitration itself.'" *Guyden v. Aetna Inc.*, 544 F.3d 376, 385 (2d Cir. 2008). Unsealing the materials in this case, therefore, would run contrary to the FAA's mandate. Indeed, if the FAA

64

means anything, it must mean that arbitral confidentiality carries the day when nothing lies on the other side of the public access scale in the "'balance [of] competing considerations.'" *Lugosch*, 435 F.3d at 120.

Beyond the FAA, the district court rightly recognized that construing the public access doctrine to require unsealing in this case would be "perverse" and "absurd." Add.055, 056–57. The very point of Plaintiffs' lawsuits is to challenge the confidentiality provision that covers the materials at issue. To order unsealing, therefore, "would be to grant Plaintiffs the relief they sought in the first instance even though their claims did not get past IBM's motion to dismiss." Add.055. "That would be 'perverse,'" and to do so merely because Plaintiffs "ask[ed] for it (even though their request turned out to be premature and without merit) would be even more absurd." Add.055, 056–57.

Indeed, Plaintiffs' position would turn the public access doctrine on its head. The presumption of public access is intended to ensure public "confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Amodeo II*, 71 F.3d at 1048. Yet unsealing here would do the opposite. It would reward Plaintiffs for gaming the judicial system and invite future plaintiffs to use court filings to force public

65

disclosure of confidential documents. In other words, unsealing would sanction precisely the sort of "[u]nscrupulous" "weaponiz[ation]" of "[o]ur legal process" that this Court has decried. *Brown*, 929 F.3d at 47.

**B.    Plaintiffs' Counterarguments Fail.**

Plaintiffs still have no answer to the analysis above. Instead, they distort the public access doctrine in an attempt to show that, absurd consequences or not, unsealing is legally required. Plaintiffs are wrong.

**1.** Plaintiffs primarily argue that "whether the district court *in fact* considered Plaintiff's summary judgment papers . . . is irrelevant" to whether they are judicial documents. Br. 60. In their view, "the public's right of access attached the moment that Plaintiffs filed their summary judgment motion in court." Br. 61. They latch onto this Court's statements that documents "submitted to the court as supporting material in connection with a motion for summary judgment[ ]are unquestionably judicial documents under the common law." *Id.* (quoting *Lugosch*, 435 F.3d at 123); *see also Brown*, 929 F.3d at 47 (similar).

But Plaintiffs pull those quotes out of context. As the district court observed, this Court made those statements in circumstances where "'[m]uch of the case ha[d] already survived a motion to dismiss,' so the

district court was *required* to resolve the motion for summary judgment before it." Add.055 (quoting *Lugosch*, 435 F.3d at 113). *Lugosch* and *Brown* "did not hold that summary judgment papers are automatically judicial documents where, as here, a motion to dismiss and motion for summary judgment are pending simultaneously and the court can consider the latter only if it first denies the former." *Id.*

Indeed, this Court in *Lugosch* "explicitly reaffirmed that 'the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.'" Add.055–56 (quoting *Lugosch*, 435 F.3d at 119); *see Olson v. MLB*, 29 F.4th 59, 87 (2d Cir. 2022) (same). Yet that is exactly the rule Plaintiffs advance. Remarkably, they dismiss the district court's reference to that language as "a misreading of dicta"—but this is not dicta. It is a black-letter rule tracing back to this Court's seminal decision in *Amodeo I*, which *rejected* other circuits' views that the "mere filing" of a document was sufficient. 44 F.3d at 145; *see also Olson*, 29 F.4th at 87 (same).

Nor did the district court "misread[]" the "mere filing" rule. The Court explained in *Amodeo I* that "mere filing" is insufficient and that "the item filed must be relevant to the performance of the judicial

function and useful in the judicial process in order for it to be designated a judicial document." 44 F.3d at 145. And as explained above, since the district court dismissed the case on the pleadings, the materials Plaintiffs included with their summary-judgment motion were entirely irrelevant.

**2.** Assuming the confidential materials are judicial documents, Plaintiffs also argue that "[t]he District Court should have found that IBM did not demonstrate a sufficient countervailing interest to outweigh the heavy 'weight of the common-law presumption.'" Br. 63. Again, Plaintiffs are mistaken.

As an initial matter, Plaintiffs ignore the district court's holding that any presumption would be "weak" because the court "did not, and *could not*, consider" the materials. Add.054. Moreover, Plaintiffs do not challenge the district court's holding that the "perverse" and "absurd" consequences of granting their unsealing demand is a sufficient "'competing consideration[]'" to outweigh disclosure here. Add.054–55, 056–57.

Instead, Plaintiffs argue that this Court "has made clear that a confidentiality provision like the one that the District Court invoked is not a sufficient countervailing interest to override the presumption of

68

public access." Br. 63 (citing *Lugosch*, 435 F.3d at 126). Plaintiffs misrepresent *Lugosch*, which did not involve an arbitral confidentiality provision or the FAA. The Court in *Lugosch* also acknowledged that "particular circumstances surrounding" a confidentiality order could outweigh a presumption of public access. *See Lugosch*, 435 F.3d at 126. The unique "particular circumstances" here—including Plaintiffs' direct challenge to the Confidentiality Provision, the FAA's mandate that courts rigorously enforce arbitration agreements, and the fact that the confidential materials are not even Plaintiffs', *see* Br. 22—easily combine to displace any negligible presumption, as the district court held.

Citing a string of unpublished district court opinions, Plaintiffs argue that "courts have routinely denied keeping documents sealed that were alleged to be confidential (whether in arbitration or elsewhere) and where they were filed as part of a proceeding raising a challenge to a party's confidentiality provision." Br. 63–64.

But the only cited opinion that actually fits that description is the decision addressing Plaintiffs' counsel's identical arguments in *Lohnn v. IBM*, No. 21-cv-6379, 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022). And *Lohnn* is mistaken, as the district court in this case carefully explained. For

69

example, *Lohnn* misread *Lugosch* to "hold that summary judgment papers are automatically judicial documents." Add.055. Similarly, *Lohnn* failed to consider that its decision "would create its own perverse incentives," such as permitting plaintiffs to win their challenge against a confidentiality provision simply by filing it.

On top of all this, *Lohnn* is readily distinguishable because the court there had not yet adjudicated the pending dispositive motions and indicated that it would be "reviewing all of the papers," including the confidential materials. 2022 WL 36420, at *9. Here, by contrast the district court adjudicated the dispositive motions and then issued the sealing order. It is now certain that the court did not consider, and could not consider, the confidential materials—and thus, they were irrelevant to the district court's dismissal of the case.[11]

---

[11] Nor can Plaintiffs get any mileage out of this Court's decision to deny a stay pending appeal in *Lohnn*. *See* Br. 9 n.10 (citing Order, *Lohnn v. IBM*, No. 22-32 (2d Cir. Feb. 8, 2022), ECF No. 71). That denial did not resolve the merits of the unsealing issue. And it involved a district court's decision to *unseal* documents, while this appeal involves a decision to keep them *sealed*—a significant difference in light of the abuse-of-discretion standard. *See Bernstein*, 814 F.3d at 139.

## <u>CONCLUSION</u>

IBM respectfully requests that the Court affirm the district court's

judgment.

Dated: November 16, 2022

Respectfully submitted,

Anthony J. Dick
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939
ajdick@jonesday.com

*/s/ Matthew W. Lampe*

Matthew W. Lampe
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
mwlampe@jonesday.com

J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St., Ste. 500
Dallas, TX 75201
Telephone: (214) 220-3939
jbaguinaga@jonesday.com

*Counsel for Defendant-Appellee IBM*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook Standard font.

This brief complies with the type-volume limitation of Local Rule 32.1(a)(4) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 13,991 words, as determined by the word-count function of Microsoft Word 2016.

Dated: November 16, 2022                    /s/ *Matthew W. Lampe*
                                                               Matthew W. Lampe

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2022, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on them via the appellate CM/ECF system.

Dated: November 16, 2022          /s/ *Matthew W. Lampe*
                                 Matthew W. Lampe