No. 22-1728

# United States Court of Appeals for the Second Circuit

_____

IN RE: IBM ARBITRATION AGREEMENT LITIGATION

_____

On Appeal from the United States District Court for the
Southern District of New York
Case Nos. 21-cv-6296; 21-cv-6297; 21-cv-6307; 21-cv-6308; 21-cv-6310; 21-cv-6312; 21-cv-6314; 21-cv-6320; 21-cv-6322; 21-cv-6323; 21-cv-6325; 21-cv-6326; 21-cv-6331; 21-cv-6332; 21-cv-6337; 21-cv-6340; 21-cv-6341; 21-cv-6344; 21-cv-6349; 21-cv-6351; 21-cv-6353; 21-cv-6355; 21-cv-6375; 21-cv-6377; 21-cv-6380; 21-cv-6384 – Judge Jesse M. Furman

_____

**PLAINTIFFS-APPELLANTS' REPLY BRIEF**

_____

Shannon Liss-Riordan
Thomas Fowler
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com; tfowler@llrlaw.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

ARGUMENT......................................................................................6

I.    The District Court Erred by Declining to Enter a
Declaration that the Timing Provision of IBM's
Arbitration Agreement (that IBM Contends Waives
the Piggybacking Rule) is Unenforceable......................................6

    A.    The Piggybacking Rule is Not Only an
Administrative Exhaustion Doctrine but Also
a Limitations Doctrine..........................................10

    B.    The ADEA's Timing Scheme, Including the
Piggybacking Rule, is a Substantive Right that
Cannot be Waived By Contract, Especially
Where IBM Did Not Satisfy the Requirements
of the OWBPA ......................................................13

    C.    The Plaintiffs Whose Claims Were Dismissed
in Arbitration Have not Waived their
Challenges to the Timeliness Provision...............20

II.    The District Court Erred by Declining to Enter a
Declaration that the Confidentiality Provision of
IBM's Arbitration Agreement is Unenforceable.........................25

III.    The District Court Erred by Denying Plaintiffs'
Motion for Leave to Amend their Complaint to
Assert a Fraudulent Inducement Claim......................................26

IV.    The District Court Erred by Keeping the Sealed
Portions of the Summary Judgment Record Under
Seal ....................................................................................................29

CONCLUSION ..................................................................................................34

CERTIFICATE OF COMPLIANCE ..................................................................37

CERTIFICATE OF SERVICE ...........................................................................38

# TABLE OF AUTHORITIES

## Cases

*Allen v. Sears Roebuck and Co.*,
    2010 WL 259069 (E.D. Mich. Jan. 20, 2010)...........................................11

*American Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) .................................................................................14

*American Family Life Assurance Co. of N.Y. v. Baker*,
    778 Fed. App'x. 24 (2d Cir. 2019)..................................................... 26, 30

*Billie v. Coverall North America, Inc.*,
    594 F. Supp. 3d 479 (D. Conn. 2022)........................................................22

*Brown v. Maxwell*,
    929 F.3d 41 (2d Cir. 2019) ................................................................ 30, 31

*Castellanos v. Raymours Furniture Co., Inc.*,
    291 F. Supp. 3d 294 (E.D.N.Y. 2018)........................................................23

*Catlin v. Wal-Mart Stores, Inc.*,
    123 F. Supp. 3d 1123 (D. Minn. 2015)......................................................11

*CellInfo, LLC v. American Tower Corp.*,
    506 F. Supp. 3d 61 (D. Mass. 2020) .........................................................22

*Chandler v. International Business Machines Corp.*,
    No. 22-1733 (2d Cir.)..............................................................................4, 25

*EEOC v. Comm. Office Prods. Co.*,
    486 U.S. 107 (1988) .................................................................................15

*Ellis v. Costco Wholesale Corp.*,
    2015 WL 2453158 (N.D. Cal. May 22, 2015)............................................12

*Enterprise Mortg. Acceptance Co., LLC, Sec. Litig. v. Enterprise*
    *Mortg. Acceptance Co.*,
    391 F.3d 401 (2d Cir. 2004) ........................................................15

*Estle v. International Business Machines Corp.*,
    23 F.4th 210 (2d Cir. 2022) ....................................... 13, 14, 17, 19

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ...................................................... 6, 7, 13, 30

*Grayson v. K Mart Corp.*,
    79 F.3d 1086 (11th Cir. 1996).......................................................7

*Holowecki v. Fed. Exp. Corp.*,
    440 F.3d 558 (2d Cir. 2006) ................................................ 11, 12

*Howell v. International Business Machines Corp.*,
    No. 1:22-cv-00518-AT, Order, Dkt. 35 (N.D. Ga. Dec. 16,
    2022) ......................................................................................34

*Kinney v. International Business Machines Corp.*,
    557 F. Supp. 3d 823 (W.D. Tex. 2021) ......................................28

*Laudig v. International Business Machines Corp.*,
    No. 1:21-cv-05033-AT, Order, Dkt. 39 (N.D. Ga. Dec. 16,
    2022) ......................................................................................33

*Leal v. Wal-Mart Stores, Inc.*,
    2016 WL 2610020 (E.D. La. May 6, 2016) .................................11

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ................................................ 28, 29

*Levy v. United States Gen. Acct'g Office*,
    175 F.3d 254 (2d Cir. 1999) ......................................................12

iv

*Logan v. MGM Grand Detroit Casino,*
939 F.3d 824 (6th Cir. 2019)........................................................20

*Lohnn v. Int'l Bus. Machines Corp.,*
2022 WL 36420 (S.D.N.Y. Jan. 4, 2022) .................................. 30, 31, 33, 34

*Lugosch v. Pyramid Co. of Onondaga,*
435 F.3d 110 (2d Cir. 2006)........................................................ 5, 30, 31, 33

*McCormack v. International Business Machines Corp.,*
145 F. Supp. 3d 258 (S.D.N.Y. 2015) ........................................5, 28

*Morgan v. Sundance, Inc.,*
142 S. Ct. 1708 (2022) ........................................................ 3, 18, 19

*Morrison v. Circuit City Stores, Inc.,*
317 F.3d 646 (6th Cir. 2003)........................................................20

*Oubre v. Entergy Operations, Inc.,*
522 U.S. 422 (1998) ........................................................2, 14

*Ragone v. Atlantic Video at Manhattan Center,*
595 F.3d 115 (2d Cir. 2010)........................................................18

*Robinson v. Locke,*
2012 WL 1029112 (S.D.N.Y. Feb. 1, 2012) ..................................9

*Rusis v. International Business Machines Corp.,*
529 F. Supp. 3d 178 (S.D.N.Y. 2021) .................................. 12, 23

*Shannon v. Hess Oil Virgin Islands Corp.,*
100 F.R.D. 327 (D.V.I. 1983) ........................................................10

*Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino,*
640 F.3d 471 (1st Cir. 2011) ........................................................21

*Spira v. J.P. Morgan Chase & Co.*,
  466 F. App'x. 20 (2d Cir. 2012) ....................................................16

*Stafford v. International Business Machines Corp.*,
  2022 WL 1486494 (S.D.N.Y. May 10, 2022) ..............................................33

*Standard Inv. Chartered, Inc. v. National Ass'n of Securities Dealers, Inc.*,
  621 F. Supp. 2d 55 (S.D.N.Y. Sept. 26, 2007) .................................. 31, 32

*Thompson v. Fresh Products, LLC*,
  985 F.3d 509 (6th Cir. 2021)................................................passim

*Vernon Cassadaga Valley Central School District*,
  49 F.3d 886 (2d Cir. 1995)..................................................... 15, 16

**Statutes**

Age Discrimination in Employment Act ("ADEA"),
  29 U.S.C. §§ 621 *et seq.* ........................................................passim

Declaratory Judgment Act,
  28 U.S.C. §§ 2201-02................................................................4, 20

Federal Arbitration Act ("FAA"),
  9 U.S.C. §§ 1 *et seq.* ..........................................................passim

Older Workers' Benefits Protections Act ("OWBPA"),
  29 U.S.C. § 626(f) ..............................................................passim

**Other Authorities**

S. Rep. 101-79 (1989)...............................................................9

*Thompson v. Fresh Products, LLC*,
  EEOC Brief, 2020 WL 1160190 (March 2, 2020) ..................... 2, 13, 15, 16

vi

## INTRODUCTION

In its Response Brief, IBM claims Plaintiffs' arguments are absurd.

But it is IBM that advances an absurd argument – that it can use its

arbitration agreement to take away the rights of hundreds, if not

thousands, of employees to pursue age discrimination claims -- rights that

they clearly would have been able to pursue in court. Although IBM points

to five lower courts (including the District Court in this case) that have

surprisingly agreed with IBM's position, those courts all simply echoed one

another. And they are wrong. This appeal is thus vitally important, as it

will be the first appellate decision that can correct the lower court decisions

that have allowed IBM to use its arbitration agreements to extinguish the

rights of numerous older workers to pursue their claims against IBM under

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et*

*seq.* – even in the face of blatant and shocking discriminatory conduct by

IBM.[1]

---

[1]     In addition to the 26 plaintiffs in this case, and the plaintiffs in the
three other cases that will be heard with this appeal, there are hundreds of
additional employees who have attempted, or are trying, to pursue

Further, IBM argues that the ADEA limitations period (and thus the piggybacking rule) is a procedural right that can be waived in an arbitration agreement. IBM's position should be rejected, as it butts heads with the EEOC's interpretation of the ADEA[2] and the recent Sixth Circuit decision in *Thompson v. Fresh Products, LLC*, 985 F.3d 509, 521 (6th Cir. 2021). Because the ADEA's limitations period is a *substantive* right, it cannot be waived through arbitration. Nor could IBM obtain a waiver of this right without first satisfying the strict requirements of the Older Workers' Benefits Protections Act ("OWBPA"), 29 U.S.C. § 626(f), which it did not do. In effect, even though plaintiffs in court can assert age discrimination claims in court sometimes even **years after** they suffered discrimination through the piggybacking rule, *see Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998), IBM contends that Plaintiffs here waived that right by

---

arbitrations against IBM to challenge its egregious discriminatory behavior. This appeal will determine whether these employees can have their claims heard.

[2]   *See Thompson v. Fresh Products, LLC*, EEOC Brief, 2020 WL 1160190, at *19-23 (March 2, 2020).

agreeing to having their age discrimination claims heard in arbitration.[3]

IBM's contention that *Thompson* does not apply in the arbitration context should be rejected. IBM's position is essentially that, even though *no other kind of contract* could abridge the ADEA's limitations period, *arbitration agreements can* because of the policies espoused in the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* However, the Supreme Court has made clear that courts are not to elevate arbitration agreements over other kinds of contracts. *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).

IBM also contends that the 24 Plaintiffs in this appeal who already obtained arbitration awards have waived their ability to advance their declaratory judgment claims in this matter. Oddly, IBM asserts that this is

---

[3] IBM clearly realized it could not outright ask for a release of age discrimination claims (as it did for other discrimination claims) as part of the small severance it offered, since it had not made the disclosures required by the OWPBA. Instead, it tried to make age discrimination claims harder to pursue, by requiring them to be brought individually in arbitration. However, it cannot use the arbitration agreement to block these claims for some employees altogether, as it did for the plaintiffs in this case.

the holding of the District Court. That is not correct. Instead, the District Court simply declined to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, due to a mistaken belief that Plaintiffs could not challenge their awards back in arbitration, in the event that the District Court issued declaratory relief. IBM does not even address the substance of Plaintiffs' arguments on this point.

With respect to Plaintiffs' argument that the arbitration agreement's confidentiality provision should be declared invalid, IBM contends that the District Court correctly declined even to entertain Plaintiffs' challenge. However, this dispute is ripe for a decision, and as is explained extensively in plaintiff's opening brief in *Chandler v. International Business Machines Corp.*, No. 22-1733 (2d Cir.), there is ample reason for this Court to declare the confidentiality provision invalid, given IBM's aggressive use of this provision to impede employees' pursuits of their age discrimination claims.

Next, IBM argues that the District Court properly denied Plaintiffs' motion to add a fraudulent inducement claim. IBM argues primarily that Plaintiffs waived their ability to assert such a claim. However, the specific

predicate for Plaintiffs' claim (under the heightened burden required for a fraud claim) is based on evidence that only came to light after Plaintiffs' counsel had arbitrated a number of IBM age discrimination claims, which provided specific evidence that the basis for employees having signed the arbitration agreement was fraudulently induced in the first place. In these circumstances, Plaintiffs should now be able to plead claims of fraudulent inducement, *see McCormack v. International Business Machines Corp.*, 145 F. Supp. 3d 258, 276 (S.D.N.Y. 2015).

Finally, IBM argues that the District Court was correct to seal permanently what it claimed were the "confidential" portions of the summary judgment briefing and supporting evidence. IBM's position that these documents were not "judicial documents", since the District Court did not reach Plaintiffs' summary judgment motion, runs directly contrary to Second Circuit law. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006).

## ARGUMENT

**I.    The District Court Erred by Declining to Enter a Declaration that the Timing Provision of IBM's Arbitration Agreement (that IBM Contends Waives the Piggybacking Rule) is Unenforceable**

Plaintiffs should be able to assert an ADEA claim in arbitration to the same extent they would be able to in court. If the District Court's decision is affirmed, Plaintiffs will have been deprived of their ability to pursue their claims in arbitration, even though the claims would be unquestionably timely if Plaintiffs could assert them in court. This result would run headlong into the Supreme Court's admonition in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991), that while an arbitration agreement may be enforceable with respect to an ADEA claim, "the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum."

As *Gilmer* acknowledged, "the ADEA is designed not only to address individual grievances, but also to further important social policies." *Id.* at 27. Thus, while arbitration may be an adequate forum in which to litigate an ADEA claim, an arbitration agreement is only enforceable to the extent

6

that it allows the ADEA "to serve both its remedial and deterrent function" in a given case. *Id.* at 28.

Here, the District Court's decision has allowed IBM's arbitration agreement to impede the ADEA's remedial and deterrent function by transforming the deadline to file an EEOC charge into a procedural hurdle that Congress did not intend. This Court has held that "the charge filing requirement of section 7(d) [of the ADEA] sets a time limit, **not for the purposes of limiting time for suit**, but for the purpose of affording a prompt opportunity to attempt conciliation." *Tolliver*, 918 F.2d at 1059 (emphasis added). For that reason, this Court held that employees can use the piggybacking rule to pursue ADEA claims, even when they have not themselves timely filed an EEOC charge, so long as they can "piggyback" on a timely filed class charge. *See id.* at 1058-59. Other courts have likewise concluded that the "principle behind the piggybacking rule is to give effect to the remedial purposes of the ADEA . . . ." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1103 (11th Cir. 1996).

The timeliness provision in IBM's arbitration agreement (at least as

7

IBM and the arbitrators here interpret it) treats the ADEA's charge-filing deadline as a bright-line cutoff for individuals to initiate their claims in arbitration. IBM's clear goal has been to wield its arbitration agreement to cut off liability for age discrimination claims in a way it could not do in court.

For its part, IBM argues that the timeliness provision is permissible because it provides Plaintiffs a "fair opportunity" to pursue a claim in arbitration by giving them the same amount of time to initiate arbitration that they would have to file an EEOC charge. However, this argument simply ignores that (outside of the arbitration context) plaintiffs do *not* have to bring discrimination claims within the deadline for filing an EEOC charge – instead, they are allowed to piggyback on class claims (thus allowing employees who may not have reason to know at the time of their termination that they had a viable discrimination claim, to still pursue such a claim, even if they only realize later that they were discriminated

against).[4] IBM's attempt to use the arbitration agreement to shut down ADEA claims that Plaintiffs would be able to pursue timely in court does not allow for "effective vindication" of their claims.

The legislative history of the OWBPA evinces Congress's concern about this very problem. The Senate Committee on Labor and Human Resources explained that in layoffs, employees are often not aware "that age may have played a role in the employer's decision or that the program may be designed to remove older workers from the labor force." S. Rep. 101-79, at 9 (1989). Likewise, "[o]lder workers too often learn of these group termination programs in an atmosphere of surprise and uncertainty," where they have no way to know their employers' motives. *Id.* at 21. As such, this Court's conclusion that the charge-filing deadline is not intended to serve as a time limit on bringing suit (provided that the

---

[4]     The piggybacking rule also has the beneficial effect of not requiring *all employees* to file discrimination claims immediately at the time of their termination, or forever hold their peace. Instead, it encourages a practice of allowing employees to wait to bring such claims later if information comes to light from others that leads them to believe they too have been subjected to discrimination. *See, e.g., Robinson v. Locke*, 2012 WL 1029112, at *11 (S.D.N.Y. Feb. 1, 2012).

EEOC has been given the opportunity to investigate and conciliate through an earlier-filed charge), *see Tolliver*, 918 F.2d at 1058-59, serves as a safeguard against unscrupulous employers dodging liability simply because the 300 or 180 days have run. Here, Plaintiffs have been denied that safeguard, simply by having signed an arbitration agreement, and have not enjoyed a genuinely "fair opportunity" to advance their claims.

## A. The Piggybacking Rule is Not Only an Administrative Exhaustion Doctrine but Also a Limitations Doctrine

IBM begins by arguing that the piggybacking rule is only an administrative exhaustion doctrine and not a limitations doctrine. To the contrary, the piggybacking rule operates to allow individuals **who did not file timely EEOC charges** to nevertheless pursue their ADEA claims. *See Tolliver*, 918 F.2d at 1057-59.

As one court acknowledged, where the piggybacking rule acts to excuse plaintiffs' exhaustion requirements, "it would be illogical not to excuse [the plaintiffs] from the limitations period set forth therein." *Shannon v. Hess Oil Virgin Islands Corp.*, 100 F.R.D. 327, 333 (D.V.I. 1983). Other courts have likewise concluded that the piggybacking rule is a

limitations doctrine in addition to an exhaustion doctrine. *See Holowecki*, 2002 WL 3120266, at *3 ("An exception to the ADEA's time limitations is the single filing rule."); *see also Leal v. Wal-Mart Stores, Inc.*, 2016 WL 2610020, at *5 (E.D. La. May 6, 2016) (noting that where an individual has filed a timely classwide EEOC charge, the piggybacking rule "tolls the statute of limitations" for the individuals in the scope of the charge); *Catlin v. Wal-Mart Stores, Inc.*, 123 F. Supp. 3d 1123, 1131 (D. Minn. 2015) (same); *Allen v. Sears Roebuck and Co.*, 2010 WL 259069, at *2 (E.D. Mich. Jan. 20, 2010) ("This judicial exception to the charge filing rule permits an alleged victim of discrimination who did not timely file a charge" to piggyback).

This Court likewise discussed the piggybacking rule's impact on the ADEA's limitations period in *Tolliver*, when it adopted the piggybacking rule over the defendant's protest that it would allow stale claims to proceed. 918 F.2d at 1059. Even the District Court in this case declined to adopt IBM's position. *See* Opinion at 14, App.583.

IBM argues that this Court's decision in *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 564 (2d Cir. 2006), bolsters the conclusion that the

11

piggybacking rule has nothing to do with timeliness, because it claims that this Court held that piggybacking is not available to plaintiffs who file their own untimely charges of discrimination. That is a different issue from the one raised here. While *Holowecki* suggests that the piggybacking rule is not boundless, the issue addressed there has nothing to do with the issue in this case.

As explained in *Ellis v. Costco Wholesale Corp.*, 2015 WL 2453158, at *2 (N.D. Cal. May 22, 2015), *Holowecki* framed its discussion by citing the concern that the Second Circuit considered in *Levy v. United States Gen. Acct'g Office*, 175 F.3d 254, 255 (2d Cir. 1999), where employees who had received a right to sue notice on their claims but did not file suit in the 90-day window attempted to use the piggybacking rule. Thus, *Holowecki* sought to curb misuse of the piggybacking rule as an end-run around the 90-day limit when someone has filed their own timely charge.

Further, relying on dicta in *Rusis v. International Business Machines Corp.*, 529 F. Supp. 3d 178, 192 n.4 (S.D.N.Y. 2021), IBM argues that the piggybacking rule is inapplicable in the arbitration context, since Plaintiffs

12

here were not required to file EEOC charges to pursue their claims. That makes no difference to the analysis. Employees who make use of piggybacking in court are also not required to file EEOC charges to pursue their claims. In court, they can file claims later (after the 180 or 300 days) based on an earlier class filing, and in arbitration there should be no difference. In both cases, the EEOC has been given the opportunity to investigate and conciliate claims. Again, the Supreme Court made clear in *Gilmer*, 500 U.S. at 28, that even though an ADEA claim may be subject to arbitration generally, the claimant must be able to effectively vindicate the claim in arbitration, which IBM has tried to block for these Plaintiffs.

**B.    The ADEA's Timing Scheme, Including the Piggybacking Rule, is a Substantive Right that Cannot be Waived By Contract, Especially Where IBM Did Not Satisfy the Requirements of the OWBPA**

As Plaintiffs detailed in their Opening Brief, the ADEA's timing scheme (including the piggybacking rule) is a substantive right that cannot be abridged by contract. *See Thompson*, 985 F.3d at 521; *Thompson*, EEOC Brief, 2020 WL 1160190, at *19-23. Furthermore, as this Court held in *Estle v. International Business Machines Corp.*, 23 F.4th 210, 214 (2d Cir. 2022), where

13

– as here – an employer seeks to obtain a waiver of a substantive right

under the ADEA, the employer must first satisfy the strict requirements of

the OWBPA, 29 U.S.C. § 626(f)(1)(H).[5] *See Estle*, 23 F.4th at 214; *see also*

*Oubre*, 522 U.S. at 427. Because IBM did not satisfy the requirements of the

OWBPA,[6] the timeliness provision's purported waiver of the piggybacking

rule must be deemed invalid. IBM disputes this conclusion by raising a

number of baseless arguments.

*First*, IBM argues that the ADEA's limitations period is procedural

---

[5]     In *Estle*, this Court held that an arbitration agreement's class action waiver was not precluded based on the employer's failure to comply with the OWBPA. *See Estle*, 23 F.4th at 213-15. This result is unsurprising, since the Supreme Court has held that class action waivers do not affect substantive rights and do not impact the effective vindication of statutory claims by merely requiring them to be litigated individually. *See American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236-37 (2013). The issue here is very different. IBM has brandished its arbitration agreement to prevent claimants from pursuing their ADEA claims at all, even individually, in arbitration.

[6]     As explained in Plaintiffs' Opening Brief at 42-44, Dkt. 72, IBM did not satisfy the OWBPA because: (1) it failed to provide disclosures that the OWBPA requires; and (2) it failed to describe the right being waived (i.e., the right to make use of the piggybacking rule and thus enjoy the full ADEA limitations period) in a manner calculated to be easily understood by the employees. *See* 29 U.S.C. § 626(f)(1).

and not substantive. As an initial matter, this argument is directly at odds

with the position espoused by the EEOC. *See Thompson*, EEOC Brief, 2020

WL 1160190, at *20 ("[J]ust as with Title VII, the ADA, the FLSA, and the

EPA, the ADEA's statutory limitations period is a substantive right and

prospective waivers of its limitations period are unenforceable").[7]

Nevertheless, IBM cites *Vernon Cassadaga Valley Central School District*,

49 F.3d 886, 890 (2d Cir. 1995), for the proposition that the ADEA's

limitations period is procedural. While *Vernon* concluded that the ADEA's

limitations period was procedural for the purposes of determining the

retroactive applicability of the Civil Rights Act of 1991, *see id.*, this Court

later clarified that "in different contexts, a statute of limitations may fairly

be described as either procedural or substantive . . . ." *Enterprise Mortg.*

*Acceptance Co., LLC, Sec. Litig. v. Enterprise Mortg. Acceptance Co.*, 391 F.3d

401, 409 (2d Cir. 2004); *see also Vernon*, 49 F.3d at 892 (Cabranes, J.

---

[7]    "[I]t is axiomatic that the EEOC's interpretation of [the ADEA], for which it has primary enforcement responsibility, need . . . only be reasonable to be entitled to deference." *EEOC v. Comm. Office Prods. Co.*, 486 U.S. 107, 115 (1988).

concurring). Here, the Court should read *Vernon* in harmony with the EEOC's position in *Thompson* and conclude that while the ADEA's timing scheme may be procedural in nature for the purposes of determining whether a statutory amendment applies retroactively, it is substantive for the purposes of determining whether a limitations period may by abridged by contract.[8]

IBM points out that in Judge Cabranes' *Vernon* concurrence, he explained that there is nothing "talismanic" about the labels "substantive" and "procedural." IBM Response Brief at 37 (quoting *Vernon*, 49 F.3d at 891-92 (Cabranes, J. concurring)). In one breath, IBM asserts that the "superficial label of substance/procedure" does not matter, and in the next, IBM contends that the OWBPA is inapplicable here precisely because of the ADEA's limitations period is a procedural and not a substantive right. IBM

---

[8] IBM also relies on *Spira v. J.P. Morgan Chase & Co.*, 466 F. App'x. 20, 22-23 (2d Cir. 2012), a non-precedential summary order that is easily distinguishable. *Spira* stands for the uncontroversial position that a federal statute's failure to reference a limitations period does not compel the conclusion that no limitations period applies. *Spira* has nothing to do with the issue in this case.

cannot have it both ways. This Court has held that the OWBPA only

protects substantive (and not procedural) rights. *See Estle*, 23 F.4th at 214.

Therefore, because the ADEA limitations period is ***substantive***, IBM cannot

reasonably dispute that the OWBPA prevents impeding on this right if the

required disclosures have not been made.

*Second*, IBM contends that its arbitration agreement is consistent with

*Thompson*, because it requires an arbitration demand to be filed on the same

deadline the statute sets for an EEOC charge. Not so. By extinguishing the

Plaintiffs' ability to make use of the piggybacking rule, the arbitration

agreement has truncated the ADEA limitations period. While Plaintiffs

would be timely to pursue ADEA claims in court (even **years** after the

discrimination took place, under the piggybacking rule), they cannot

timely pursue their claims in arbitration. Because *Thompson* recognized the

ADEA limitations period to be a non-waivable right, IBM is simply wrong

to suggest that its arbitration agreement is consistent with *Thompson*. 985

F.3d at 521.

IBM also contends that *Thompson* is distinguishable because it did not

concern arbitration. At bottom, IBM's argument is that an arbitration agreement is free to abridge employees' ADEA limitations periods, whereas other kinds of contracts cannot. IBM's argument runs afoul of *Morgan*, 142 S. Ct. at 1713, where the Supreme Court held that arbitration agreements cannot be elevated over other kinds of contracts. As such, "a court may not devise novel rules to favor arbitration over litigation." *Id.*[9]

As such, the District Court's decision cannot stand. In deciding that *Thompson* was limited to contractually shortened limitations periods outside of arbitration agreements, those courts lost sight of the fact that "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 142 S. Ct. at 1713.[10]

---

[9]   This Court's *dicta* in *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 125-26 (2d Cir. 2010), supports Plaintiffs' position. In *Ragone*, the Court opined that, even in the arbitration context, a provision shortening the time period to file an anti-discrimination claim may be unenforceable as being "incompatible with [the] ability to pursue [] Title VII claims in arbitration, and therefore void under the FAA." *Id.* at 125-26.

[10]   In other words, an arbitration agreement cannot be valid if it contains a prohibition that would not be allowed in a non-arbitration agreement. Either the purported prohibition must not be enforced, or the affected

18

IBM counters that, while *Morgan* involved a judge-made procedural rule that favored arbitration agreements over other kinds of contracts, the procedural rule at issue here was adopted by the parties in the arbitration agreement. IBM misses the point – by limiting *Thompson* to the non-arbitration context, the District Court held that the arbitration agreement was enforceable where any other type of agreement would not be.[11]

Even if IBM were correct that an arbitration agreement could abridge an ADEA limitations period, the employer would first have to satisfy the requirements of the OWBPA. In order to abridge a substantive right under the ADEA, the employer must comply with the OWBPA. *See Estle*, 23 F.4th at 214. Because the waiver of the piggybacking rule in the arbitration

---

party cannot be required to arbitrate.  Plaintiffs here are content to arbitrate, so long as their rights are not impeded in arbitration.

[11]    IBM also attempts to distinguish *Thompson* on the basis that its reasoning was grounded in the EEOC's investigatory process, which is not at issue in arbitration. As explained *supra*, however, Congress did not intend the EEOC charge-filing deadline to be a procedural hurdle for employees where a charge has indeed been filed. *See Tolliver*, 918 F.2d at 1059. Moreover, the EEOC's "informal methods" do not exist in court either (they exist at the EEOC), but piggybacking is nonetheless allowed for plaintiffs who file suit in court.

agreement has prevented Plaintiffs from being able to pursue their claims

at all, IBM has run afoul of the OWBPA. *See* note 6, *supra*.[12] Thus, Plaintiffs

must be permitted to pursue their claims of discrimination.[13]

## C. The Plaintiffs Whose Claims Were Dismissed in Arbitration Have not Waived their Challenges to the Timeliness Provision

IBM does not meaningfully address Plaintiffs' arguments that the

District Court erred in refusing to hear the Declaratory Judgment Act

claims of the 24 Plaintiffs whose arbitration demands were dismissed.

Instead, IBM makes a generic, surface-level argument that these Plaintiffs

"waived" their ability to challenge the timeliness provision, reciting certain

of the District Court's erroneous findings and not otherwise engaging with

---

[12]    IBM makes hay of the fact that *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 833 (6th Cir. 2019) (on which *Thompson* relied), and *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 655 (6th Cir. 2003), limited their holdings to court actions. However, those cases concerned Title VII, which does not have a counterpart to the OWBPA.

[13]    If Plaintiffs cannot pursue those claims in arbitration (which they are content to do), then they should be permitted to pursue their claims in court. Because the OWBPA was not satisfied, they must be able to pursue their claims somewhere.

Plaintiffs' arguments.

Notably, the District Court did not characterize its decision as a finding of "waiver"; rather, as explained in Plaintiffs' Opening Brief, the District Court "decline[d] to exercise jurisdiction," erroneously stating that "the window to challenge [the arbitral] rulings, or the enforceability the provisions that governed them, has long since closed," and that this "window" was the "three-month deadline under the FAA" for seeking *vacatur*, *see* Opinion at 8-9, App.577-78. Plaintiffs' Opening Brief explains why this assertion is erroneous – including, *inter alia*, that the arbitration agreement does not contemplate such a deadline and that Section 10 of the FAA sets forth specific grounds for *vacatur*, and a challenge to the "enforceability of the provisions" governing an arbitration proceeding is not one of them, *see* Opening Brief at 55-56, Dkt. 72. Critically, IBM's response does not even address these points.[14]

---

[14] Plaintiffs began in arbitration knowing that, had they begun their claims in court, a court likely would have required them to pursue arbitration first, in order to determine whether an arbitrator would interpret the agreement in the way they feared. *See, e.g.*, *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 476-78 (1st Cir. 2011)

21

IBM instead makes a half-hearted argument that Plaintiffs would be unsuccessful in bringing Rule 60 motions to reopen their arbitrations because, although arbitrators are *required* to hear such motions, the arbitrators *could* still find them to be untimely. IBM does not dispute that the arbitrators would be *required* to hear such motions, and the fact that IBM intends to make timeliness arguments in response to such motions does not justify the District Court's outright refusal to hear Plaintiffs' claims. And in any event, these motions would be timely, particularly given the circumstances here: Plaintiffs have been pursuing the relief at issue since the dismissal of their claims, first by opting into *Rusis,* and then initiating these actions when that court concluded that they had to bring

---

(holding that where the plaintiff's effective vindication argument turned on how the arbitrator would interpret a provision of the arbitration agreement, the arbitrator must answer the interpretation question in the first instance, before the court can review the question); *see also Billie v. Coverall North America, Inc.*, 594 F. Supp. 3d 479, 490-99 (D. Conn. 2022); *CellInfo, LLC v. American Tower Corp.*, 506 F. Supp. 3d 61, 71-73 (D. Mass. 2020). In other words, had Plaintiffs gone to court before arbitration, the court likely would have held that the claims were not ripe -- as in fact the District Court did with respect to Plaintiff Flannery's and Corbett's challenge to the confidentiality provision. *See* Section II *infra*.

these challenges individually.[15]

Finally, IBM argues that "there is no dispute here that Plaintiffs'
arbitration demands were untimely under the agreements" and the
"proper solution" was for plaintiffs to seek a stay and bring this challenge
in court and Plaintiffs erred because they "arbitrated to finality, failed to
seek *vacatur*, and filed court challenges only years later." IBM Response
Brief at 48 n.4, Dkt. 92.  On the contrary, Plaintiffs *did* contend to the
arbitrators that they claims were timely and, only after the arbitrators
disagreed with that interpretation (and held the arbitration agreement did
not allow them to proceed with their claims there), did they need to
address in court that they were not able to vindicate their claims in the

---

[15]    Other courts have proceeded to sever unconscionable provisions
from arbitration agreements, even after holding that plaintiffs who filed a
class action in court would need to proceed with their claims individually
in arbitration. *See, e.g., Castellanos v. Raymours Furniture Co., Inc.*, 291 F.
Supp. 3d 294, 301 (E.D.N.Y. 2018). However, rather than immediately stop
to appeal the *Rusis* ruling that required the plaintiffs to file these individual
separate actions, Plaintiffs simply followed what the *Rusis* court said and
filed these individual actions. They should not be faulted for having taken
that route (which IBM itself had pressed the *Rusis* court to conclude).

23

arbitral forum.[16]

Moreover, Plaintiffs' arbitrations were dismissed *at the outset* on timeliness grounds – the merits of their ADEA claims were never reached. IBM's insistence that Plaintiffs could have stayed their arbitrations to pursue these declaratory judgment claims in court makes little sense. Plaintiffs did not know how the arbitrators would rule until they dismissed their arbitrations. There is no basis to require that Plaintiffs follow the exact procedural process that IBM now suggests.

And finally, IBM's assertion that Plaintiffs were required to "seek *vacatur*" in order to challenge the enforceability of arbitration provisions at issue is contrary to law (Section 10 of the FAA) (which sets forth limited bases for vacating an arbitration award that do not include the relief Plaintiffs seek here) and the parties' arbitration agreement (which imposes no such procedure or timeline – but instead simply notes that challenges to the arbitration terms must be addressed by a court).

---

[16]    Again, had they raised this issue in court before attempting to arbitrate, they expect they would have been ordered by the court to attempt first to arbitrate.  *See* note 14.

II.     **The District Court Erred by Declining to Enter a Declaration that the Confidentiality Provision of IBM's Arbitration Agreement is Unenforceable**

As explained in detail at pp. 34-61 of the plaintiff's opening brief in

*Chandler*, No. 22-1733, the confidentiality provision in IBM's arbitration

agreement unduly impedes its former employees' abilities to advance their

age discrimination claims in arbitration and should be declared invalid.

The District Court did not reach that argument here, instead declining to

exercise jurisdiction. As set forth in Section I.C, *supra*, the Court erred by

declining to exercise its jurisdiction with respect to the 24 Plaintiffs who

had obtained arbitration awards.

With regard to Plaintiffs Flannery and Corbett (the two Plaintiffs who

had not obtained arbitration awards prior to seeking declaratory relief), the

District Court wrongly held that the controversy was not ripe.[17] IBM does

not meaningfully refute that these two Plaintiffs have raised a challenge to

---

[17]     Again, this contention is ironic, given that IBM contends that Plaintiffs should have challenged the timeliness provision before they arbitrated – even though they did not know yet whether arbitrators would allow that provision to impede their ability to pursue their claims.

25

the confidentiality provision (after their counsel have seen, through numerous arbitrations, how IBM used that provision to impede employees' claims), and this claim is therefore ripe.[18] IBM instead argues that Plaintiffs Flannery and Corbett's claims are untimely, so "they have no claim to arbitrate and it is irrelevant whether their arbitrations would have to be kept confidential." IBM Response Brief at 49, Dkt. 92. But the Plaintiffs' ADEA claims are not untimely (as argued above).

## III. The District Court Erred by Denying Plaintiffs' Motion for Leave to Amend their Complaint to Assert a Fraudulent Inducement Claim

IBM makes three arguments in response to Plaintiffs' arguments that the District Court erred in not allowing Plaintiffs to amend their Complaint to include a fraudulent inducement claim. The Court should reject each of IBM's arguments.

*First*, IBM argues that the Court should affirm the District Court's

---

[18]     Here, Plaintiffs could not have challenged the confidentiality provision at the outset, before these numerous arbitrations occurred, because at that time they would not have been able to present the full record they now have, demonstrating why the provision has unfairly impeded the vindication of employees' claims. *See American Family Life Assurance Co. of N.Y. v. Baker*, 778 Fed. App'x. 24, 27 (2d Cir. 2019).

waiver finding as Plaintiffs "arbitrated and lost" their arbitrations, *see* IBM Response Brief at 51-52, Dkt. 92. Of course, Plaintiffs Flannery and Corbett have not arbitrated their claims yet. Moreover, setting aside that the arbitration proceedings of the 24 other Plaintiffs were dismissed at the outset on timeliness grounds (such that Plaintiffs did not "arbitrate[] and los[e]" on the merits of their claims), here, the cases that IBM cites to support its waiver argument do not concern an alleged fraudulent scheme that would have prevented an unknowing party from challenging the arbitration agreement in the first place. Indeed, none of the cases cited by IBM concern an analogous situation where Plaintiffs only learned of such shocking evidence (that would provide the specific factual underpinning needed for a fraud claim) long after their arbitrations had been initiated.[19]

---

[19]    IBM strangely argues that Plaintiffs did not raise below that "at the time of arbitration they did not know enough facts to satisfy the 'heightened pleading standard under Rule 9(b).'" IBM Response Brief at 53, Dkt. 92 (alterations omitted). Plaintiffs did make this argument. *See* Reply in Support of Mot. to Amend at 8-9, D. Ct. Dkt. 83.

Likewise, IBM asserts that Plaintiffs waived any fraud theory based on COBRA benefits – they did not; they raised it on appeal. *See* Opening Brief at 68-69 n.42, Dkt. 72.

*Second,* IBM posits that any amendment would be futile. This argument should be rejected as well. Plaintiffs have set forth detailed factual allegations that satisfy the applicable pleading standard, and the District Court erred in concluding otherwise. *See* Plaintiffs' Opening Brief at 68-71, Dkt. 72 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *McCormack*, 145 F. Supp. 3d at 276).[20]

*Third*, IBM asserts that Plaintiffs' proposed fraudulent inducement claim is a "repackaging" of Plaintiffs' ADEA claims such that Plaintiffs are attempting to "nullify" the arbitration based solely on their ADEA claim.

---

[20] IBM attempts to distinguish *McCormack* because that case concerned an ADEA release (not an arbitration agreement). But IBM's position assumes that a valid and enforceable arbitration agreement exists in the first instance (which Plaintiffs' fraudulent inducement claim calls into question). And moreover, IBM cannot claim that Plaintiffs' claims are futile at the pleading stage by hiding behind the FAA before any discovery into the alleged fraudulent conduct has occurred. *See McCormack*, 145 F. Supp. 3d at 270.

IBM's reliance on *Kinney v. International Business Machines Corp.*, 557 F. Supp. 3d 823, 833 (W.D. Tex. 2021), is also misplaced, as unlike in *Kinney*, the allegations here meet the applicable standard. Moreover, Plaintiffs' proposed Amended Complaint details that the arbitration agreements have hindered their abilities to pursue *any* relief in arbitration. Essentially, this claim is an alternative argument Plaintiffs should be permitted to pursue in order to avoid arbitration altogether.

28

However, fraud claims require far more specificity than discrimination claims, *see Lerner*, 459 F.3d at 290, requiring facts which Plaintiffs did not have at the time they signed their arbitration agreements or when they attempted to arbitrate their claims. Plaintiffs do not merely "repackage" their ADEA claims to challenge arbitrability. Instead, Plaintiffs have used newly obtained and very specific information regarding the ways in which IBM misled its employees to assert a claim of fraudulent inducement.

At bottom, IBM's arguments run counter to the liberal pleading amendment standards embedded in the Federal Rules of Civil Procedure, and the Court should find that the District Court erred in denying Plaintiffs' motion for leave to amend.

## IV. The District Court Erred by Keeping the Sealed Portions of the Summary Judgment Record Under Seal

As set forth in Plaintiffs' Opening Brief, the documents at issue – summary judgment papers and exhibits filed in support thereof, which Plaintiffs were required to submit to sustain their challenge to the

enforceability the confidentiality provision in IBM's arbitration agreement[21] – are judicial documents, entitled to a presumption of public access.

IBM's assertion to the contrary flies in the face of judicial precedent. The Second Circuit and the Southern District of New York have repeatedly held that summary judgment filings are judicial documents as a matter of law that must not remain under seal "*absent the most compelling reasons.*" *See Lohnn*, 2022 WL 36420 at *6-7 (citing *Lugosch*, 435 F.3d at 121; *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019)). The documents at issue do not even amount to what can be considered "confidential" in the Second Circuit.

Instead, IBM argues that the summary judgment filings are not judicial documents because the District Court ruled on IBM's motion to dismiss without reaching Plaintiffs' motion for summary judgment. But whether the District Court considered Plaintiffs' summary judgment

---

[21]    Indeed, "a party cannot challenge the limitations of an arbitration clause in the abstract and must instead present evidence that the effect of the clause is to prevent a claimant from effectively vindicating a statutory right." *Lohnn v. Int'l Bus. Machines Corp.*, 2022 WL 36420, *11 (S.D.N.Y. Jan. 4, 2022) (citing *Gilmer*, 500 U.S. at 28; *Am. Fam. Life Assurance Co.*, 778 F. App'x. at 27).

papers is irrelevant. That is not merely Plaintiffs' view. It is the law of the Circuit. *See Lohnn*, 2022 WL 36420 at *6 ("This determination [whether something is a judicial document] is not based upon whether the judge has relied on the document or on any specific information in it because the public is entitled to know not only what the judge relied on but also what was conveyed to the judge that she did not rely on—what, from the public's perspective, 'the judge *should* have considered or relied upon, but did not.'") (quoting *Lugosch*, 435 F.3d at 123); *see also Brown*, 929 F.3d at 49; *Standard Inv. Chartered, Inc. v. National Ass'n of Securities Dealers, Inc.*, 621 F. Supp. 2d 55, 64 (S.D.N.Y. Sept. 26, 2007).

IBM contends that Plaintiffs have cherry-picked quotes in service of this argument, but it is IBM that has misrepresented the law of public access. For example, IBM relies on *Standard Inv. Chartered, Inc.*, 621 F. Supp. 2d at 66, in support of its argument that the summary judgment filings are not judicial documents because they were rendered "irrelevant" when the District Court granted IBM's motion to dismiss. But *Standard Inv. Chartered, Inc.* did not involve a motion for summary judgment, and the court made

31

clear in that case that its holdings with respect to the presumption of public access applied only in the context of motions to dismiss and motions for reconsideration. *See id.* at 65, 68. That court could not consider the documents at issue in that case not because of the underlying motion's procedural posture, but because they were attached to a Rule 12(b)(6) motion to dismiss and were thus "by definition, excluded from the court's purview." *Id.* at 66.

Moreover, to overcome the strong presumption of public access to which the judicial documents at issue are entitled, IBM points only to the FAA, stating that arbitration agreements should be enforced according to their terms, and that unsealing would "run contrary to the FAA's mandate." IBM Response Brief at 64, Dkt. 92. Yet this "mandate" is not inviolable: IBM wholly ignores that arbitration claimants are free to challenge a confidentiality provision where, as here, the record demonstrates that it is being abused. And critically, the precise question at issue is whether the presumption of public access requires that documents filed in a federal court proceeding should be available to the public – not

whether an arbitration clause's confidentiality provision is enforceable.

IBM's efforts to deliberately conflate these issues and question the propriety of Plaintiffs' filings have already been rejected by Judge Liman in *Lohnn*, a ruling which is supported by *Lugosch*'s holding that confidentiality provisions, in themselves, do not override the presumption of public access, *see Lohnn*, 2022 WL 36420 at *13 (citing *Lugosch*, 435 F.3d at 126).[22] Other courts apparently agree. In *Stafford v. International Business Machines Corp.*, 2022 WL 1486494, at *2-3 (S.D.N.Y. May 10, 2022), the court held that an arbitration award should be unsealed despite the confidentiality provision in IBM's arbitration agreement. Just last month, other courts rejected similar arguments advanced by IBM. *See Laudig v. International Business Machines Corp.*, No. 1:21-cv-05033-AT, Order at 14, Dkt. 39 (N.D. Ga. Dec. 16, 2022) ("In the face of the above authority and rationale, IBM's contention that the FAA itself provides good cause to seal all arbitration

---

[22] IBM accuses Plaintiffs of misrepresenting *Lugosch* here because it "did not involve an arbitral confidentiality provision or the FAA," IBM's Response Brief at 69, Dkt. 92, but the presumption of public access outweighs arbitral confidentiality. *See Lohnn*, 2022 WL 36420 at *13.

documents is unavailing."); *Howell v. International Business Machines Corp.*, No. 1:22-cv-00518-AT, Order at 14, Dkt. 35 (N.D. Ga. Dec. 16, 2022).

Plaintiffs have not sought to "gam[e] the judicial system" or "turn the public access doctrine on its head." IBM Response Brief at 65, Dkt. 92. As set forth in *Lohnn*, "Plaintiff[s] [have] filed this lawsuit to be able to use certain evidence that has been used in other arbitrations in support of [their] arbitration[s]." 2022 WL 36420, at *10. Plaintiffs have done so following the direction of this Court for making such a challenge. As the *Lohnn* court observed, "there is nothing wrongful or 'ruse'-like about Plaintiff attempting to make out her claim" -- "[t]hat is what courts are for." *Lohnn*, 2022 WL 36420, at *12. That the New York Times Company filed an amicus brief in *Lohnn* arguing that the sealed documents should be immediately unsealed buttresses the importance of, and heightened public interest in, this issue. *See Lohnn v. International Business Machines Corp.*, No. 22-32, Amicus Brief, Dkt. 58 (2d. Cir. Jan. 28, 2022).

## CONCLUSION

This Court should reverse the District Court's decision granting

34

IBM's Motion to Dismiss and direct the District Court to issue declaratory

judgments striking the timeliness and confidentiality provisions of IBM's

arbitration agreement as unenforceable. The Court should also reverse the

District Court's decision denying Plaintiffs' motion for leave to amend their

complaints to assert a fraudulent inducement claim. Finally, the Court

should reverse the District Court's decision to keep the briefing and

evidentiary record under seal.

Dated: January 6, 2023

Respectfully submitted,

PLAINTIFFS-APPELLANTS

By their attorneys,

<u>/s/ Shannon Liss-Riordan</u>
Shannon Liss-Riordan
Thomas Fowler
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com
tfowler@llrlaw.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Palatino Linotype font.

This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 6,970 words, as determined by the word-count function of Microsoft Word 2016.

Dated: January 6, 2023                     /s/ Shannon Liss-Riordan
                                           Shannon Liss-Riordan

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, an electronic copy of the foregoing was filed with the Clerk of the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on them via the appellate CM/ECF system.

Dated: January 6, 2023        <u>/s/ Shannon Liss-Riordan</u>
                               Shannon Liss-Riordan